Hon. Judge Robert S. Lasnik

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

| | |
|---|---|
| LISA C. NEAL, an individual, | NO.: 3:20-cv-06025-RSL |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| CITY OF BAINBRIDGE ISLAND, a Municipal Corporation | JURY DEMAND |
| Defendant. | |

Plaintiff Lisa C. Neal ("Neal" or "Plaintiff") brings this action against the City of Bainbridge Island ("COBI") for violation of her Constitutionally protected right to political free speech per 42 USC § 1983, defamation *per se*, negligent or intentional infliction of emotional distress, and violation of Washington's Public Records Act RCW 42.56.

## I.    PARTIES

1.1    Plaintiff is a resident of the City of Bainbridge Island, Kitsap County, Washington.

**FIRST AMENDED COMPLAINT - 1**
(Cause No. 3:20-cv-06025-RSL)

1
2
3
4

1.2     COBI is a municipal corporation located in Kitsap County, Washington, organized under the laws of the State of Washington.   COBI is an "agency" as defined by RCW 42.56.010(1) and subject to the Public Records Act ("PRA"), RCW 42.56, *et seq.*

5
6
7

## II.     JURISDICTION & VENUE

2.1     This court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983. The court has ancillary jurisdiction over Plaintiff's related state law claims.

8

2.2     The court has personal jurisdiction over the parties.

9
10
11

2.3     Plaintiff has complied with Revised Code of Washington § 4.96.020's requirement that Defendant municipality COBI be provided 60-days' notice of the claim for damages.

12
13
14

2.4     Plaintiff has complied with Revised Code of Washington § 7.96.040's requirement that Defendant be provided an opportunity to correct or clarify the alleged defamation.

15
16
17
18

2.5     Venue is proper in the Western District of Washington at Tacoma pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Plaintiff and Defendant COBI are located in this district, and because the events giving rise to Plaintiff's claims occurred in this district.

19
20

## III.     RELEVANT FACTS

21
22
23

3.1      Plaintiff has been a lawyer licensed and in good standing in the state of Washington since 1996, and in Texas (now inactive) since 1992, as well as in the federal district courts of both states, and in the Ninth Circuit Court of Appeals.

24
25
26

**FIRST AMENDED COMPLAINT - 2**
(Cause No. 3:20-cv-06025-RSL)

3.2     Plaintiff served as a Bainbridge Island Municipal Code ("BIMC") Chapter 2.01 citizen volunteer appointed by the City Council to the Island Center Subarea Planning Process Steering Committee ("Committee").

3.3     The Committee is a citizen advisory committee formed to create a Subarea Plan for the Island Center Neighborhood Center on Bainbridge Island.

3.4     The Committee was formed in November of 2017.

3.5     The Committee has not completed its task as of the date of the filing of this First Amended Complaint.

3.6     Plaintiff was appointed to the Committee in the fall of 2017.

3.7     The Committee elected Plaintiff as the Committee's Vice-Chair in or before February of 2018, in which role she acted until August 14, 2018, when Defendant COBI removed her from the Committee.

3.8     Plaintiff was not, and is not, a public figure.

3.9     The COBI Ethics Program ("Program") requires that all committees include a standing agenda item for disclosure of possible conflicts of interest. Program, Art. II, Section J.

3.10     The Program precludes action by any committee member who (among other disqualifications) has a "significant financial or private interest in that matter . . . ." Program, Art. II, Section D. 1. a.

3.11     Section D. 1. does not apply to committee members who were appointed "based on ownership of property or interest in a business located in a certain area of the City . . . provided that the member fully discloses the basis for the conflict of interest under Subsection (1) during each meeting of the City Committee . .

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

. . and [where] the City Committee . . . votes to allow the member to participate in the discussion or the vote . . . ."  Program, Art. II, Section D. 3. a. and b.

3.12    The Program does not exempt the Island Center Committee members from this obligation.

3.13    At the beginning of the first Committee meeting on December 5, 2017, Committee member Scott Anderson ("Anderson") disclosed that he and his family own a ten acre parcel adjacent to the Neighborhood Center, for which he had previously gone to the Planning Commission seeking an upzone, and that he sought an upzone for his family's property through the Island Center Subarea Planning Process.

3.14    Also at the first meeting, Committee member Maradel Gale ("Gale" or "Chair") disclosed that she and others on the Planning Commission at the time Anderson approached that body for the upzone had wanted to "help" Anderson, but were told that they could not make the zoning change until the Subarea Planning Process was completed.

3.15    The recording of the first meeting on December 5, 2017, began after the Committee members introduced themselves, and the portion of the meeting referenced above is not present on the publicly available recording.

3.16    At the January 17, 2018 meeting, a member of the public asked about the apparent conflicts of interest with respect to the two Committee members who sought to upzone their own properties.

3.17    Planning Director Gary Christensen ("Christensen") advised those present that, so long as the Committee members had disclosed the interest to the

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

1   Council, the potential conflict of interest did not affect their ability to vote on the

2   process.

3       3.18    Plaintiff requested at the March 7, 2018 Committee meeting that the

4   Committee include the standard conflict of interest disclosure agenda item in future

5   Committee meetings.

6       3.19    In response to Plaintiff's request, Christensen told the Committee and

7   the public that, because the Committee is an advisory committee, the conflict

8   disclosure was not really an issue.

9       3.20    All citizen committees provide recommendations.

10      3.21    The only exception to that general rule is the Salary Commission.

11      3.22    As of March of 2018, Gale had been nominated for the Chair position by

12  Committee member Anderson, and the Committee voted her Chair.

13      3.23    At the March 21, 2018 meeting, whether and how to disclose conflicts

14  was again discussed.

15      3.24    At the March 21, 2018 meeting, COBI Staff member liaison to the

16  Committee, Jennifer Sutton, advised that the City Attorney told her he did not think

17  disclosure was necessary because, for one reason, the Committee makes

18  recommendations, and is not a decision maker.

19      3.25    Staff and Chair Gale suggested making a general statement to the effect

20  that the Committee members in general own property or businesses in or near Island

21  Center.

22      3.26    On April 4, 2018, following further discussion, the Committee expressly

23  agreed to place conflicts of interest disclosures on the Agenda.

24

25  **FIRST AMENDED COMPLAINT - 5**

26  (Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.27    Chair Gale refused to call the Agenda Item "Conflict of Interest Disclosure," however, stating she would place on future Agendas discussion of "Statements of Interest."

3.28    At this time, Chair Gale was also a member of the Ethics Board for the City.

3.29    Plaintiff objected, and requested that the Agenda item be entitled "Conflict of Interest Disclosure" or similar, to comply with the Code [here, meaning the Ethics Program].

3.30    Later Committee Agendas showed "Conflict Disclosure" along with Call to Order and Agenda Review as the first item of business, but the minutes reveal that "statements of interest" were called for by the Chair.

3.31    During the June 6, 2018, Committee meeting, Plaintiff again noted that the Program requires "conflict of interest" disclosures, not "statements of interest," and that the Program further requires that the Committee actually vote on whether to allow the conflicted member(s) to discuss or vote on the topic from which they, personally, could potentially benefit.

3.32    After Staff liaison Sutton's report that the City Attorney had instructed that no conflict of interest disclosure was necessary, Plaintiff called the City Attorney to obtain his advice.

3.33    It took several weeks to connect with the City Attorney.

3.34    Plaintiff advised the City Attorney, Joe Levan, of Staff Sutton's relayed advice from him.

3.35    Levan told Plaintiff he "did not say that" (what Plaintiff reported Staff Sutton had reported he'd said).

**FIRST AMENDED COMPLAINT - 6**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.36   Plaintiff asked for advice as to what to tell people who were concerned about the conflicts of interest.

3.37   Levan told Plaintiff that he did not provide advice on the Ethics Program, only on the state law, and that committee members are not subject to state law.

3.38   More than one year after this conversation, and following Plaintiff's removal from the Committee (discussed below), the City Attorney wrote to Plaintiff regarding an unrelated issue on August 23, 2019.

3.39   In that written communication, Levan implied that Plaintiff had lied about the prior conversation.

3.40   Levan refused to discuss any issue with Plaintiff on the telephone or in person.

3.41   In his 2019 email communication, the City Attorney's recollection was that he advised Plaintiff that mere ownership of property or businesses in the area was not a conflict of interest, because the Code required such an interest in most of the Committee members.

3.42   The City Attorney did not explain in the email why the Ethics Program requirements did not apply to the Committee.

3.43   The City Attorney's implication that Plaintiff lied was presented in the context of Plaintiff requesting a telephone call regarding her review of some documents she had requested under the Public Records Act.

3.44   Plaintiff planned to request some physical accommodations relative to the document review, and wished to do so in a telephone call, not in an email.

**FIRST AMENDED COMPLAINT - 7**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.45    The City Attorney's implied claim that Plaintiff lied was coupled with his demand that any future communication be in writing, and he refused to discuss anything on the telephone with Plaintiff.

3.46    Rather than place her personal information in the public record in order to request the accommodation, Plaintiff forewent review of the documents requested.

3.47    The City Attorney's implied claim that Plaintiff lied was disclosed to a third party, the City Clerk.

3.48    There was no legitimate basis for including a third party on the City Attorney's email claiming Plaintiff had lied.

3.49    The City Attorney, Levan, used information gained in his conversation with his former client (Plaintiff, as member of a citizen committee seeking legal advice regarding the Committee's obligations under the Program, was the City Attorney's client for that purpose) *against* Plaintiff in a separate, adversarial, context.

3.50    The City Attorney, Levan, may have violated the Rules of Professional Conduct by so using confidential communications against Plaintiff in a later, adversarial, context.  RPC 1.9(c)(1) and (2).

3.51    Plaintiff was caused distress by the City Attorney's communication, was impeded in her work, loss of sleep, and including at least one nightmare on August 27, 2019, regarding the allegations.

3.52    Levan negligently or intentionally caused Plaintiff distress.

3.53    Plaintiff requested intervention from the Mayor (Medina, at the time), who forwarded the issue to the City Manager.

3.54    Approximately three months later, on November 15, 2019, Plaintiff received an email from the City Manager, Morgan Smith, on the issue.

**FIRST AMENDED COMPLAINT - 8**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.55   Smith refused to take any action regarding the City Attorney's communication.

3.56   As discussed above, while Agendas after April 4, 2018 reflected a standing agenda item for "Conflict Disclosure," the Chair continued to call for any changes in status or similar, and no Committee member fully disclosed the interest in upzoning his or her own property, and the Committee did not comply with the Program by voting on whether to allow participation.

3.57   Returning to the June 6, 2018, Committee meeting, Plaintiff reported the content of her telephone call with the City Attorney to the Committee, and she re-urged the Committee's full compliance with the Ethics Program.

3.58   Later, during 2019, Chair Gale and the rest of the Ethics Board recommended to the City Council that it change the Program to exempt members of committees such as the Island Center Committee from disclosing conflicts of interest.

3.59   Council member Blossom explained in an August 9, 2019 email that the Board, and not she, recommended this change to the Program.

3.60   In that August 9, 2019 email, Blossom acknowledged that the Committee members have a potential conflict of interest, and that it should be disclosed.

3.61   This statement by Blossom conflicted with the City Attorney's assertion to Plaintiff in his August 23, 2019 email that the Committee members did not have a conflict of interest.

3.62   This Ethics Board's recommendation and request that Council eliminate the conflicts disclosure requirement confirmed the requirement's existence, as well as

**FIRST AMENDED COMPLAINT - 9**
(Cause No. 3:20-cv-06025-RSL)

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

that Chair Gale's and Staff's prior advice to the Committee, that no such disclosure was required, was inaccurate.

3.63    During the Ethics Program review process that spanned many months, Plaintiff communicated with the Council, and especially with Mayor Medina, and explained what the existing conflicts are:  Committee members who own land near the Neighborhood Center wish the Committee to "upzone" their property, they have, and continue to argue for, the "upzone," and they were anticipated to vote on the "upzone."

3.64    Mayor Medina expressed his opinion that this specific type of conflict is something he would want to know before voting on any Plan presented by the Committee (Council has the last word on any upzone recommendation by the Committee.).

3.65    The Council ultimately rejected the Ethics Board's recommendation that the Island Center Committee (and others like it) be exempted from conflict of interest disclosures.

3.66    On December 16, 2020, Chair Gale, seeing Plaintiff present at the Island Center meeting, publicly introduced the conflicts of interest disclosure agenda item by saying "Here you go, Lisa."

3.67    To date, certain Committee members have consistently failed to disclose that they own property that they advocate be upzoned as part of the Island Center Subarea Planning Process.

3.68    The Committee has further failed to comply with the Program, which requires a formal Committee vote be taken to allow those members who have

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

disclosed a conflict to participate in discussion and/or voting on items that potentially affect their property or interests.

3.69    Plaintiff has brought these failures to the attention of the Committee, to Council, to Mayor Medina, and to the City Manager (because Mayor Medina forwarded the alert to her).

3.70    The City Manager Smith responded that the Committee was already disclosing "conflicts" in order to satisfy Plaintiff.

3.71    Returning to Plaintiff's removal from the Committee on August 14, 2018, Plaintiff was not provided notice of the impending discussion.

3.72    While the August 14, 2018, City Council meeting Agenda included a motion to remove a citizen from a committee, the Agenda item did not name the person to be removed, or the committee from which a person was to be removed.

3.73    Plaintiff received a telephone call from Council member Ron Peltier on August 14, 2018, to advise that he had contacted Council member Blossom and been told Plaintiff's removal was not on the Agenda.

3.74    Peltier advised Plaintiff that if her removal were discussed, it would be helpful for him to be able to relay that Plaintiff would try to be "more diplomatic" in the future.

3.75    Plaintiff stated that she always tried to be diplomatic and would listen to any advice on the subject.

3.76    Plaintiff reported to Peltier her July 11, 2018 telephone conversation with Blossom (discussed below), in which call Blossom had promised to address Plaintiff's concerns, and in which call Plaintiff had promised to bring any future concerns to Blossom.

**FIRST AMENDED COMPLAINT - 11**
(Cause No. 3:20-cv-06025-RSL)

3.77    Plaintiff later asked the Mayor, Kol Medina, who placed the item on the Agenda.

3.78    According to him, Mayor Kol Medina does not recall who placed the motion to remove Plaintiff on the Agenda for August 14, 2018.

3.79    Council member Sarah Blossom, who was also the City Council's liaison to the Committee, told Plaintiff (on August 15, 2018) she did not ask that the Agenda item be placed on the Agenda, and that she did not have notice of its presence prior to August 14, 2018.

3.80    Under BIMC § 2.01.020, the Mayor had the authority to remove Plaintiff for certain reasons or "just cause," subject only to Plaintiff's possible restoration to the Committee by a majority vote of the Council within 30 days of the Mayor's notice of the removal, in the event a majority disagreed with the removal.

3.81    No public hearing, testimony, or vote was required to effect Plaintiff's removal from the Committee.

3.82    COBI Council did not follow the removal procedure provided by the COBI Code.

3.83    COBI Council instead held a public hearing without notice to Plaintiff on August 14, 2018, which was televised and recorded, and which provided a public platform for some, including Council members and COBI staff, as well as members of the public, to provide their opinions regarding Plaintiff in that permanent public forum.

3.84    At the August 14, 2018 City Council meeting, then-Mayor Kol Medina raised the issue of Plaintiff's removal from the Committee by telling the public that "anyone serving on any of the committees serves at the pleasure of the Council and

**FIRST AMENDED COMPLAINT - 12**
(Cause No. 3:20-cv-06025-RSL)

we can remove them if we feel like they are, for whatever reason, disrupting the committee, not acting appropriately.  We have reasons to, some councilors anyway have expressed reasons to believe this person [Plaintiff] should be removed from the Committee."

3.85    Following the introduction wherein the Mayor stated that one in the Plaintiff's position, who had been "disrupting the Committee" and "not acting appropriately," could be removed, he asked for a motion to remove Plaintiff, identifying her by name.

3.86    This combination of statement and action implied to the public that Plaintiff had been "disrupting the Committee" and "not acting appropriately" to the point that her behavior now necessitated her removal.

3.87    Recitation of such grounds was unnecessary to comply with the pertinent BIMC section.

3.88    Council member Sarah Blossom (Blossom) moved to remove Plaintiff from the Committee.

3.89    Blossom claimed to not have known the item would be on the Agenda.

3.90    Blossom stated her reasons for moving to remove Plaintiff:  "we've had some Committee members resign because of [Plaintiff's actions/behavior]," and that Plaintiff had refused to meet with the Planning Director, Gary Christensen.

3.91    Both statements were false.

3.92    Regarding the assertion that Committee members resigned "because of" Plaintiff, the Committee members who resigned prior to August 1, 2018, resigned for reasons other than Plaintiff's actions, words or behavior.

**FIRST AMENDED COMPLAINT - 13**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.93    One Committee member wrote on May 31, 2018 to resign for "health issues."

3.94    The other Committee member wrote on June 4, 2018 to resign due to the Committee's having made "little meaningful progress" to date.

3.95    Staff member Jennifer Sutton reported the resignations to the Committee during a meeting, and had previously reported one resignation in an email.

3.96    Plaintiff was aware from conversations and email communications both while on the Committee and after her removal that the claim that either person who resigned had done so "because of" Plaintiff was false.

3.97    For example, on July 11, 2018, Plaintiff called Blossom to discuss Plaintiff's concerns about the process being followed by the Committee, including what Plaintiff believed were inaccurate statements of the law, and the Committee's ongoing failure to disclose conflicts of interest.

3.98    In the July 11, 2018 telephone call with Blossom, Plaintiff expressed concern that Christensen seemed hostile and might be attempting to make Committee work for Plaintiff sufficiently uncomfortable that she would quit.

3.99    Blossom responded (paraphrased) "we do not need any more resignations."

3.100   Blossom quickly spoke again, and appeared concerned that she had implied the two members had resigned because of Plaintiff's actions, saying (paraphrased) "I'm not saying they quit because of you."

3.101   Because Blossom had volunteered during the July 11, 2018, call that the prior resignations were not "because of" Plaintiff, and because Plaintiff was aware,

**FIRST AMENDED COMPLAINT - 14**
(Cause No. 3:20-cv-06025-RSL)

through her Committee participation, of the true reasons for those resignations, Plaintiff wrote to Blossom on February 27, 2019 and set out the two conflicting statements from the July 11, 2018 call, and Blossom's statement at the August 14, 2018 City Council meeting implying to the public that Plaintiff was to blame for the resignations, requesting Blossom provide an explanation.

3.102   Blossom did not respond to the February 27, 2019 email.

3.103   Plaintiff followed up on March 6, 2019, and Blossom responded:   "I didn't respond and I don't plan to."

3.104   At the City Council meeting on August 14, 2018, Planning Director Gary Christensen also argued in support of removal.

3.105   Christensen admitted under questioning by a Council member that he could not say that other members of the Committee had resigned "because of" Plaintiff's participation.

3.106   Regarding the second asserted ground for Plaintiff's removal, Plaintiff's alleged refusal to meet with the Planning Director, Christensen had requested an in-person daytime private meeting with Plaintiff on April 18, 2018, after 2:00 p.m., to discuss Plaintiff's expressed concern (email dated April 17, 2018) that he had overridden a Committee vote by unilaterally changing the next Committee Agenda.

3.107   The issue there was that, as reflected in the Minutes for the April 18, 2018 meeting, the Committee had voted in the April 4, 2018 meeting to issue a survey to the public for input on a list of possible issues before drafting a Vision Statement. The April 4, 2018 minutes were never amended as voted in the April 18, 2018 meeting.

**FIRST AMENDED COMPLAINT - 15**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.108   The Committee's Agenda, therefore, did not include drafting the Vision Statement for the next meeting.

3.109   Christensen ignored that vote and placed the Vision Statement drafting back on the Agenda.

3.110   Plaintiff did not refuse to meet with Gary Christensen regarding her concern.

3.111   Instead, Plaintiff responded by email on April 17, 2018, to the request, thanking the Planning Director, but advising she felt it would be best if communication occurred in the public record.

3.112   Blossom pressed Plaintiff to attend an in-person meeting, advising she planned on also attending (April 17, 2018 email).

3.113   In a responsive email of the same date, Plaintiff reiterated her desire to have any meeting with all (the Committee) in attendance, and on the public record.

3.114   As such, Plaintiff expressed the desire to meet in public, not private, and never refused to meet with Christensen.

3.115   As such, Plaintiff expressed the desire to meet in a forum where the communications would be recorded, and Plaintiff never refused to meet.

3.116   Christensen did not respond to Plaintiff's request that their discussion take place, as Plaintiff had requested.

3.117   At the April 18, 2018, Committee meeting following the email exchange between Plaintiff and Christensen, Christensen did not bring forward any discussion with Plaintiff, about Plaintiff, or about Plaintiff's concerns.

**FIRST AMENDED COMPLAINT - 16**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.118   At the August 14, 2018 City Council meeting, Blossom further supported her motion to remove Plaintiff from the Committee by asserting that "we're at risk of losing our Chair" [Maradel Gale].

3.119   Upon questioning by another Council member, Blossom admitted Plaintiff had not been warned that Plaintiff's behavior could result in her removal from the Committee.

3.120   Plaintiff had previously spoken personally with Blossom (herself an attorney) regarding the Committee's failure to disclose conflicts.

3.121   Based on recollection, Plaintiff had emailed Blossom previously regarding the Committee's failure to disclose conflicts.

3.122   Plaintiff initiated the telephone call that took place on July 11, 2018.

3.123   On July 11, 2018, during their private telephone call, Blossom promised to address Plaintiff's concerns.

3.124   Blossom requested that Plaintiff come to her with any future concerns.

3.125   Plaintiff agreed to come to Blossom with any future concerns.

3.126   Blossom at no time, whether on July 11, 2018 or at any other time, warned Plaintiff that she was in danger of being removed from the Committee.

3.127   Blossom brought up her conversation with Plaintiff on July 11, 2018 at the next Committee meeting (July 18, 2018), but that portion of the meeting focused on Scott Anderson's complaint that Plaintiff had sent an email about her concerns to members of the public using her City email address.

3.128   Plaintiff was unable to attend the July 18, 2018 meeting, and she had alerted Blossom that she could not attend during the July 11, 2018 telephone call.

3.129   Plaintiff attended the next Committee meeting, on August 1, 2018.

**FIRST AMENDED COMPLAINT - 17**
(Cause No. 3:20-cv-06025-RSL)

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.130   Plaintiff's concerns were not addressed at the August 1, 2018 meeting.

3.131   Plaintiff raised no complaints at the August 1, 2018 meeting.

3.132   Plaintiff was not warned of the impending removal at the August 1, 2018 meeting.

3.133   The status of finding new members to replace those who had resigned was discussed at the August 1, 2018 meeting.

3.134   Plaintiff's removal from the Committee was not discussed at the August 1, 2018 meeting.

3.135   On August 10, 2018, Plaintiff communicated with Staff regarding the Committee's prior request for a traffic study, a request for any updates to the Work Plan, and requested contact information for the consultants to obtain copies of the "table forms" from the public meeting. Plaintiff received no response to this request.

3.136   To the best of Plaintiff's recollection, and based on her records, Plaintiff had no other contact with the Committee, the Staff or Council member Blossom.

3.137   No warning was provided to Plaintiff in the August 10, 2018 communications.

3.138   Further, at the August 14, 2018 City Council meeting, the Mayor inexplicably permitted/invited public comment on Plaintiff's removal.

3.139   Planning Commissioner, Jon Quitslund, not identifying himself on the record as a COBI Planning Commissioner, and admitting he had no personal knowledge of Plaintiff, claimed Plaintiff was abusive ("just ugly, and totally inappropriate") to COBI Staff liaison to the Committee, Senior Planner Jennifer Sutton.

**FIRST AMENDED COMPLAINT - 18**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.140   Planning Commissioner Quitslund stated that he'd "heard things that were upsetting" to him "because they seemed to be threatening a kind of dysfunction in a very touchy and very important process."

3.141   Quitslund went on to state that it "seemed to be the case that there's just so much disruption and so much blocking of the description of where we're going and how, and, and what's at stake . . . ."

3.142   Quitslund closed his televised/recorded speech by agreeing with Plaintiff's removal from the Committee, and then suggesting that Plaintiff's behavior/action "seems irrational."

3.143   Council had previously implemented a rule prohibiting *ad hominem* attacks during public comment or among Council members.

3.144   This rule had been enforced against Council members and public speakers in the past.

3.145   Quitslund's comments violated the Council rule.

3.146   The Mayor did not halt, or otherwise interrupt, Quitslund's speech regarding Plaintiff.

3.147   The Mayor did not make any statement that could have diminished the adverse impact of Quitslund's speech.

3.148   Quitslund was later appointed the Planning Commission's liaison to the Committee.

3.149   The BIMC provides that the Committee's final recommended Plan next moves to the Planning Commission for public hearing and commentary.

3.150   Quitslund told the Committee in early 2019 that a no- or low- growth plan for Island Center would violate the Comprehensive Plan.

**FIRST AMENDED COMPLAINT - 19**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO Box 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.151  Quitslund told the Committee in early 2019 that any no- or low-growth Plan would be a "non-starter" with the Planning Commission (the next stop for the draft Plan).

3.152  Quitslund later (January of 2019) told Plaintiff that he had no personal knowledge supporting his comments regarding her made on August 14, 2018.

3.153  Quitslund later (January of 2019) told Plaintiff that his "friend of many years," Maradel Gale, relayed to him the information that he had presented to the City Council as true.

3.154  Just prior to a Committee meeting in early 2019 (following Plaintiff's removal), Maradel Gale was heard to comment as she read something on her cell phone, which, given that Plaintiff had sent an email to the Committee just before the meeting, could have been an email from Plaintiff to the Committee, "[S]he is just a disaster for this committee."

3.155  At the August 14, 2018 City Council meeting, the Council voted 5-2 to remove Plaintiff from the Committee.

3.156  The Council members other than Blossom who voted to remove Plaintiff made it clear they had no knowledge whether the statements by others were true, or not.

3.157  Several Council members who voted to remove Plaintiff expressly stated they were so voting to "support" Blossom, or because Blossom, as Council's liaison to the Committee, "advised" removal.

3.158  Following the August 14, 2018 City Council meeting, Plaintiff heard from one Councilmember who stated he "felt really bad" about how things were handled.

**FIRST AMENDED COMPLAINT - 20**
(Cause No. 3:20-cv-06025-RSL)

3.159   Blossom called Plaintiff on August 15, 2018, to advise her that she had been removed from the Committee the night before.

3.160   Later, Plaintiff reviewed the August 14, 2018 Council meeting tape, and saw that during the August 14, 2018 Council meeting, the Mayor offered to attend the call to Plaintiff.

3.161   This suggestion, made before the public, created the implication to the public that Plaintiff's reaction would be severe, and that Blossom would need "back up."

3.162   Blossom declined the assistance.

3.163   Further, at the August 14, 2018, City Council meeting, Council member Nassar expressed concern about Plaintiff's attendance as a member of the public at future meetings, and that "firing" Plaintiff could "exacerbate the problem."

3.164   Both the Mayor's offer of "help" when communicating with Plaintiff about her removal, and Nassar's assumption that Plaintiff's behavior was sufficiently concerning so as to warrant barring her from future public meetings, confirms that the impression left with Council and the public regarding Plaintiff was that she is irrational, violent, or otherwise not a person that should be allowed at a public government meeting.

3.165   Nassar's concern was dismissed by Blossom.

3.166   During the August 15, 2018 telephone call with Plaintiff, Blossom asserted that she had not known about the Agenda item to remove Plaintiff, and had not wanted to vote for the motion to remove Plaintiff.

3.167   In the telephone call, Blossom did not reveal that it was she who had, in fact, made the motion to remove Plaintiff.

**FIRST AMENDED COMPLAINT - 21**
(Cause No. 3:20-cv-06025-RSL)

3.168   Plaintiff did not have questions for Blossom during the call.

3.169   During the August 15, 2018, telephone call, Blossom volunteered to Plaintiff: "I do not think it (the removal) was because you are anti-development."

3.170   The City Manager at the time of Plaintiff's tenure on the Committee was Doug Schulze.

3.171   Mr. Schulze resigned effective October 2, 2018.

3.172   On or about August 8, 2018, Mr. Schulze told the Kitsap Sun, among other comments, that "the City Council should not give greater weight to the opinions of members of the public than to recommendations from city staff" and "criticisms of city projects from a vocal group are criticisms from armchair quarterbacks."

3.173   At the time of Plaintiff's removal, the City's government culture was pro-growth, and failed to embrace public participation in government.

3.174   The practice at the time of Plaintiff's removal was for the City Council meeting Agenda to be set through conference between the Mayor and the City Manager.

3.175   On August 18, 2018, Plaintiff watched the videotape of the City Council meeting where she was removed.  She was caused embarrassment and distress at the unsupported and false attacks made, unnecessarily, on her in a recorded public forum, and at the thought that her current or future employer and clients could form an adverse opinion of Plaintiff's personality, capacity, and ability to function as an attorney, as a result of the things said about Plaintiff.  In the following weeks, Plaintiff suffered from significant sleeplessness, worry and distress.  The sleeplessness aggravated medical conditions suffered by Plaintiff.

FIRST AMENDED COMPLAINT - 22
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.176  Plaintiff suffered worry that her current contracted employer, who resides on Bainbridge Island, would believe the false statements, and that permanent damage would be caused to the employment relationship and, consequently, her income stream, as well as to her professional standing in the Bainbridge Island and Seattle legal communities.

3.177  Also at the August 14, 2018, City Council meeting, a member of a different committee was demoted for "performance" issues.

3.178  That committee member was not removed from the committee, but was demoted from the position of Chair.

3.179  That committee member later filed an Ethics Complaint, and the Ethics Board issued an Advisory Opinion, No. 2018-02.

3.180  In Opinion No. 2018-02, the Ethics Board noted that the complainant (like Plaintiff) had not been notified that his communications could result in demotion, had not been provided notice of the City Council meeting, and had not been provided the opportunity at that meeting to correct any factual misstatements about himself.

3.181  The Ethics Board concluded with a recommendation:

It is incumbent upon the elected official to meet with the committee member and discuss what constitutes appropriate behavior.  In the instant case, it is not clear that such discussions were held.  Normal standards of ethical behavior as they relate to respect for citizens, fairness in the application of process, and recognition of the contributions of citizen committee members, may have been disregarded.  This can be a problem for the city, as it sends a message to other citizens that their service on a city committee may subject them to hurtful public rebuke and reprisal without due process – and who wants to set themselves up for that? . . . The City Council must take steps to establish a better process for dealing with situations such as this – a process that is fair, equitable, transparent, and respectful of the citizens who volunteer for the city."

**FIRST AMENDED COMPLAINT - 23**
(Cause No. 3:20-cv-06025-RSL)

1

Opinion No. 2018-02, pp. 4-5.

3.182  Shortly after August 18, 2018, following her review of the meeting, Plaintiff contacted the City Council and requested that the section of the August 14, 2018 meeting tape regarding Plaintiff be removed from the tape, or that a correction be made.  Plaintiff received no response, other than the opinion by one Council member that he/she considered removal or correction unlikely.

3.183  Following Plaintiff's removal, and further following a fourth resignation from the Committee, the Council re-stocked the Committee with four persons:  1) an architect; 2) a builder; 3) a Seattle planner; and 4) a member of Kol Shalom synagogue, which congregation seeks to continue to use the City-owned lot next to their building for parking.

3.184  In May, 2020, Plaintiff applied for appointment to an open seat on the City Council.

3.185  The local newspaper ran a story that highlighted Plaintiff's removal from the Committee and repeated the false claims made about her at the August 14, 2018 meeting.

3.186  The news article included a stated opinion that was not attributed to any person, and which was not available from the meeting tape.

3.187  Plaintiff's contracted employer advised he had seen the story.

3.188  Plaintiff requested correction from the newspaper, but did not receive a response.

3.189  No correction was run, and Plaintiff was not selected for the Council seat.

**FIRST AMENDED COMPLAINT - 24**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.190  Following her removal from the Committee, Plaintiff continued to attend the Island Center Committee meetings as a member of the public.

3.191  While the Committee had previously (approximately April of 2018) voted to allow public comment "per topic," the Committee Chair, Maradel Gale, and/or Staff had unilaterally amended this practice. At the time of Plaintiff's removal, limited public comment was allowed only at the end of the meeting, after the Committee had already discussed and decided issues.

3.192  Plaintiff's ability to meaningfully participate in the Island Center planning process, as compared to her participation as a member of the Committee, was therefore limited, restricted, or moot.

3.193  Prior to her removal, Plaintiff had noted that no minutes were recorded for the first meeting, that of December 5, 2017.

3.194  The Committee had held a vote at the December 5, 2017 meeting.

3.195  Plaintiff provided draft proposed minutes for that meeting, as well as for the January 17 and February 7 meetings at the meeting of February 21, 2018.

3.196  Chair Gale and Sutton advised the Committee that minutes were not required because the meetings are recorded.

3.197  This position is reflected in the minutes for the February 21, 2018 meeting.

3.198  Chair Gale advised the draft minutes would be "appended" to the minutes for the record, as well.

3.199  Plaintiff's draft proposed minutes were not appended to any minutes recorded for any meeting.

**FIRST AMENDED COMPLAINT - 25**
(Cause No. 3:20-cv-06025-RSL)

Neal Firm, PLLC
PO Box 11215
Bainbridge Island, Washington 98110
Telephone (206) 317-3000

3.200   Plaintiff's draft proposed minutes were not appended to the minutes of the meeting during which they were proposed.

3.201   On April 18, 2018, during Plaintiff's tenure on the Committee, Plaintiff alerted the Committee to its failure to draft a Work Plan, as required by the applicable BIMC.

3.202   Chair Gale advised a Work Plan was not needed.

3.203   Plaintiff offered to obtain and bring the Work Plan from the prior Subarea Planning Process (one conducted in 2001) to the next meeting for review.

3.204   At a later meeting, Christensen advised the Committee that, not only had he already drafted the required Work Plan, but also that it had been presented to the City Council, and the City Council had already approved it.

3.205   A copy of a timeline document was provided to the Committee.

3.206   Similarly, in early 2018, other Committee members requested input to the Request for Qualifications (RFQs) to be issued for a Committee consultant, and were told they would have that opportunity.

3.207   At or soon after the time this promise was made, Christensen, Sutton, Gale and the Planning Commission liaison, had already issued the RFQs, interviewed applicants, recommended consultants to Council, and the Council had hired consultants.

3.208   This secret action overruled or disregarded the Committee's December 5, 2017 vote to postpone this hire until the Committee could provide input into what sort of expertise was needed, in the Committee's estimation.

**FIRST AMENDED COMPLAINT - 26**
(Cause No. 3:20-cv-06025-RSL)

3.209   The Committee was told the consultants had already been hired at the March 21, 2018 meeting.  Several Committee members objected to the process that had resulted in their selection.

3.210   At the April 4, 2018 Committee meeting, Christensen admonished the Committee for its lack of progress, and told the Committee that it might have to begin meeting weekly.

3.211   Prior to the next meeting (April 18, 2018) and at the meeting, Plaintiff objected to Christensen's admonishment.

3.212   At the April 18, 2018 Committee meeting, Plaintiff also raised a point of order.

3.213   The point of order was regarding the Committee's prior vote to postpone Vision Statement drafting, and the presence on the Agenda of "draft Vision Statement," despite that vote.

3.214   Plaintiff noted that proper procedure suggested that the Committee should take another vote before proceeding.

3.215   Plaintiff's point of order was disrupted by Chair Gale's repeated interruptions.

3.216   The Committee eventually held a vote, and decided to draft the Vision Statement without waiting for the result of the Survey.

3.217   The minutes for the April 18, 2018 meeting fail to reflect this vote.

3.218   During several meetings (e.g. 12/5/17, 1/17/18, 2/7/18, 2/21/18 and 4/4/18), Christensen, Sutton, Gale, Anderson and/or Blossom made separate statements to the Committee and the public that the Growth Management Act

**FIRST AMENDED COMPLAINT - 27**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

requires growth, and/or that the Comprehensive Plan requires that Island Center be expanded and that residential zoning be made more dense than it is now.

3.219   These statements were often made in response to concerns raised by the public and requests that the Island Center area not be excessively developed.

3.220   Plaintiff generally attempted to correct these misstatements of the law to the Committee as they occurred, while she was on the Committee.

3.221   Similarly, during the Committee's interim report to the City Council on August 28, 2018, the Council was told that the Committee was unlikely to recommend significant expansion of the Island Center zone.

3.222   Council member Blossom stated that she wondered whether the community would be allowed to "opt out" of the Comprehensive Plan.

3.223   Following Plaintiff's removal, in June 2019, Consultant Wenzlau (Charlie Wenzlau, a local architect who works for developers) proposed an expansion of about 40 acres of new Neighborhood Center Property.

3.224   Following Plaintiff's removal, in approximately November of 2019, Consultant Arango proposed an expansion of about 70 acres of new Neighborhood Center Property in Island Center.

3.225   The Committee rejected both proposals.

3.226   At several meetings prior to Plaintiff's removal (e.g. 12/5/17, 2/21/18, 3/21/18, 4/18/18, 7/18/18 and 8/1/18) Sutton and/or Gale commented that sewer expansion to Island Center would enhance either the Fletcher Bay water quality or would facilitate the development of small lots in the area.

3.227   In November of 2019, a replacement consultant's contract was reviewed by the City Council ("Framework").

**FIRST AMENDED COMPLAINT - 28**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.228   Framework's subconsultant offered a sewer analysis for $30,000.

3.229   A Committee member spoke to Council during the consideration of the Contract, and opposed this portion of the Contract, stating the Committee had not, and was unlikely to, develop a Plan that would require a sewer expansion.

3.230   The objecting Committee member noted the Committee could use that money to gain advice on other issues it was considering.

3.231   The City Manager promised the Council that the money would not be spent unless and until the Committee developed a draft Plan that required sewer expansion.

3.232   Based on the promise, the Council voted to approve the full contract.

3.233   At the March 4, 2020 Committee meeting, a City Staffer advised the Committee that the sewer analysis "was underway."

3.234   The Committee had not yet drafted a Plan.

3.235   None of the draft elements to the draft Plan included density sufficient to require sewer expansion.

3.236   Plaintiff inquired with the City Manager as to the genesis of the authority for the expenditure, and has not received an answer.

3.237   Blossom and others have asserted that higher density is needed to create affordable housing.  During 2020, Plaintiff advised the Committee that state law existed that would allow them to mandate that any new residential density created in their Plan be affordable.  RCW 36.70A.540.

3.238   At the November 23, 2020, Committee meeting, Staff liaison Sutton recommended to the Committee that they not utilize the statute.

**FIRST AMENDED COMPLAINT - 29**
(Cause No. 3:20-cv-06025-RSL)

3.239   The consultant, whose sub-consultant is Charlie Wenzlau, a local architect and developer, advised the Committee to not change the zoning allowances, but to use the existing Code.

3.240   The existing applicable Code section, BIMC 18.12.030(D), allows bonus density for actions other than the building of affordable housing.

3.241   Plaintiff has been "blackballed" from COBI land use and important committees.

3.242   Plaintiff has applied for a position on the Ethics Board three times.

3.243   Plaintiff served as a Justice on her law school's Honor Court while she was also a member of the Law Review, and is otherwise qualified.

3.244   After Plaintiff interviewed the third time, in March of 2020, COBI re-opened applications without explanation.

3.245   Plaintiff again was not appointed.

3.246   The Chair of the Ethics Board resigned in January of 2021.

3.247   The departing Ethics Board Chair advised Plaintiff she had recommended that Plaintiff be named to the Board as her replacement.   The seat remains open as of the filing of this First Amended Complaint.

3.248   Also, following her removal, Plaintiff applied for an open Planning Commission seat, and was not selected.

3.249   During the Pandemic, Committee meetings were conducted by "Zoom."

3.250   Materials reviewed by the Committee at meetings were sometimes, but not always, provided with Agenda packets for meetings.

**FIRST AMENDED COMPLAINT - 30**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.251 On December 16, 2020, Plaintiff requested copies of the "Zoom" meetings of the Island Center Subarea Planning Process Steering Committee.

3.252 More than five days later, on December 31, 2020, COBI responded that the Island Center "Zoom" meetings were not recorded, due to "City Policy."

3.253 COBI amended the response later the same day to advise that the meetings, both video and audio, were in fact recorded, but that the video portion of the recording was not retained, nor uploaded.

3.254 COBI did not provide the reason for the delayed response.

3.255 A video link for the full meeting (video and audio) that took place on December 16, 2020, had been provided in response to the public records request on December 18, 2020.

3.256 COBI did not produce the video portion of the recordings for any prior meeting.

3.257 Following Plaintiff's inquiry, COBI confirmed in an email posted to the public records portal that the video portion of each prior "Zoom" meeting had been created, but that it was deleted following the creation of the document.

3.258 COBI has failed to file approved minutes for the Island Center meetings for the dates September 30, 2020, October 28, 2020 and November 23, 2020.

3.259 COBI has never recorded minutes for the December 5, 2017 meeting.

3.260 RCW 42.30.030 requires that minutes for all regular and special meetings (except executive sessions) be recorded and provided for public inspection.

## IV.   CAUSE OF ACTION - 42 U.S.C. § 1983

4.1 Plaintiff incorporates the factual allegations found in paragraphs 3.1-3.260, and incorporates the same as though fully stated herein.

**FIRST AMENDED COMPLAINT - 31**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

4.2    Plaintiff was engaged in a Constitutionally protected activity when she raised questions, expressed opinions, objected to process violations, objected to misstatements of the law or objected to misstatements of the Comprehensive Plan.

4.3    Defendant's actions were taken under the color of state law, and were calculated to, and did, pursuant to 42 USC § 1983, violate Plaintiff's right to participate in government and attempt to persuade others, and effectively punished her for her exercise of her right to free speech and political speech, in violation of the United States Constitution.

4.4    Defendant's actions against Plaintiff would have chilled a person of ordinary firmness from continuing to engage in the protected activity.

4.5    Defendant's purpose, according to Sarah Blossom on August 14, 2018, in removing Plaintiff was expressed as prioritizing the "health and functioning of the Committee over this person's participation in it."    Defendant's agent Gary Christensen provided input that "there hasn't been full support of the process," "there's been some decisiveness [sic]" "at the point of being argumentative."   Gary Christensen provided his opinion that he did not "always see that [respectful commentary] from this individual" and that he "found that frustrating."   Council member Blossom closed her commentary by asserting that "of course people can still come and speak their mind . . . and I would say it's not about what she's speaking or her point of views [sic], it's um, more how she interacts with the other committee members and with staff."   Plaintiff's engagement in this protected activity was a substantial or motivating factor in the Defendant's conduct.

4.6    Defendant was obligated to protect, not impede, Plaintiff's right to raise concerns regarding multiple misstatements of law, the repeated failure to disclose

**FIRST AMENDED COMPLAINT - 32**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

conflicts of interest, departures from proper process, and the Staff overriding of Committee votes, regardless of whether such concerns made other Committee members "uncomfortable," and regardless of whether discussion of the concerns allegedly slowed down the Committee's meetings, and/or the planning process. The desire for a "smooth process" does not trump Plaintiff's, or anyone's, Constitutionally protected rights.

4.7    Defendant's actions were intentional and conducted with malice, or done with reckless or callous indifference to Plaintiff's federally protected rights, to punish and silence her (and, potentially, others) for correcting Defendant's representatives' misstatements of law and violations of procedure, as well as for insisting on the disclosure of potential conflicts by those charged with serving the citizens of Bainbridge Island.

4.8    Defendant's acts have caused Plaintiff emotional distress and reputational injuries, for which Plaintiff seeks damages.

## V.    CAUSE OF ACTION - DEFAMATION

5.1    Plaintiff incorporates the allegations found in paragraphs 3.1-3.260, and incorporates the same as though fully stated herein.

5.2    COBI, by and through its agents Kol Medina, Gary Christensen, Maradel Gale, Jon Quitslund and Sarah Blossom, defamed Plaintiff by publishing false and injurious information and implication regarding Plaintiff to third parties under a Washington State claim of common law defamation. Plaintiff served on the Committee as a citizen volunteer, and was not a public figure. Defendant enjoys no immunity for these acts.

5.3    As the statements tended to harm Plaintiff in her profession and

**FIRST AMENDED COMPLAINT - 33**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

alleged she is irrational, behaved "totally inappropriately" and was "ugly" with staff, adversely implicating her mental state and fitness to practice law, these acts constituted defamation *per se*.

5.4    As Defendant intended to bar or limit Plaintiff's participation in government by making/allowing these false statements, and as the statements were unnecessary and would not have been made in public at all had Defendant followed its own Code's requirements for the removal of a Committee member, the statements were made out of malice.

5.5    The false statements subjected Plaintiff to contempt or ridicule.

5.6    The false statements damaged Plaintiff in an amount to be proven at trial.

5.7    Plaintiff has complied with Revised Code of Washington 7.96.040, and Defendant refuses to correct the defamation.

## VI.    CAUSE OF ACTION - NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

6.1    Plaintiff incorporates the allegations found in paragraphs 3.1-3.260, and incorporates the same as though fully stated herein.

6.2    Defendant, by and through its agents Gary Christensen, Kol Medina, Maradel Gale and Sarah Blossom, negligently or intentionally inflicted emotional distress on Plaintiff.

6.3    Defendant's actions damaged Plaintiff in an amount to be proven at trial.

**FIRST AMENDED COMPLAINT - 34**
(Cause No. 3:20-cv-06025-RSL)

## VII.   CAUSE OF ACTION – VIOLATION OF PUBLIC RECORDS ACT
## RCW 42.56

7.1    Plaintiff incorporates the allegations in paragraphs 3.1-3.260, and incorporates the same as though fully stated herein.

7.2    The video recorded "Zoom" meetings are public records as defined by RCW 42.56.010(3) and (4), as they were "video recordings," and these records are therefore subject to production.  No exemption to production applies.

7.3    RCW 42.56.080 provides that "agencies . . . shall, upon request for identifiable public records, make them promptly available to any person."

7.4    RCW 42.56.520 provides:  "Within five business days of receiving a public record request, an agency . . . must respond by either 1) providing the record; 2) providing an [internet link]; 3) acknowledging that the agency . . . has received the requests and providing a reasonable estimate of the time the agency will require to respond to the request; or 4) denying the public record request."

7.5    COBI violated the PRA by withholding records responsive to the request that are not exempt from production.

7.6    COBI violated the PRA by not safeguarding, storing, cataloging, and retaining public records and for allowing the loss and destruction of public records.

7.7    Plaintiff has been harmed by the deprivation of relevant, timely and important government records regarding a land use committee's activity.

7.8    Plaintiff is entitled to reasonable attorney's fees, all costs, and a statutory penalty of $100 per record per day from the date of destruction.

## VIII.   CAUSE OF ACTION – VIOLATION OF RCW 4.24.510

8.1    Plaintiff incorporates the allegations in paragraphs 3.1-3.260, and incorporates the same as though fully stated herein.

**FIRST AMENDED COMPLAINT - 35**
(Cause No. 3:20-cv-06025-RSL)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

8.2     Plaintiff was immune from liability for her communications regarding inaccurate statements of law, the failure of some Committee members to disclose conflicts, and objections regarding process.

8.3     COBI did not sue Plaintiff for her protected speech, but COBI used its substantial power differently, penalizing Plaintiff for her protected speech by publicly shaming and removing her from the committee.  Such strategic actions, if filed in court, are termed "SLAPP suits."  Washington has recognized that such suits and actions "are designed to intimidate the exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution" and that the "United States Constitution protects advocacy to government, regardless of content or motive, so long as it is designed to have some effect on government decision making."  RCW 4.24.510 Notes re Intent.

8.4     Plaintiff is entitled to recovery under RCW 4.24.510, including but not limited to reasonable attorneys' fees and statutory damages of $10,000.

### <u>TRIAL BY JURY DEMANDED</u>

Plaintiff demands trial by jury.

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

1

### PRAYER

2      WHEREFORE, Plaintiff prays that the Court grant the following relief against

3  Defendant:

4             1.      Actual Damages;

5             2.      Statutory Damages;

6             3.      Punitive Damages as may be allowed under the law;

7             4.      Attorney Fees and Costs incurred in this action; and

8             5.      Such other and further relief as the Court may deem just and

9  proper.

10      DATED:  January 14, 2021.

11                                    NEAL FIRM, PLLC

12                                    /s/  Christopher L. Neal
13                                    Christopher L. Neal
                                      WSBA No.:  25685
14                                    Neal Firm, PLLC
                                      PO Box 11215
15                                    Bainbridge Island, WA 98110
                                      (206) 317-3000
16                                    cneal@coveragenorthwest.com
                                      Attorney for Plaintiff Lisa Neal
17

18

19

20

21

22

23

24

25  **FIRST AMENDED COMPLAINT - 37**
    (Cause No. 3:20-cv-06025-RSL)
26