Judge Robert S. Lasnik

1

2

3

4

5

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

6

7

8

9

10

11

| | |
|---|---|
| LISA C. NEAL, an individual,<br><br>                             Plaintiff,<br><br>       v.<br><br>CITY OF BAINBRIDGE ISLAND,<br><br>                             Defendant. | No. 3:20-cv-06025<br><br>DEFENDANT CITY OF BAINBRIDGE ISLAND'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO BIFURCATE PLAINTIFF'S PUBLIC RECORDS ACT CLAIMS<br><br>**NOTED FOR HEARING:**<br>**FRIDAY, March 26, 2021** |

12

13

## I.      INTRODUCTION AND RELIEF REQUESTED

14

15

16

Pursuant to F.R.C.P. 12(b) and LR 7(d)(3), Defendant City of Bainbridge Island ("City") requests that the Court dismiss Plaintiff Lisa Neal's claims as a matter of law. In the alternative, the City requests that the court bifurcate Plaintiff's Public Records Act claim.

17

## II.      FACTS RELATED TO MOTION TO DISMISS

18

19

20

21

22

23

24

25

26

Neal served as a citizen volunteer[1] on the Island Center Subarea Planning Process Committee ("Committee") for the City of Bainbridge Island from November 2017 to August 14, 2018. The Committee was established by the City Council ("Council") primarily to "commence the subarea planning process for a designated center or neighborhood." Bainbridge Island Municipal Code ("BIMC" or "Code") 2.16.210(E)(1) (2019). The Committee's purpose is set forth in BIMC 2.16.210(e)(3) (2019). The Code authorized the Council to appoint up to nine Bainbridge Island property owners, landowners, or business owners to the Committee. BIMC 2.16.210(E) (1–3). During Neal's tenure as a member, the Code provided that "[m]embers may be removed upon a majority vote of the city council."

27

[1] BIMC 2.01.010.

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 1
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

BIMC 2.32.020 (2018).[2] (Appendix A).

On August 14, 2018, the Council voted to remove Neal from the Committee. Dkt. 3, ¶ 3.155 (5-2 vote) (See Appendix B). During the Council meeting, Councilmember Sarah Blossom made a motion to remove Neal. Dkt. 3, ¶ 3.88. The meeting agenda included a motion to remove a citizen from a committee. *Id*. ¶ 3.71. According to Plaintiff, the Council then held a "public hearing" during which some elected Councilmembers and members of the public "provide[d] their opinions regarding Plaintiff." *Id*. ¶ 3.83. Blossom told Neal the next day that the Council had voted to remove her from the Committee. *Id*. ¶ 3.159. Neal asserts she watched the videotape of the Council meeting a few days later and was stressed and embarrassed. *Id*. ¶ 3.175. Since her removal from the Committee, Neal has continued to attend the Committee meetings as a member of the public. *Id*. ¶ 3.190.

### III.   PROCEDURAL HISTORY

Without serving the City, Neal filed her first Complaint on October 16, 2020. Dkt. 1. Then, on January 14, 2021, she filed an *Amended* Complaint and served only this pleading on the City. Dkt. 3. In the Amended Complaint, Neal asserted additional, unrelated facts and an RCW Ch. 42.56 Public Records Act ("PRA") claim arising out of a PRA request she made two months after filing her original Complaint. Plaintiff has never served her original Complaint (Dkt. 1) on the City.  See, Dkts. 1, 1-1, 1-2, 3.

### IV.   EVIDENCE RELIED UPON

- Plaintiff's Complaint [Dkt. 1].
- Plaintiff's First Amended Complaint [Dkt. 3].
- City of Bainbridge Island Municipal Code 2.16 and Ordinance No. 2019-01, amending BIMC 2.16.210E.1 [Appendix A].
- Video Excerpt of August 14, 2019 City of Bainbridge Island City Council Meeting, time stamp 4:05:46 to 4:21:51 [Appendix B];
- Excerpts of Public Records Requests, responses and related communication between Plaintiff and the City referenced regarding Plaintiff's PRA claim [Appendix C].

---

[2] This text was removed from BIMC 2.32.020 in 2019, when the City amended Section 2.16.210E.1, adding the following language: "The removal and resignation of members shall be governed by Chapter 2.01 BIMC." Bainbridge Island Ordinance No. 2019-01 (effective Jan. 16, 2019) [https://perma.cc/8UNB-ETSG].

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

1

## V.    ARGUMENT AND LEGAL AUTHORITY

2  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

3  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

4  U.S. 662, 678 (2009). Generally, courts may only consider the complaint when ruling on a

5  Rule 12(b)(6) motion.[3] Courts may, however, take judicial notice of a fact that "is not subject

6  to reasonable dispute,"[4] "[d]ocuments whose contents are alleged in a complaint" but are not

7  attached,[5] and "consider the full texts of the documents which the complaint quotes only in

8  part."[6] *Reinschmidt v. Zillow, Inc*., 2014 WL 5343668, at *2 (W.D. Wash. Oct. 20, 2014).

9  **A.    Neal's Lawsuit Should Be Dismissed for Failure to Properly Effect Service.**

10  Neal's claims should be dismissed under FRCP 12(b)(4) for insufficient service.

11  Despite filing a Complaint on October 16, 2020, Neal has never served the City with a copy

12  of that pleading. Dkt. 1. Instead, without serving a copy of the original Complaint, Neal filed

13  an Amended Complaint on January 14, 2021 and only served the City with that pleading. Dkt.

14  3.

15  Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is

16  filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action

17  without prejudice against that defendant or order that service be made within a specified time."

18  While the civil rules allow a plaintiff to amend a pleading once as a matter of course, it must

19  be done within 21 days of <u>service</u> [of the Complaint] or within 21 days of service of a

20  responsive pleading or a Rule 12 motion. Fed. R. Civ. P. 15. And "the filing of an amended

21  complaint does not restart the service period against a defendant named in the original

22  complaint under Rule 4(m)." *Thai v. United States*, 2016 WL 1585135, at *2 (S.D. Cal. Mar.

23  15, 2016).

24  Here, Neal *never* served the City with the original Complaint [Dkt. 1] filed with the

25

26  [3] *Clegg v. Cult Aware. Net.*, 18 F.3d 752, 754 (9th Cir. 1994).
[4] Fed.R.Evid. 201.

27  [5] *In re Stac Electronics Sec. Litig*., 89 F.3d 1399, 1405 (9th Cir.1996).
[6] *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir.1997).

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 3
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

Court. Instead, she unilaterally filed an Amended Complaint [Dkt. 3] without ever first serving the City. This Amended Complaint was not permitted as a matter of course pursuant to Rule 15 because she had not yet served the City, and Neal failed to comply with the Rule 4 requirement to serve the City with the Complaint she filed within 90 days.[7] Thus, the Court does not have jurisdiction over this matter and must dismiss it.

**B.**   **Plaintiff Fails to State an Actionable First Amendment Retaliation Claim.**

Neal claims the Council vote removing her from a volunteer committee constitutes retaliation for exercising First Amendment rights and she seeks damages against the City pursuant to 42. U.S.C. § 1983.[8] The Court should dismiss this claim under Rule 12(b)(6) because Neal has not stated a viable First Amendment Retaliation claim.

The First Amendment forbids government officials from retaliating against individuals for speaking out. *Blair v. Bethel Sch. Dist.,* 608 F.3d 540 (9th Cir. 2010). To recover under § 1983, a plaintiff must prove: (1) she engaged in constitutionally protected activity; (2) as a result, she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Id.* (citing *Pinard v. Clatskanie Sch. Dist. 6J,* 467 F.3d 755, 770 (9th Cir. 2006)).

1.   Speech Expressed in the Course and Scope of an Appointed Role is Not Protected by the First Amendment.

Neal's speech expressed in her role as a Committee member is not protected speech. In the case of an employee, speech that occurs as part of their official duties is not so protected. *See Garcetti v. Ceballos*, 547 U.S. 419, 417 (2006). Courts conduct a practical inquiry on a case-by-case basis to determine whether employees are speaking as part of their official duties, asking first whether the speech "'stemmed from and [was] the type... that [the employee] was

---

[7] Dkt. 3, ¶ 3.1.
[8] Dkt. 3, ¶ 4.1–¶4.8.

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 4
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

paid to do.'" *Rohrbough v. Univ. of Colo. Hosp. Auth*., 596 F.3d 741, 746 (10th Cir. 2010).[9]

Though Neal was not a paid City employee, nothing in this analysis suggests the distinguishing factor is compensation, but rather the individual is fulfilling duties of a position assigned by the City. Employers are entitled to determine whether an appointed employee is fulfilling their job duties in a manner expected of the agency; similarly, a City Council is authorized to appoint or remove Committee members is entitled to determine if an appointed volunteer is fulfilling the role in a manner that is productive and in keeping with the Council's intended mission of the Committee. *See infra*.

   2.   The City Council Does Not Violate the First Amendment by Removing Members from Appointed Citizen Volunteer Committees.

Neal claims the Council's 5-2 vote to remove her from the Committee violated her right to "participate in government." Dkt. 3, at ¶ 4.5, 4.5. Even assuming Neal engaged in protected speech, removal from the Committee did not infringe on these rights.

The Ninth Circuit recognizes that "city council meetings, once open to public participation, are limited public forums. A council can regulate not only the time, place, and manner of speech in a limited public forum, but also the content of speech—as long as content-based regulations are viewpoint neutral and enforced that way." *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010). The government may place reasonable limits on speech in a limited public forum. *Id.* at 503. "In a limited public forum, [the Ninth Circuit's] inquiry into the reasonableness of restrictions takes into account whether the restrictions imposed leave open alternative channels of communication." *Reza v. Pearce*, 806 F.3d 497, 504 (9th Cir. 2015). For instance, the Council can place limits on time for public comment or even moderate public attendance at a meeting when "their speech 'disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting.'" *White v. City of Norwalk*, 900 F.2d 1421, 1426 (9th Cir. 1990). The Council was entitled to decide what conduct was acceptable and/or desired in

---

[9] In *Gibson v. Office of Atty. Gen., State of Ca.*, 561 F.3d 920, 925 (9th Cir. 2009), the Ninth Circuit added a fifth question: whether the employer would have taken the same employment action even absent the protected speech.

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO BIFURCATE PL'S PUBLIC RECORDS ACT CLAIMS- 5 3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

the conduct of Committee meetings.

Further, elected officials, including city councilmembers, have a corresponding First Amendment right to "vot[e] their conscience on the important issues," including those impacting committee appointees. *See Westfall v. City of Crescent City*, 2011 WL 2110306, at *1 (N.D. Cal. May 26, 2011) (City council within its authority to remove councilmember from committees and did not limit Plaintiff's freedom of speech); *Blair,* 608 at 544 ("[H]e was removed from a titular position on a school board by the very people who elected him to the position in the first place."); *Hensley v. City of Port Hueneme*, 2019 WL 3035057, at *4 (C.D. Cal. 2019) (resolution stripping city councilman of duties due to perceived "mean-spirited remarks" undermining some objectives "does not call for constitutional safeguards of the First Amendment"). The *Blair* Court explained: "Voting by members of municipal boards, commissions, and authorities comes within the heartland of First Amendment doctrine, and the status of public officials' votes as constitutionally protected speech [is] established beyond peradventure of doubt." *Blair*, 608 F.3d at 546.

Here, Neal was never barred from attending any meeting or participating in public comment, and the decision to remove her from the Committee was entirely viewpoint neutral. She admits she still attends and participates in the Committee. Dkt. 3, ¶¶ 3.66, 3.233, 3.238. The Council expected and encouraged Neal to continue to participate in the meetings as a member of the public after her removal.[10] *Id*., ¶ 3.163. Councilmember Blossom emphasized this point: "*She's an important voice; I'm sure she will stay involved in the meetings and let us hear that voice*"; "*Of course people can still come and speak their mind. And, again, I would say it's not about what she's speaking or her point of views, it's more of how she interacts with other committee members and with staff*."[11] Before voting on the motion, the

---

[10] Neal quotes, references, and reports that she watched the recording of the August 14, 2018 Council meeting repeatedly in her Complaint. *See* Dkt. 3. The Ninth Circuit follows the "incorporation by reference" doctrine, which provides that defendants can attach documents and recordings to a motion to dismiss "'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[11] Appendix B (Bainbridge Island City Council, City Council Regular Business Meeting BAINBRIDGEWA.GRANICUS.COM (Aug. 14, 2018) [https://perma.cc/UBN2-3YMV]).

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO BIFURCATE PL'S PUBLIC RECORDS ACT CLAIMS- 6
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

Council also confirmed that Neal could reapply to join the Committee if she wanted to. *Id.*
*See,* Appendix B (video).

    3.   <u>Plaintiff Cannot Establish a Causal Connection Between Speech Protected by the
First Amendment and Any Adverse Action by the City.</u>

Neal alleges that her "engagement in this protected activity was a substantial or
motivating factor in the Defendant's conduct." Dkt. 3, ¶ 4.5. She cites comments during
Council discussion as evidence of "the City's" intent to remove her from the committee
because she engaged in expressive activity protected by the First Amendment. *Id.* She alleges
she has not been selected by the Council to serve on the Ethics Committee, asserting she
believes she has been "blackballed" from important City committees.[12] The evidence does not
support these allegations. *See* Appendix B.

These allegations necessarily call into question the motivation of each of the seven
elected officials, and particularly the five Councilmembers who voted in favor of removing
her from the Committee. However, Federal courts have cautioned against allowing courts to
delve into this branch of legislative decision-making and the Court should refrain from doing
so here. *See, e.g.*, *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984) ("The Court
prevents inquiry into the motives of legislators. . . ."); *Trunk v. City of San Diego*, 2007 WL
1110715, at *6 (S.D. Cal. Apr. 2, 2007) (precluding discovery regarding individual legislators'
motives for voting).

**C.**   **<u>Plaintiff Fails to State an Actionable Claim of Defamation.</u>**

Neal also fails to state a viable defamation claim. Her claim is time-barred, she cannot
show the essential elements of defamation, and several immunity doctrines preclude liability
against the City.

    1.   <u>Plaintiff's Defamation Claim is Time-Barred</u>.

First, the two-year statute of limitations bars Plaintiff's defamation claim. *Phillips v.
World Pub. Co.*, 822 F. Supp. 2d 1114, 1121 (W.D. Wash. 2011). "In the internet context, the

---

[12] Neal fails to mention that the City Council has, however, since appointed her to the City's Salary Commission.

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 7
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

statute of limitations begins to run when the allegedly infringing material is *first* posted on the internet." *Id.* at 1122. Neal alleges that multiple speakers made defamatory statements about her at the August 14, 2018 City Council Meeting. Dkt. 3, ¶¶ 5.1–5.7. Without serving it, Neal filed a Complaint in October 2020—more than two years later. She then failed to effect service of the Complaint within ninety days. Dkt.1.

2.   <u>Neal is a Public Figure and Therefore Must Establish Actual Malice by Clear and Convincing Evidence.</u>

Even if timely, her claim fails because she cannot show the essential elements of defamation: "(1) a false statement, (2) publication, (3) fault, and (4) damages." *Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 944 (9th Cir. 2013) (quoting *Duc Tan v. Le,* 177 Wn.2d 649 (2013)). As a public figure, she cannot recover damages for a defamatory falsehood related to her official duties unless she proves—by clear and convincing evidence-- that the statement was made with 'actual malice.' *Reykdal v. Espinoza*, 196 Wash. 2d 458, 465, 473 P.3d 1221, 1225 (2020) (incumbent candidate for school superintendent office was public figure).

Generally, whether the public figure privilege applies depends on: (1) the importance of the person's public position; and (2) the nexus between the person's position and "how closely the defamatory material bears upon fitness for office." *Eubanks v. N. Casc. Broad.,* 115 Wash. App. 113, 61 P.3d 368 (2003).[13] As the Washington State Supreme Court recently explained in *Reykdahl*:

> The First Amendment to the United States Constitution is more protective of speech criticizing public officials because such speech is essential to citizens' ability to thoughtfully engage in public debate and the democratic process. The public good that arises from sharp criticism and examination of public officials' records requires laws and policies that will not chill such speech.

---

[13] In *Eubanks*, a department director was a public figure where the alleged defamation was a "scathing report to the County Commissioners" regarding practices of department employees including the "aggressive and sometimes threatening behavior" of the plaintiff. 115 Wn. App. at 117, 123. Because the statements related to his job performance, there was a nexus between the subject matter and his job performance. *Id.* at 124.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

1    196 Wn.2d at 465.

2        Washington courts have characterized public employees in volunteer positions as

3    "public figures." *See, e.g., Tilton v. Cowles Pub. Co.*, 76 Wn.2d 707, 717 (1969)

4    ("Plaintiffs…voluntarily stood for election for the leadership of … Public Safety Council,"

5    were public figures); *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 8–9 (1970) (public

6    figure where "was deeply involved in the future development of the city of Greenbelt");

7    *Eubanks, supra* (department director was a public figure regarding "scathing report to the

8    County Commissioners" about his job performance [14]

9        Neal's concedes she is deeply and publicly involved in and takes an active role in

10    public discourse regarding community planning and issues. Serving on and applying for City

11    committees and the City Council, she necessarily exposes herself to a certain level of critique

12    regarding how she performs those duties as part of the democratic process. Dkt. 3, ¶ 3.2. As a

13    "public figure," Neal must prove each speaker made false & defamatory statements with "a

14    high degree of awareness of probable falsity or that [the speaker] in fact entertained serious

15    doubts about the truth of the statement. *Reykdahl*, at 465. This question focuses on *the*

16    *speaker's* subjective belief in the truth of the statement asserted—not their attitude or hostility

17    towards the plaintiff. *Id*.; *Herron v. KING Broad. Co*., 109 Wn.2d 514, 523 (1987).  Neal's

18    allegations do not meet this standard. [15]

19        3.    Opinions Do Not Support a Defamation Claim.

20        It is a complete defense to claims of defamation if the alleged false statements are true

21    or consist of nonactionable opinions. *Phoenix Trading*, 732 F.3d at 945 (quoting *Robel v.*

22    *Roundup Corp*., 148 Wn.2d 35 (2002) ("Because expressions of opinion are protected under

23    the First Amendment, they are not actionable.")). When a speaker acknowledges their own

24    subjective biases, uses "terms of degree and approximation," or otherwise implies that the

---

[14] One may be a public figure solely for the purposes of the action: "Limited-purpose public figures are those who voluntarily inject themselves or are drawn into a public controversy and thereby ecome public figures for a limited range of issues." *Clardy v. Cowles Pub. Co.*, 81 Wn. App. 53, 59 (1996).

[15] Even if Neal were not a "public figure," she still cannot establish defamation based on a negligence standard. *LaMon v. Butler*, 112 Wn.2d 193, 197, 770 P.2d 1027, 1029 (1989) .

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 9
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

statement is one of opinion rather than a factual assertion, then the statements are likely opinions. *Phoenix Trading*, at 945. Further, as the court explained in *Seaquist v. Caldier*, 8 Wn. App. 2d 556, 566, *rev. den.*, 193 Wn.2d 1041 (2019): "[s]tatements are more likely to be opinion when in the context of a political debate. Further, in the context of ongoing public debate, audiences are prepared for mischaracterizations, rhetoric, and exaggerations, and are likely to view such representations with an awareness of the subjective biases of the speaker" (rejecting defamation and false light claims arising out of social media posts, interviews, and photos regarding district representative candidate). A statement that is substantively true is not actionable even if the statement includes a mixture of true and false statements. *Id.* at 557.

The statements Neal alleges are defamatory are nonactionable opinions. Each speaker's individual statements are addressed in more detail in the sections below.

    4.   <u>Plaintiff Cannot Establish Liability Against the City Based on the Statements of the Individual Speakers.</u>

Because the City is the only defendant, Neal must show the City can be held liable for the statements of various individual speakers. *Lutheran Day Care v. Snohomish Cty.*, 119 Wn.2d 91, 99 (1992). Washington courts "retain respondeat superior as the basis of local entity tort liability for the acts of their officers." *Id.* at 127. Thus, the City can only be liable for defamation through the acts of its agents acting on behalf of the City within the scope of their official duties. A video excerpt of the August 14, 2018 Council meetings, reflecting every speaker's words, is attached hereto as Appendix B.

    ***a.  The City enjoys the immunity of its agents.***

Because the City can only be liable for defamation on a respondeat superior basis, the City enjoys the immunity of its agents. *Lutheran Day Care*, 119 Wn.2d at 128 (explaining that where respondeat superior serves as the basis for local entity tort liability, "'public policy . . . requires immunity for both the state and the county for acts of judicial and quasi-judicial officers in the performance of the duties which rest upon them").

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

     *i.   Legislative Immunity*

Sovereign immunity applies to cities for purely legislative acts—including the legislative acts of its councilmembers. *Fabre v. Town of Ruston*, 180 Wn. App. at 161, 162 (2014). Indeed, absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (immunity applies for quasi-judicial and executive officials, including city councilmembers acting in a legislative capacity). For instance, city councilmembers are entitled to legislative immunity when they make employment decisions within the scope of their authority as outlined in the city charter. *Rabkin v. Dean*, 856 F. Supp. 543, 546–7 (N.D. Cal. 1994). Additionally, "legislative votes to eliminate individual positions [are] legislative acts entitling the legislators to absolute immunity, even where, as is alleged here, they were directed at specific individuals for political reasons." *Id.* at 547 (citing *Rateree v. Rockett,* 852 F.2d 946, 950 (7th Cir.1988) ("Employment decisions are not administrative when accomplished through traditional legislative functions."); *Aitchison v. Raffiani,* 708 F.2d 96, 99 (3ʳᵈ Cir. 1983) (eliminating appointed position).[16]

     *ii.   Common Interest and/or Intra-Corporate Privileges.*

The "common interest" privilege applies when the declarant and the recipient have a common interest in the "subject matter of the communication." This privilege generally applies to organizations, partnerships, and associations and "arises when parties need to speak freely and openly about subjects of common organizational or pecuniary interest." *Valdez-Zontek v. Eastmont Sch. Dist.*, 154 Wn. App. 147, 162 (2010) (internal citation omitted).

---

[16] In *Bogan v. Scott-Harris*, for example, local legislators were entitled to legislative immunity over their actions related to voting for an ordinance and discussing the termination of a position on the city council. *Bogan v. Scott-Harris*, 523 U.S. 44, 54–56 (1998). There, the Supreme Court highlighted the importance of extending legislative immunity to local legislators, noting "the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace." *Id.* at 44–45.

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO BIFURCATE PL'S PUBLIC RECORDS ACT CLAIMS- 11 3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

### b. The City is not vicariously liable for the individual speakers' statements.

#### i. Sarah Blossom, Former City Councilmember

Neal asserts that Blossom made defamatory statements about her at the August 14, 2018 Council meeting. While serving as an elected official, Councilmember Blossom moved to remove Neal from the Committee during a public City Council meeting on August 14, 2018. Dkt. 3, ¶ 3.88. Plaintiff alleges that Blossom made false statements about her, including: "*we've had some committee members resign because of [Plaintiff's actions/behavior]*," and '*Plaintiff had refused to meet with Planning Director Gary Christensen*,' claiming the statements were "false." *Id.*, ¶¶ 3.90-3.91; 3.118. In fact, Blossom was speaking as part of her official duties as the Council liaison to the Committee:

> *But yeah, I'm very conflicted because my preference is to try to make it work, but I do think that we—and Gary's had more conversations I think with committee members than I have—I think we're at risk of losing our chair, we've had some committee members resign because of this. So it's— really at this point I think more prioritizing, as someone said, the health and functioning of the committee over this person's participation in it I guess is a way to put it. She's an important voice; I'm sure she will stay involved in the meetings and let us hear that voice.*[17]

Here, Blossom was acting squarely within the scope of her duties as an individual, elected Councilmember, which includes discussing the removal of a member of a committee for which she was the Council liaison. Voting on removal of a Committee member is a legislative act, which entitles Blossom—and, by extension, the City—to absolute legislative immunity. *See Bogan*, 523 U.S. at 54–56 (discussing termination of city council position was a legislative act); *Lutheran Day Care*, 119 Wn.2d at 128 (county entitled to the legislative immunity of its agents). Moreover, Blossom did not make false statements of fact with reckless disregard for the truthfulness of the statement. *Phoenix Trading*, 732 F.3d at 944. Taking Neal's allegations as true, Blossom's use of the word "refused" is—at most—an alleged mischaracterization of the reason why Neal did not meet with Christensen (Neal

---

[17] Bainbridge Island City Council, *City Council Regular Business Meeting*, BAINBRIDGEWA.GRANICUS.COM (Aug. 14, 2018) [https://perma.cc/UBN2-3YMV].

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 12
3:20-cv-06025

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

contends that she thanked Christensen for offering to meet with her, but she responded "she felt it would be best if communication occurred in the public record"). Dkt. 3, ¶ 3.111. But mischaracterizations of fact, alone, cannot constitute defamation. *Seaquist, at* 566. Additionally, Blossom's statements that she "thinks" that committee members would resign are nonactionable statements of opinion. *See Phoenix Trading*, at 945. Neal concedes that a councilmember had contacted her earlier that day to encourage her to try to be "more diplomatic" in the future. Dkt. 3, ¶ 3.74. Neal simply responded that, *in her opinion*, she believed she was always diplomatic. *Id.* ¶ 3.75. These are not disputed questions of fact; they are simply alternate opinions.

### ii.  Kol Medina, Then-Mayor

In her Complaint, Neal also quoted[18] then-Mayor Medina introducing the agenda item of removing a Committee member, including "*anyone serving on any of the committees serves at the pleasure of the Council, and we can remove them if we feel like they are, for whatever reason, disrupting the committee, not acting appropriately—we have reasons to—some councilmembers anyway have expressed reasons to believe this person should be removed from the committee.*"[19] Neal also alleges that then-Mayor Medina offered to attend the call with Blossom when she notified Neal of the removal. Dkt. 3, ¶ 3.159-3.162.

Like Blossom, then-Mayor Medina's statements pursuant to his official duties as mayor in legislative session are entitled to legislative immunity. *See Bogan*, 523 U.S. at 54–56, 118 S. Ct. at 97. The Mayor's statements also cannot support a defamation claim because they were true. *Phoenix Trading*, 732 F.3d at 945. According to the BIMC, the Council appoints members to the Committee. BIMC 2.16.210. At the time, the Code provided that the City Council would determine the membership of the Committee. BIMC 2.16.210 (2010); BIMC 2.35.020 (2018).

### iii.  Gary Christensen, Planning Director

---

[18] Dkt. 3, ¶¶ 3.84–3.85
[19] Bainbridge Island City Council, *City Council Regular Business Meeting*, Bainbridgewa.granicus.com (Aug. 14, 2018) [https://perma.cc/UBN2-3YMV].

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 13
3:20-cv-06025

Keating, Bucklin & McCormack, Inc., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

In her Complaint, Neal quoted portions of Christensen's statements at the August 14, 2018 Council meeting, where he responded to a councilmember's statement during the "public comment" portion of the Council meeting regarding whether Neal may have caused other Committee members to quit. Dkt. 3, ¶ 4.5. Neal claims that Christensen's statements included the following: "providing input that 'there hasn't been full support of the process,' 'there's been some decisiveness[sic],' 'at the point of being argumentative.' Gary Christensen provided **his opinion** that he did not 'always see that [respectful commentary] from this individual' and that he 'found that frustrating.'"[20] Christensen made these statements as a City employee responding to inquiries by the Council.[21] Even Neal admits his statements were opinion, which cannot support a claim of defamation. *Phoenix Trading*, at 945. Nor are they false or defamatory.

### iv.  Maradel Gale, Citizen Volunteer on Advisory Committee

Neal alleges that, on December 16, 2020, then-Chair of the Committee Maradel Gale stated "here you go Lisa" when introducing an agenda item and Gale "was overheard" by some unidentified source commenting, "She is just a disaster for this committee" while looking at her cellphone. Dkt. 3, ¶ 3.66, ¶ 3.154.[22] Neither statement can support a defamation claim. "Here you go Lisa" does not contain a false statement of fact about Plaintiff. *Wood v. Battle Ground Sch. Dist.*, 107 Wn. App. 550, 571 (2001) (plaintiff bears burden of establishing a provably false statement). Nor can she establish the isolated, hearsay comment in 2019 was "of and concerning" her. *Whiton v. Oregon Lab. Pr. Pub. Co.*, 91 Wn. App. 1020 (1998) (plaintiff bears burden of proving this element). Further, the statement is a nonactionable statement of opinion and hyperbole and never "published." *Phoenix Trading*, at 944-45. Finally, the statement cannot be attributed to the City: Gale merely serves as a volunteer on an advisory committee, and thus her statements do not bind the City; even as alleged, she was not acting in an official capacity at the time of this comment. *See Kindt*, 67 F.3d at 270.

---

[20] Dkt. 3, ¶ 4.5 (emphasis added).

[21] Appendix B.

[22] Neal speculates that Gale "could have been" reading an email that Neal sent to the Committee. Dkt. 3, ¶ 3.154.

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 14
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

*v.   Jon Quitslund, Citizen Volunteer on Planning Commission.*

At the August 14, 2018 City Council meeting, Quitslund spoke during the "public comment" portion of the meeting. Dkt. 3, ¶ 3.138-¶ 3.142. Plaintiff alleges Quitslund said he heard Neal conducted herself in a way that was "just ugly, and totally inappropriate" to City staff, that he's "heard things that were upsetting" to him "because they seemed to be threatening a kind of dysfunction in a very touchy and very important process" (¶ 3.140), "it seemed to be the case that there's just so much disruption and so much blocking of the description of where we're going and how, and, and what's at stake" (¶ 3.141), and suggested Neal's behavior "seems irrational" (¶ 3.142).

Quitslund's statements cannot be attributed to the City; he made these statements speaking as a member of the public during the public comment portion of the Council meeting. Courts treat the public comment period of City Council meetings as a limited public forum where the public can exercise their First Amendment rights. *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270 (9th Cir. 1995); *see also White*, 900 F.2d 1421 (Citizens have First Amendment interest in directing speech about public issues to those who govern their city during City Council meetings as part of the governmental process). These statements cannot support a claim of municipal liability or even a private claim of defamation; they are nonactionable statements of public opinion, and he acknowledged his own biases and lack of personal knowledge. *Phoenix Trading*, 732 F.3d at 945.

**D.    "Defamation Per Se" Claim is Not Applicable to Government Agencies.**

Chapter 7.96 RCW, the "defamation per se" statute, does not apply to government agencies, including the City. *See* RCW 7.96.020 ("Person" means an individual, corporation, . . . or commercial entity. The term does not include a government or governmental subdivision, agency.); RCW 7.96.100 ("A timely and sufficient correction or clarification made by a **person** responsible for a publication constitutes a correction or clarification made by all **persons** responsible for that publication…") (emphasis added). Nor did Neal specify a false statement the City was authorized to "correct" on behalf of various

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO BIFURCATE PL'S PUBLIC RECORDS ACT CLAIMS- 15
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

1  community members exercising their own right to free speech.

2  **E.  Neal Fails to State An Actionable Claim of Outrage.**

3  Neal alleges the City intentionally inflicted emotional distress upon her (the tort of

4  "outrage") through the conduct of various individuals. Dkt. 3, ¶ 6.1–¶ 6.3.[23] The trial court

5  renders an initial screening to determine whether the defendant's conduct rises to the level

6  necessary to make out a prima facie case. *Orwick v. Fox,* 65 Wn. App. 71, 87–88 (1992);

7  *Dicomes v. State*, 113 Wn.2d 612, 630 (1989). The conduct "must be 'so outrageous in

8  character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

9  regarded as atrocious, and utterly intolerable in a civilized community.'" *Grange,* at 754. The

10  requirement of outrageousness is not an easy one to meet; the level of outrageousness required

11  is extremely high. *Christian v. Tohmeh*, 191 Wn. App. 709, 735–36 (2015).

12  Neal fails to identify any conduct rising to the level of extreme outrage necessary to

13  prove this claim. Further, "[a]n emotional distress claim based on the same facts as an

14  unsuccessful defamation claim 'cannot survive as an independent cause of action.'" *Phillips*

15  *v. World Pub. Co*., 822 F. Supp. 2d 1114, 1120 (W.D. Wash. 2011). *See, e.g*., Dkt. 3, ¶ 3.38–

16  ¶ 3.50 (Neal claims emails with the City Attorney asking her to communicate in writing caused

17  her severe emotional distress). Dkt. 3, ¶ 3.51-¶ 3.52.

18  **F.  Neal Fails to State An Actionable Claim for Negligent Infliction of Emotional**

19  **Distress.**

20  To establish negligence, a plaintiff must prove (1) the existence of a legal duty, (2)

21  breach of that duty, (3) injury to the plaintiff resulting from the breach, and (4) that the breach

22  proximately caused the plaintiff's injury. *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d

23  62, 66 (2005). Whether a duty exists is a question of law. *Hertog v. City of Seattle,* 138 Wn.2d

24  265, 275 (1999).[24] Neither the City, the City Attorney, nor elected officials, employees, or

---

25  [23] To establish a claim for the tort of outrage, Neal must show that (1) she suffered severe emotional distress;
(2) the emotional distress was inflicted intentionally or recklessly, but not negligently; (3) the conduct

26  complained of was outrageous and extreme; and (4) she personally was the subject of the outrageous
conduct." *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 753–54 (2013).

27  [24] Further, "[a] claim of negligent infliction of emotional distress requires the plaintiff to prove that he 'has
suffered emotional distress by objective symptomatology and the emotional distress must be susceptible to

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 16
3:20-cv-06025

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

volunteers of the City owe a legal duty to ensure that a volunteer committee member does not experience stress related to serving on the committee, public speech and debate, or legislative action by elected officials to remove a citizen volunteer from a committee to which the Council appointed her. *See*, *Snyder v. Med. Servs. Corp.,* 145 Wn.2d 233, 243 (2001) (even employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes) (quoting *Bishop v. State,* 77 Wn. App. 288, 234–35, 889 P.2d 959 (1995)).

The public duty doctrine also bars this claim. *See Fabre*, at 159. Neal cannot show any duty owed to her in particular as opposed to the public in general. *See*, *Babcock v. Mason Cty. Fire Dist. No. 6,* 144 Wn.2d 774, 785 (2001). "[A] duty owed to all is a duty owed to none." *Beal v. City of Seattle,* 134 Wn.2d 769, 784 (1998); *Osborn v. Mason County,* 157 Wn.2d 18, 27 (2006). Neal's claims are based on governmental functions inherent in the City administering land use processes set forth in the BIMC for the benefit of the public and in compliance with state law; the City owes no legal duty specifically to Neal to manage this process in any particular manner. *See Fabre*, at 150 (quoting *Okeson v. City of Seattle,* 150 Wn.2d 540, 550 (2003) (governmental functions are performed for the common good of all, not for special benefit of the corporate entity).

### G.   Neal's RCW 4.24.250 "Anti-SLAPP" Claim is Frivolous and Should be Dismissed as a Matter of Law.

Neal also asserts a claim *against the City* based on RCW 4.24.250, ("Communication to government agency or self-regulatory organization—Immunity from civil liability"). Dkt. 3, ¶ 8.1-8.3. However, this statute only provides an immunity as a defense to claims; it does not create a cause of action *against* any individual or entity. Noone has pursued civil claims against Neal. See Dkt. 3, ¶8.3 ("COBI did not sue Plaintiff for her protected speech…."). This claim by Plaintiff, who is an attorney, is flagrantly frivolous, unsupported by any legal

---

medical diagnosis and proved through medical evidence.'" *Phillips supra at* 1120 (quoting *Kloepfel v. Bokor*, 149 Wn.2d 192, 197, 66 P.3d 630 (2003)).

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO BIFURCATE PL'S PUBLIC RECORDS ACT CLAIMS- 17 3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

authority, and should be dismissed.

**H.** **Neal Cannot Establish Any Violation of the PRA for the Records Requests She Submitted Months After Filing This Lawsuit and Then Added to Her Suit.**

    1.  Neal Submitted Records Requests Two Months After Filing Her Original Complaint.

Neal submitted a request for records via email on December 16, 2020, asking the City to: "*Please produce the video and audio Zoom recordings for all Island Center Subarea Planning Process meetings.*"[25] The City assigned PRR 20-818 to the request and wrote: "*We will respond to your request within five business days.*" [26] Then, two days later—within five business days—the City provided its full response to the request and wrote to Neal:

> I am releasing a link to the Committee Agenda Center on the City's website. All audio recordings of the Island Center Subarea Planning Process Steering Committee meetings are housed there. There is a video of the February 10, 2020 Open House in this repository. . . . I am also releasing the Zoom meeting video for the December 16, 2020 Island Center Subarea Planning Process Steering Committee meeting. To my knowledge, this is the only other meeting video we have . . . [27]  (December 18, 2020)

Thus, PRR 20-818 was fulfilled on Friday, December 18, 2020, only one business day after it was received. The City did not withhold, redact, or fail to produce any records; there were no Zoom recordings from any other meetings that existed as of the date of the request. The City then noted it would keep PRR 20-818 open until December 31, 2020 so Neal could submit any inquiries regarding the City's response.

On or about December 21, 2020, Plaintiff "append[ed]" her request and asked the City to also "*Produce all documents reflecting any decision, policy, directive, or decision to delete the video portion of Zoom meetings of the Island Center Subarea Planning Process*

---

[25] *See* Dkt. 3, p. 31 ¶ 3.251. This paragraph references Plaintiff's request for records dated December 16, 2020 from the City to Plaintiff. The full request submitted by Plaintiff via email is included in **Appendix C.1.**

[26] As this is a communication relating to Plaintiff's allegations and with Plaintiff, it is attached as **Appendix C.2.**

[27] *See* Dkt. 3, p. 31 ¶¶ 3.255-256, which reference the video link the City provided to Plaintiff. The entire email that was sent by the City to Plaintiff along with the noted video link is included in **Appendix C.3.**

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 18
3:20-cv-06025

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Committee*."[28] On December 31, 2020, the City Clerk responded that the City's policy was to only Zoom record Committee meetings that were recorded prior to the pandemic. Noting that the Committee was not on that list, she explained that Zoom recordings were not made for the Committee meetings. She also asked Plaintiff to clarify if she wanted emails relating to the City's policy for recording meetings. The Clerk then followed up again with Neal that same day, modifying her earlier email to clarify that "*the meetings were recorded, and the audio portion was retained and uploaded to the web site since audio recordings were provided prior to the pandemic*." She confirmed that the City would provide another follow-up response to the supplemental request by January 8, 2021.[29]

   As promised, on January 8, 2021, Rasely wrote to Neal and provided an email "with instructions on recording committee meetings on Zoom." She explained in part that:

> Following this email, Planning staff spoke about the format of recording for the Island Center Subcommittee. We understood the direction was to provide the same type of recording that was provided prior to the pandemic. As a result, we only downloaded the audio file from each Zoom meeting and deleted the video file. The videos were never downloaded to the City's system and were deleted from the Zoom account (and cloud). Going forward, we have clarified that the video recording may be provided for these meetings. There are no records relating to the instruction to retain just the audio portion. The conservations were verbal.[30] [31]

PRR 20-818 was still open when Neal added her PRA claim(s) to this lawsuit.

   Neal also submitted another request for records on January 7, 2021, which sought: "*All approved minutes for the Island Center Subarea Planning Process Steering Committee's meetings for the September, October, November and December 2020 meetings.*"[32] The City

---

[28] Plaintiff omits that the City's communications noted at Dkt. 3, p. 31 ¶¶ 3.252-253 were in response to a communication from Plaintiff that asked the City to "append' her already fulfilled records request. Thus, this communication from Plaintiff is included in **Appendix C.4** to provide the full context.

[29] Dkt. 3, p. 31 ¶ 3.252-253(December 31, 2020 communications from the City to Plaintiff). **Appendix C.5.**

[30] Dkt. 3, p. 31 ¶ 3.257 (Plaintiff and the City communications and potentially a January 8, 2021 email, included in **Appendix C.6.**

[31] Dkt. 3, p. 31 ¶ 3.257 (may reference January 11, communication from the City to Plaintiff, included in **App. C.7** and states in part: "The video recordings were deleted from Zoom manually. There are no records that show the deletions, but we are providing screenshots from Plaintiff's staff account that show the records currently available in both the recordings section and the trash section . . ."

[32] Plaintiff's Complaint alleges that "COBI has failed to file approved minutes for the Island Center meetings for the dates September 30, 2020, October 28, 2020 and November 23, 2020" and "COBI has never recorded

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 19
3:20-cv-06025

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

assigned the request number PRR 21-24[33] and responded to it within five business days, on January 14, 2021, by providing Plaintiff with the approved minutes from the September and October meetings. The City further noted that: (1) the November meeting minutes would be posted on January 15, 2021 (the next day) and the City would provide them at that time and (2) the December meeting minutes had not yet been approved and thus, they were not available (nor did they exist) at the time the City received Plaintiff's request.[34] The following day, on January 15, 2021—the day *after* Plaintiff filed her amended complaint—and as promised, the City provided the additional approved minutes and then closed the records request. The City provided all responsive records that existed at the time it received PRR 21-24.[35]

## 2. The Public Records Act ("PRA").

The PRA requires every government agency to disclose any responsive public record upon request unless an enumerated exemption applies. *Sanders v. State*, 169 Wn.2d 827, 836 (2010); RCW 42.56.070(1). The definition of a "public record" contains three elements: (i) the record must be a "writing;" (ii) the writing must relate to the conduct of government or the performance of any governmental or proprietary function; and (iii) the writing must be prepared, owned, used, or retained by the agency. RCW 42.56.010; See, *Nissen v. Pierce Cty.*, 183 Wn.2d 863, 869, 878-879 (2015). All three elements must be present for information to constitute a public record. *West v. Puyallup*, 2 Wn. App. 586 (2018).

Upon receipt of a request for a public record, an agency must respond in one of the following ways, by: (1) providing the record; (2) providing an internet address and link on the agency's web site to the specific records requested . . . ; (3) acknowledging that the

---

minutes for the December 5, 2017 meeting." Dkt. 3, p. 31 ¶¶ 3.258-259. Thouogh unclear how these, or ¶ 3.260 (referencing meeting minutes over three years ago), relate to any of Plaintiff's claims. Although there are no decipherable allegations relating to PRR 21-24, as is tangentially referenced in Dkt. 3, the related communications are included in **App. C.8** (email by Plaintiff), **App. C.9** (City's automatic response), **App.x C.10** (City's first installment of responsive records), and **App. C.11** (City's final installment of records and request closure).

[33] *See* Appendix C.9.
[34] *See* Appendix C.10.
[35] *See* Appendix C.11.

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 20
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

agency . . . has received the request and providing a reasonable estimate of the time the agency

... will require to respond to the request; (4) acknowledging that the agency . . . ; has received

the request and asking the requestor to provide clarification  . . . ; or (5) denying the public

record request [along with a proper claim of exemption . . . ]. *Rufin v. City of Seattle*, 199 Wn.

App. 348, 357–58 (2017); RCW 42.56.520, RCW 42.56.210(3).

Neal's claim is brought under RCW 42.56.550(1), alleging denial of "an opportunity

to inspect or copy a public record."[36] "[S]uch a claim may be based on a variety of agency

actions or inactions," including an agency's claim of exemption, failure to respond or produce

records, "silent withholding," or a failure to conduct an adequate search. *Strahm v. Snohomish

Cty.,* 12 Wn. App. 2d 1068 (2020) (Unpublished). A claim for denial of an opportunity to

inspect or copy under RCW 42.56.550(1) does not accrue until there is "some agency action,

or inaction, indicating that the agency will not be providing responsive records." *Hobbs

v. State*, 183 Wn. App. 925, 936 (2014).

3.   The City Has No Obligation to Produce Records that Did Not Exist.

Neal's own factual allegations—albeit set forth in a misleading manner—confirm the

City (i) timely and fully responded to Neal's subject records request in one business day after

receiving the request and (ii) provided the only responsive records that existed at the time of

the City's receipt of the request. Thus, even if accepted as true, the facts alleged by Neal in

her amended complaint confirm that the City complied with its obligations under the PRA.

An agency cannot be liable for producing a record which does not exist at the time a

request is made because there is "no right to inspect or copy records that do not exist" and

"[a]n agency has no duty to create or produce a record that is non-existent." *Sperr v. City of

Spokane*, 123 Wn. App. 132, 136-37 (2004). It is not a violation of the PRA where an agency

has inadvertently destroyed records before a requester made a request for the records. *See

Bldg. Indus. Ass'n of Washington v. McCarthy*, 152 Wn. App. 720, 738-40 (2009) (emails

---

[36] The second possible cause of action, under RCW 42.56.550(2),  relates to failure to make a "reasonable estimate" of response time or charges. *Strahm*, 12 Wn. App. 1068. Plaintiff makes no such claim here.

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 21
3:20-cv-06025

**KEATING, BUCKLIN & MCCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

not unlawfully destroyed and no PRA violation occurred because the record(s) did not exist at the time of request); *Sperr*, 123 Wn. App. 132 at 137; *see also West v. Department of Nat. Res.*, 163 Wn. App. 235, 244 (2011) (affirming dismissal of claim of "improper and unlawful destruction of public records required to be maintained" because "there [was] simply no evidence in the record of any unlawful destruction of e-mails," and PRA claim because "the e-mail did not exist at the time of [the] request."). When records do not exist, there is no agency action to review under the PRA. *McCarthy*, 152 Wn. App. at 738-40.

Here, the City never denied Neal an opportunity to inspect or copy a public record pursuant to Chapter 42.56 RCW et. seq. because none of the Zoom video recordings (save one) existed at the time the subject request for the recordings were made. Plaintiff's own allegations and correspondence confirm no responsive records were withheld. Additionally, there is no cognizable legal claim related to the City's non-retention of Zoom video recordings prior to Plaintiff's request.

## I. **Alternatively, the PRA Claim Should Be Dismissed Pursuant to Rule 12(b)(1) and/or 28 U.S.C. § 1367, or, at a Minimum, Bifurcated.**

### 1. Neal's PRA Claim Should be Dismissed for Lack of Jurisdiction.

28 U.S.C. § 1367(a) provides for supplemental jurisdiction over state law claims if they are so related to the claims in the action for which there is original jurisdiction that "they form part of the same case or controversy under Article III of the United States Constitution." Claims form part of the same case or controversy when they arise from "a common nucleus of operative facts" such that a plaintiff "would ordinarily be expected to try them all in a single judicial proceeding." *Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 24 F.3d 1545, 1551 (9th Cir.1994) (internal quotations omitted).

Pursuant to 28 U.S.C. §1367(c), the Court may also decline to exercise supplemental jurisdiction over a state law claim if: (1) it raises a novel or complex issue of state law; (2) it substantially predominates over the claim(s) over which the court has original jurisdiction; (3) the court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 22
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

circumstances, there are other compelling reasons for declining jurisdiction. The decision to keep or decline to keep state law claims is discretionary and is "informed" by the "values of 'economy, convenience, fairness, and comity[,]'" *Id.* at 1557. "If the exercise of supplemental jurisdiction does not advance these considerations, 'a federal court should hesitate to exercise jurisdiction over state law claims.'" *Id.*

Neal's PRA claim arises exclusively out of a single records request submitted two months *after* she filed her original complaint and is not in any way related to the federal claims that arising out of event(s) 2.5 years earlier. Thus, her PRA claim and her federal § 1983 claim do not derive from a common nucleus of operative fact; this Court does not have supplemental jurisdiction over the PRA claim and should decline to exercise it. The PRA claim should be dismissed as this Court lacks jurisdiction to hear it. See F.R.C.P. 12(b)(1).

2.   <u>If Not Dismissed, Neal's PRA Claim Should be Bifurcated.</u>

F.R.C.P. 42(b) authorizes a court to separate the trial of claims in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expediency and economy. *See also Exxon Co. v. Sofec, Inc.,* 54 F.3d 570, 575 (9th Cir. 1995). A court may consider, *inter alia*, when deciding to bifurcate: (1) complexity of issues; (2) factual proof; (3) risk of jury confusion; and (4) difference between the separated issues. *See Calmar Inc. v. Emson Research, Inc.,* 850 F. Supp. 861, 865-66 (C.D. Cal. 1994).

Bifurcation is appropriate when there is one set of issues that can be conveniently tried to a jury and another set that can be conveniently tried to the court. *See, e.g., Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 961-962 (9th Cir. 2001). Here, Plaintiff is not entitled to a jury trial on her PRA claim. See, RCW 42.56.550(1) and (2), allowing for "judicial review" of PRA claims; *see also O'Neal v. City of Shoreline*, 145 Wn. App. 913, 937-38 (2008) *rev. in part on other grounds*, 170 Wn.2d 138 (2010) (no abuse of discretion to deny hearing or trial on the merits on claim based on PRA procedures).

Courts have also emphasized the importance of "the interest of efficient judicial administration" in determining whether to bifurcate. *Hunter Douglas Inc. v. Comfortex*

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO BIFURCATE PL'S PUBLIC RECORDS ACT CLAIMS- 23
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

*Corp.,* 44 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Here, if the PRA claim is not dismissed, bifurcation is appropriate because there are no overlapping facts, and the issues and evidence related to her PRA claim are completely separate and distinct from the other claims in this case. Further, bifurcation will promote judicial economy by not forcing this Court to try an issue for which state law does not provide a right to a trial (jury or otherwise) and simplifying the case. The PRA claim can also otherwise be resolved quickly and efficiently in a show cause hearing in Kitsap County Superior Court.

## V.   **CONCLUSION**

For the reasons set forth herein, the City requests that the Court dismiss Plaintiff's claims as a matter of law, or in the alternative, that the Court bifurcate her PRA claim.

DATED:  March 4, 2021

KEATING, BUCKLIN & McCORMACK, INC., P.S.

By: */s/ Jayne L. Freeman*
    Jayne L. Freeman, WSBA #24318
By: */s/ Audrey M. Airut Murphy*
    Audrey M. Airut Murphy, WSBA #56833
    Attorneys for Defendant City of Bainbridge Island

801 Second Avenue, Suite 1210
Seattle, WA  98104
Phone: (206) 623-8861; Fax:  (206) 223-9423
Email: jfreeman@kbmlawyers.com
Email: amurphy@kbmlawyers.com

OGDEN MURPHY WALLACE, P.L.L.C.

By: */s/ Kari I. Lester*
    Kari I. Lester, WSBA #28396
    Attorney for Defendant City of Bainbridge Island
    901 Fifth Avenue, Suite 3500
    Seattle, Washington 98164-2008
    Phone:   (206)447-7000; Fax: (206)447-0215
    E-mail:   klester@omwlaw.com

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 24
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiff**
Christopher L. Neal, WSBA #25685
NEAL FIRM, PLLC
P.O. Box 11215
Bainbridge Island, WA  98110
(206) 317-3000
Email:  cneal@coveragenorthwest.com

**Attorneys for Defendant City of Bainbridge Island**

Kari I. Lester, WSBA #28396
OGDEN MURPHY WALLACE P.L.L.C.
901 Fifth Avenue, Suite 3500
Seattle, WA  98164-2008
Telephone:  (206) 447-7000
Fax:  (206) 447-0215
Email:  klester@omwlaw.com
pabbey@omwlaw.com

DATED:  March 4, 2021

*/s/ Jayne L. Freeman*
Jayne L. Freeman, WSBA #24318
Defendant City of Bainbridge Island
801 Second Avenue, Suite 1210
Seattle, WA  98104
Phone: (206) 623-8861
Fax:     (206) 223-9423
Email:  jfreeman@kbmlawyers.com

DEF. CITY OF BAINBRIDGE ISLAND'S MOTION TO
DISMISS OR IN THE ALTERNATIVE TO BIFURCATE
PL'S PUBLIC RECORDS ACT CLAIMS- 25
3:20-cv-06025

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423