# APPENDIX A

**ORDINANCE NO. 2019-01**
**(Formerly Ordinance No. 2018-46)**

**AN ORDINANCE** of the City of Bainbridge Island, Washington, amending Title 2 of the Bainbridge Island Municipal Code to create a uniform process governing the removal and resignation of members of the City's citizen advisory boards, commissions, committees, and task forces, as well as a uniform process for the demotion of a chair of one of the City's citizen advisory boards, commissions, committees, or task forces.

**WHEREAS**, the City Council has previously created various citizen advisory boards, commissions, committees, and task forces to provide recommendations to the City Council and perform other functions for the City; and

**WHEREAS**, the City Council now desires to create a uniform process to govern the removal and resignation of members of the City's citizen advisory boards, commissions, committees, and task forces; and

**WHEREAS**, the City Council also desires to create a uniform process to govern the demotion of chairs of the City's citizen advisory boards, commissions, committees, or task forces.

**NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF BAINBRIDGE ISLAND, WASHINGTON, DOES ORDAIN AS FOLLOWS**:

**Section 1.** A new Chapter 2.01, General Procedures for Citizen Advisory Bodies, is added to Title 2 of the Bainbridge Island Municipal Code, to read as follows:

**Chapter 2.01 General Procedures for Citizen Advisory Committees**

**2.01.010 Applicability of Chapter**

A. The provisions of this chapter apply to each citizen advisory board, commission, committee, or task force created by the city council, except as otherwise provided by this chapter or where in conflict with state law.

B. For purposes of this chapter, the terms "board," "commission," "committee," and "task force" have identical meanings and shall collectively be referred to as a "committee."

**2.01.020 Grounds for Removal of Members of Citizen Advisory Committees**

A. The mayor may remove a member of a citizen advisory committee for one or more of the following reasons:

1. Good cause, which shall be as determined solely by the mayor and shall be stated with each removal action.

2. A confirmed appointee to a citizen advisory committee fails to qualify and assume the duties of a member of the committee within 30 calendar days of confirmation by the city council.

3. A member of a citizen advisory committee is absent from three consecutive regular meetings of the citizen advisory committee and such absences have not been excused by a majority vote of the citizen advisory committee.

4. A member of a citizen advisory committee is absent from fifty percent (50%) of all meetings of the citizen advisory committee in any six-month period, provided that a member of a citizen advisory committee may request a leave of absence, which must first be approved by the mayor.

5. A member of a citizen advisory committee ceases to have the qualifications prescribed for the members of the committee by state law or by ordinance of the city council.

6. A member of a citizen advisory committee is convicted of a gross misdemeanor or felony while serving on the committee.

B. At the next regularly scheduled meeting of the city council following a removal under this section, the mayor shall notify the city council of such removal. A majority of the full city council may reverse the mayor's decision to remove within 30 days of the mayor's notice to the city council of the removal, after which time the mayor's decision to remove is final.

C. This section shall not apply to members of the following citizen advisory committees: the Ethics Board, created under Chapter 2.07 BIMC; the Civil Service Commission, created under Chapter 2.28 BIMC; the LEOFF Disability Board, created under Chapter 2.45 BIMC; the Salary Commission, created under Chapter 2.74 BIMC; and the Lodging Tax Advisory Committee, created under BIMC 3.65.040.

**2.01.030 Grounds for Demotion of Chairs of Citizen Advisory Committees**

A. The mayor may demote the chair of a citizen advisory committee for good cause, which shall be as determined solely by the mayor and shall be stated with each demotion.

B. At the next regularly scheduled meeting of the city council following a demotion under this section, the mayor shall notify the city council of such demotion. A majority of the full city council may reverse the mayor's decision to demote

within 30 days of the mayor's notice to the city council of the demotion, after which time the mayor's decision to demote is final.

C. A member of a citizen advisory committee that has been demoted from the position of chair of the committee may continue to serve on the committee for the remainder of his or her term and any future terms that she or he may be eligible to be appointed to.

D. A member of a citizen advisory committee that has been demoted from the position of chair of the committee may not again serve as chair of the committee without city council approval.

E. This section shall not apply to the chairs of the following citizen advisory committees: the Civil Service Commission, created under Chapter 2.28 BIMC; the Cultural Funding Advisory Committee, created under Chapter 2.43 BIMC; the LEOFF Disability Board, created under Chapter 2.45 BIMC; and the Lodging Tax Advisory Committee, created under BIMC 3.65.040.

**2.01.040 Resignations and Automatic Vacancies**

A. A member of a citizen advisory committee may voluntarily resign from her or his position on the committee by submitting her or his written resignation to the mayor.

B. A vacancy caused by resignation shall be deemed to occur upon the effective date of the resignation. If no effective date is specified in the resignation, the resignation will be deemed to be effective immediately.

C. A position on a citizen advisory committee shall automatically become vacant upon the death of the individual appointed to that position.

**Section 2.** Section 2.14.020.C.3 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

3. The officers of the commission shall consist of a chairperson and a vice chairperson elected by the members of the commission for a one-year term. The election of officers shall take place at the first meeting of the year. In the event of the vacancy of the chair, the chairperson would be replaced by the vice chairperson, and the vice chairperson would be replaced by a vote of the members of the commission. <u>Demotion of the chairperson or vice chairperson shall be governed by Chapter 2.01 BIMC.</u>

**Section 3.** Section 2.14.020.D of the Bainbridge Island Municipal Code is hereby amended to read as follows:

D. ~~Forfeiture of Office~~ Removal and Resignation.

1. The removal and resignation of members appointed to the commission shall be governed by Chapter 2.01 BIMC.

~~1. A member appointed to the commission shall forfeit his or her office, creating a vacancy, if he or she ceases to have the qualifications prescribed for such office by law or ordinance, or if he or she is convicted of a gross misdemeanor or felony or a violation of the oath of office.~~

~~2. In the event of a commission member being absent from three consecutive regular meetings, or being absent from 50 percent of all meetings (including committee) in any six-month period, the office shall become vacant and forfeited; provided, that the mayor, with city council approval, may grant an exception when warranted by individual circumstances.~~

~~3. For an extended absence, a commissioner may request a leave of absence, to be approved by the mayor, with city council approval.~~

4̶2. Any unexpired term of a vacant ~~or forfeited~~ office shall be filled by a qualified person appointed by the mayor and confirmed by the city council in accordance with the city's appointment cycle.

**Section 4.** Section 2.14.040.B of the Bainbridge Island Municipal Code is hereby amended to read as follows:

B. Vacancies – Removal. In the event of a vacancy, the mayor, subject to the confirmation of the city council, shall make an appointment to fill the unexpired portion of the term of the vacated position in accordance with the city's appointment cycle. ~~Unexcused absence by any member from three consecutive meetings shall constitute grounds for removal. Members may be removed upon a majority vote of the city council.~~ The removal and resignation of members shall be governed by Chapter 2.01 BIMC.

**Section 5.** Section 2.14.040.C.1 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

1. The board shall select one member to serve as chair for a one-year term at the first regular meeting of each year. Demotion of the chair shall be governed by Chapter 2.01 BIMC.

**Section 6.** Section 2.14.060 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

The creation, composition, terms, powers and duties, rules and standards of the historic preservation commission are described in BIMC 18.24.020 <u>and Chapter 2.01 BIMC. In the event of a conflict between BIMC 18.24.020 and Chapter 2.01 BIMC, Chapter 2.01 BIMC shall control.</u>

**Section 7.** Section 2.14.070 of the Bainbridge Island Municipal Code is hereby repealed in its entirety.

**Section 8.** Section 2.16.210.E.1 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

E. Subarea Planning Steering Committee.

1. Upon the city council's approval to commence the subarea planning process for a designated center or neighborhood, the mayor, with confirmation by the city council, shall appoint a subarea planning steering committee for that designated center or neighborhood. The steering committee shall be comprised of an odd number of members, totaling no more than nine, with the total number of members to be determined by the city council. The majority of the committee shall be comprised of representatives from categories in subsections E.2.a and E.2.b of this section. The term of the steering committee members shall be until the completion of the subarea planning process under this chapter. <u>The removal and resignation of members shall be governed by Chapter 2.01 BIMC. Demotion of the chairperson shall be governed by Chapter 2.01 BIMC.</u>

**Section 9.** Section 2.32.020 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

~~Members may be removed upon a majority vote of the city council.~~ In the event of a vacancy, the mayor, subject to confirmation of the city council, shall make an appointment to fill the unexpired portion of the term of the vacated position in accordance with the city's appointment cycle. ~~Unexcused absence by any member from three consecutive meetings shall constitute grounds for removal.~~ <u>The removal and resignation of members shall be governed by Chapter 2.01 BIMC.</u>

**Section 10.** Section 2.32.040.B of the Bainbridge Island Municipal Code is hereby amended to read as follows:

B. The committee shall select from among its members a chairperson for a one-year term at the first regular meeting of each year. <u>Demotion of the chairperson shall be governed by Chapter 2.01 BIMC.</u>

**Section 11.** Section 2.33.010.C of the Bainbridge Island Municipal Code is hereby amended to read as follows:

C. A member may be reappointed, and shall hold office until his or her successor has been appointed and has qualified. ~~Members may be removed upon a majority vote of the city council.~~

**Section 12.** Section 2.33.025 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

In the event of a vacancy, the mayor, subject to confirmation of the city council, shall make an appointment to fill the unexpired portion of the term of the vacated position in accordance with the city's appointment cycle. ~~Unexcused absence by any committee member from three consecutive meetings shall constitute grounds for removal in accordance with BIMC 2.33.010.C.~~ <ins>The removal and resignation of members shall be governed by Chapter 2.01 BIMC.</ins>

**Section 13.** Section 2.33.060 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

The committee shall annually elect a chairperson and vice-chairperson. <ins>Demotion of the chairperson or vice-chairperson shall be governed by Chapter 2.01 BIMC.</ins> The committee shall hold regular meetings at least once during each quarter year. Meetings shall be open to the public and held in accordance with the Open Public Meetings Act (Chapter 42.30 RCW). For meetings consisting of a majority of the then serving voting members of the committee, the committee shall provide public notice of the meeting and shall keep a record of its meeting minutes, resolutions, transactions, findings and determinations. The meeting minutes shall be posted on the city's web site. A majority of the voting members then serving on the committee shall constitute a quorum.

**Section 14.** Section 2.35.020 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

~~Members may be removed upon a majority vote of the city council.~~ In the event of a vacancy, the mayor, subject to confirmation of the city council, shall make an appointment to fill the unexpired portion of the term of the vacated position in accordance with the city's appointment cycle. ~~Unexcused absence by any member from three consecutive meetings shall constitute grounds for removal.~~ <ins>The removal and resignation of members shall be governed by Chapter 2.01 BIMC.</ins>

**Section 15.** Section 2.35.040.B of the Bainbridge Island Municipal Code is hereby amended to read as follows:

The committee shall select from among its members a chairperson for a one-year term at the first regular meeting of each year. <u>Demotion of the chairperson shall be governed by Chapter 2.01 BIMC.</u>

**Section 16.** Section 2.36.020 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

~~Members may be removed upon a majority vote of the city council.~~ In the event of a vacancy, the mayor, subject to confirmation of the city council, shall make an appointment to fill the unexpired portion of the term of the vacated position in accordance with the city's appointment cycle. ~~Unexcused absence by any member from three consecutive meetings shall constitute grounds for removal.~~ <u>The removal and resignation of members shall be governed by Chapter 2.01 BIMC.</u>

**Section 17.** Section 2.36.040.B of the Bainbridge Island Municipal Code is hereby amended to read as follows:

B. The committee shall select from among its members a chairperson for a one-year term at the first regular meeting of each year. <u>Demotion of the chairperson shall be governed by Chapter 2.01 BIMC.</u>

**Section 18.** Section 2.37.020 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

~~Members may be removed upon a majority vote of the city council.~~ In the event of a vacancy, the mayor, subject to confirmation of the city council, shall make an appointment to fill the unexpired portion of the term of the vacated position in accordance with the city's appointment cycle. ~~Unexcused absences from three consecutive meetings by any member shall constitute grounds for removal.~~ <u>The removal and resignation of members shall be governed by Chapter 2.01 BIMC.</u>

**Section 19.** Section 2.37.040.C of the Bainbridge Island Municipal Code is hereby amended to read as follows:

C. At the first regular meeting of each term, the committee shall select from among its members a chairperson and a secretary for a one-year term. <u>Demotion of the chairperson or the secretary shall be governed by Chapter 2.01 BIMC.</u>

**Section 20.** Section 2.41.020 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

~~Members may be removed upon a majority vote of the city council.~~ In the event of a vacancy, the mayor, subject to confirmation of the city council, shall make an appointment to fill the unexpired portion of the term of the vacated position in accordance with the city's appointment cycle. ~~Unexcused absence by any member from three consecutive meetings shall constitute grounds for removal.~~ <u>The removal and resignation of members shall be governed by Chapter 2.01 BIMC.</u>

**Section 21.** Section 2.41.040.B of the Bainbridge Island Municipal Code is hereby amended to read as follows:

B. The committee shall select from among its members a chairperson at the first regular meeting of each year. <u>Demotion of the chairperson shall be governed by the Chapter 2.01 BIMC.</u>

**Section 22.** Section 2.43.020 of the Bainbridge Island Municipal Code is hereby amended to read as follows:

~~Members may be removed upon a majority vote of the city council.~~ In the event of a vacancy, the mayor, subject to confirmation of the city council, shall make an appointment to fill the unexpired portion of the term of the vacated position in accordance with the city's appointment cycle. ~~Unexcused absences by any member from three consecutive meetings shall constitute grounds for removal.~~ <u>The removal and resignation of members shall be governed by Chapter 2.01 BIMC.</u>

**Section 23.** If any one or more section, subsections, or sentences of this ordinance are held to be unconstitutional or invalid by a court of competent jurisdiction, such decision shall not affect the validity of the remaining portion of this ordinance and the same shall remain in full force and effect.

**Section 24.** This ordinance shall take effect and be in force five (5) days from its passage, approval, and publication as required by law.

PASSED by the City Council this 8th day of January, 2019.

APPROVED by the Mayor this 8th day of January, 2019

*[signature]*
Kol Medina, Mayor

ATTEST/AUTHENTICATE:

*[signature]*
Christine Brown, CMC, City Clerk

| | |
|---|---|
| FILED WITH THE CITY CLERK: | December 7, 2018 |
| PASSED BY THE CITY COUNCIL: | January 8, 2019 |
| PUBLISHED: | January 11, 2019 |
| EFFECTIVE DATE: | January 16, 2019 |
| ORDINANCE NO. | 2019-01 (Formerly Ordinance No. 2018-46) |

# Title 2
# ADMINISTRATION, PERSONNEL, AND LAND USE PROCEDURES

**Chapters:**

2.01    General Procedures for Citizen Advisory Committees

2.02    City Business Hours and Facilities

2.04    City Council Meetings

2.06    Wards

2.07    Ethics Program

2.08    City Officers

2.09    *Repealed*

2.12    Fire Marshal

2.14    Land Use Approval Bodies

2.16    Land Use Review Procedures

2.18    *Repealed*

2.19    Land Use Mediation

2.20    Municipal Court

2.24    Police Reserve

2.28    Police Civil Service

2.32    Multi-modal Transportation Advisory Committee

2.33    Utility Advisory Committee

2.34    *Repealed*

2.35    Marine Access Committee

2.36    Environmental Technical Advisory Committee

2.37    Climate Change Advisory Committee

2.38    *Repealed*

2.40    Housing Authority

2.41   Human Services Funding Advisory Task Force

2.42   *Repealed*

2.43   Cultural Funding Advisory Task Force

2.44   Emergency Management

2.45   LEOFF Disability Board

2.46   *Repealed*

2.48   *Repealed*

2.50   *Repealed*

2.52   Health District

2.56   Retirement System

2.60   Reimbursement of Expenses

2.64   Collection and Presentation of Information to Legislative and Administrative Bodies

2.68   Defense and Indemnification of City Officers and Employees

2.70   Commute Trip Reduction Incentive Program

2.74   Salary Commission

2.80   Public Records Disclosure

2.82   City Budget Process

## Chapter 2.16
## LAND USE REVIEW PROCEDURES

Sections:

2.16.005   Purpose.

2.16.010   Land use procedures summary table.

2.16.020   General provisions.

2.16.030   Administrative review – In general.

2.16.040   Site plans and design review.

2.16.050   Minor conditional uses.

2.16.060   Minor variance.

2.16.070   Short subdivisions.

2.16.080    Large lot subdivisions.

2.16.090    Boundary line adjustment.

2.16.100    Quasi-judicial review by hearing examiner – In general.

2.16.110    Major conditional use permit.

2.16.120    Major variances.

2.16.125    Preliminary long subdivisions.

2.16.130    Quasi-judicial review by city council – In general.

2.16.140    Site-specific rezones.

2.16.160    Final long subdivisions.

2.16.165    Shoreline master program administration.

2.16.170    Consolidated project review.

2.16.180    Legislative review of land use regulations and area-wide rezones.

2.16.190    Legislative comprehensive plan amendments.

2.16.200    Shoreline master program amendments.

**2.16.210    Subarea planning process.**

2.16.220    Critical area permits – Minor or major.

**2.16.210 Subarea planning process.**
A. Purpose. The purpose of this section is to provide a subarea planning process that enhances the livability of the city by recognizing the unique characteristics of the city's designated centers and neighborhoods and by providing opportunities to accomplish the goals of the city's comprehensive plan in a way unique to each designated center or neighborhood.

B. Applicability. This chapter applies to:

   1. A designated center that has been identified in the adopted comprehensive plan; and

   2. Discrete neighborhoods outside of designated centers.

C. Beginning the Process. The subarea planning process may be started in two different ways:

   1. The city council may begin the process through the annual development of department work programs or biennial budget process; or

   2. Upon the written request of at least one owner of property located within a designated center or neighborhood, the city council by resolution may approve the commencement of the

subarea planning process. Neighborhoods outside of designated centers must demonstrate to the city council that subarea planning is generally desired by the neighborhood.

    D. Interdepartmental Staff Team.

        1. Upon the city council's approval to commence the subarea planning process, the director of planning and community development shall establish an interdepartmental staff team.

        2. At the director of planning and community development's request, the director of each city department shall assign a representative to the interdepartmental staff team. The Bainbridge Island fire district, the Bainbridge Island school district, the Bainbridge Island metropolitan park and recreation district, and the Kitsap public health district shall each be invited to participate on the interdepartmental staff team.

        3. The interdepartmental staff team shall:

            a. Compile the city's existing data and materials relating to the designated center or neighborhood (including comprehensive plan text and map); and

            b. Identify in writing issues raised by the public during the comprehensive planning process and issues identified by staff relating to the designated center or neighborhood; and

            c. Identify interested persons and groups, including all property owners within the designated center or neighborhood according to the Kitsap County auditor's records, and notify the interested persons and groups in writing by regular mail of the commencement of the subarea planning process; and

            d. Provide expertise and guidance to the subarea planning steering committee.



E. Subarea Planning Steering Committee.

    1. Upon the city council's approval to commence the subarea planning process for a designated center or neighborhood, the mayor, with confirmation by the city council, shall appoint a subarea planning steering committee for that designated center or neighborhood.

The steering committee shall be comprised of an odd number of members, totaling no more than nine, with the total number of members to be determined by the city council. The majority of the committee shall be comprised of representatives from categories in subsections E.2.a and E.2.b of this section. The term of the steering committee members shall be until the completion of the subarea planning process under this chapter. The removal and resignation of members shall be governed by Chapter 2.01 BIMC. Demotion of the chairperson shall be governed by Chapter 2.01 BIMC.

2. The steering committee shall represent a wide spectrum of interests and expertise and shall include at least one representative from each of the following groups:

   a. Residents living within and/or owners of property or businesses within the designated center or neighborhood; and

   b. Residents and owners of property located adjacent to the designated center or neighborhood; and

   c. Residents of and/or business owners in the city, not residing within or adjacent to the designated center or neighborhood.

3. The steering committee shall:

   a. Establish a planning process consistent with this chapter for developing the subarea plan, which shall include a work plan, timeline, and budget, and which shall be submitted to the city council for approval;

   b. With the advice and assistance of the interdepartmental staff team, develop a subarea plan consisting of a report and a proposed comprehensive plan amendment, if appropriate, for the designated center or neighborhood;

   c. As a part of the work plan, establish a public participation process that includes public meetings in addition to the initial public meeting conducted under subsection F of this section, and work with city staff to ensure outreach to the community during the subarea planning process; and

   d. Ensure that the subarea planning process provides adequate opportunity for participation by property owners and residents who live in or near the designated center or neighborhood.

F. Initial Public Meeting.

1. After approval of the subarea planning process by the city council, the steering committee shall conduct an initial public meeting.

2. At the initial public meeting, the following shall occur:

   a. The interdepartmental staff team shall provide an overview of the comprehensive plan and review citywide goals and policies that must be addressed in the subarea planning

process.

 b. The steering committee, with input from the interdepartmental staff team, shall discuss the purpose of the subarea planning process for the designated center or neighborhood and the city's existing data and materials for the area.

 c. The steering committee shall provide opportunity for the public to comment on the vision and goals for the subarea plan, the boundaries of the designated center or neighborhood that may be included within a subarea plan, and issues relevant to the designated center or neighborhood, including mix and type of land uses, density of development, surface water, greenways, open space, fish and wildlife habitat, drinking water, sewage disposal, and nonmotorized transportation.

3. The interdepartmental staff team shall prepare a report setting forth the results of the meeting. Upon the steering committee's approval of the report, the interdepartmental staff team shall transmit the report to the planning commission for review and comment.

G. Plan Development. Upon receiving the planning commission's comments on the report prepared under subsection F.3 of this section, the steering committee shall develop the subarea plan in accordance with the steering committee's work plan. In developing the subarea plan, the steering committee shall:

1. Develop a profile of characteristics or attributes of the designated center or neighborhood (including boundaries) and of issues to be addressed during the subarea planning process; and

2. Develop goals for the subarea plan; and

3. Consider and utilize the following criteria, and any other criteria developed by the steering committee, in preparing and selecting alternatives for the designated center or neighborhood:

 a. The citywide goals and policies of the city's comprehensive plan; and

 b. The goals and policies for the subarea plan developed by the steering committee; and

 c. Relevant criteria specified in the Washington State Environmental Policy Act, Chapter 43.21C RCW, and the applicable Washington Administrative Code, Chapter 197-11 WAC; and

4. Prepare a report setting forth the profiles, goals, and criteria developed by the steering committee pursuant to subsections G.3.a through c of this section, and transmit the report to the planning commission for review and comment; and

5. After receiving the planning commission's comments on the report prepared under subsection G.4 of this section, develop alternatives for the designated center or neighborhood that include policies, strategies and programs to implement the vision and goals for the subarea plan; and

      6. Review the alternatives for the designated center or neighborhood against the criteria developed for the area, and select an alternative for the designated center or neighborhood to be incorporated into a subarea plan.

H. Incorporation of SEPA Review. An owner of property in a designated center or neighborhood may elect, at the owner's expense, to have a SEPA review sufficient in scope and depth of inquiry to be legally adequate for a specific project incorporated into the city's SEPA process for the subarea plan. The SEPA official for the city shall establish the scope, depth and method of the SEPA review pursuant to Chapter 16.04 BIMC.

I. Final Plan. The steering committee shall prepare a final report containing the subarea plan for the designated center or neighborhood. The subarea plan shall include the profile and characteristics of the designated center or neighborhood, the goals of the subarea plan, the policies, strategies, or programs recommended by the steering committee, and proposed comprehensive plan amendments or changes to the municipal code for the designated center or neighborhood, if appropriate. The steering committee shall forward its final report and proposed subarea plan to the planning commission for action. The planning commission will review the subarea plan and proposed comprehensive plan and municipal code amendments and make recommendations to the city council, as required by BIMC 2.16.180 and 2.16.190. (Ord. 2019-01 § 8, 2019; Ord. 2017-02 § 8 (Exh. A), 2017: Ord. 2011-02 § 2 (Exh. A), 2011)