Hon. Judge David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, AT TACOMA

| | |
|---|---|
| LISA C. NEAL, an individual, | |
| Plaintiff, | NO.: 3:20-cv-06025-DGE |
| v. | **SECOND AMENDED COMPLAINT** |
| CITY OF BAINBRIDGE ISLAND, a Municipal Corporation | |
| Defendant. | JURY DEMAND |

Plaintiff Lisa C. Neal ("Neal" or "Plaintiff") brings this action against the City of Bainbridge Island ("COBI") for violation of her constitutionally protected right to political free speech per 42 USC § 1983, for violating her right to equal protection under the law per 42 USC § 1983, for conspiring to deprive Plaintiff of rights and privileges protected by the U.S. Constitution, pursuant to 42 USC § 1983, for defamation *per se*, negligent or intentional infliction of emotional distress, and violation of Washington's Public Records Act RCW 42.56.

**SECOND AMENDED COMPLAINT - 1**
(Cause No. 3:20-cv-06025-DGE)

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

## I.   PARTIES

1.1    Plaintiff is a resident of the City of Bainbridge Island, Kitsap County, Washington.

1.2    COBI is a municipal corporation located in Kitsap County, Washington, organized under the laws of the State of Washington.   COBI is an "agency" as defined by RCW 42.56.010(1) and subject to the Public Records Act ("PRA"), RCW 42.56, *et seq.*

## II.   JURISDICTION & VENUE

2.1    This court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983. The court has ancillary jurisdiction over Plaintiff's related state law claims.

2.2    The court has personal jurisdiction over the parties.

2.3    Plaintiff has complied with Revised Code of Washington § 4.96.020's requirement that Defendant municipality COBI be provided 60-days' notice of the claim for damages.

2.4    Plaintiff has complied with Revised Code of Washington § 7.96.040's requirement that Defendant be provided an opportunity to correct or clarify the alleged defamation.

2.5    Venue is proper in the Western District of Washington at Tacoma pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Plaintiff and Defendant COBI are located in this district, and because the events giving rise to Plaintiff's claims occurred in this district.

## III.   RELEVANT FACTS

3.1    *Introduction*  Plaintiff has been a lawyer licensed and in good standing in the state of Washington since 1996, and in Texas (now inactive) since 1992, as well

**SECOND AMENDED COMPLAINT - 2**
(Cause No. 3:20-cv-06025-DGE)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

as in the federal district courts of both states, and in the Ninth Circuit Court of Appeals.

3.2     Plaintiff served as a Bainbridge Island Municipal Code ("BIMC") Chapter 2.01 citizen volunteer appointed by the City Council to the Island Center Subarea Planning Process Steering Committee ("Committee").

3.3     The Committee is a citizen advisory committee formed to create a Subarea Plan for the Island Center Neighborhood Center on Bainbridge Island.

3.4     The Subarea Planning Process was initiated when the Council expressed support for moving forward at the April 18, 2017 City Council meeting, with a target date of January of 2018.

3.5     Plaintiff was appointed to the Committee by the City Council in the Fall of 2017.

3.6     Plaintiff was not told she was being hired by the City when she was appointed, and was not interviewed by the City Manager, the person who hires all personnel for the City, but Plaintiff was instead interviewed by two councilmembers. Committee members were told they were subject to the Open Public Meetings Act, and that they must comply with the COBI Ethics Program.

3.7     The Committee elected Plaintiff as the Committee's Vice-Chair in or before February of 2018, in which role she acted until August 14, 2018, when Defendant COBI removed her from the Committee.

3.8     Plaintiff was not, and is not, a public figure.

3.9     During her tenure as Vice-Chair to the Committee, Plaintiff heard numerous complaints from the community regarding conflicts of interest on the Committee.

3.10     During her tenure, Plaintiff advocated for full disclosure of potential conflicts of interest in compliance with COBI's Ethics Program, including the

**SECOND AMENDED COMPLAINT - 3**
(Cause No. 3:20-cv-06025-DGE)

disclosure of ownership of property Committee members were advocating be upzoned as part of the Island Center Subarea Planning Proccess.

3.11    During her tenure, Plaintiff approached then-Councilmember Sarah Blossom numerous times to request her assistance regarding compliance with the COBI Ethics Program.

3.12    During Plaintiff's tenure, COBI, COBI Staff, then-City Councilmember Blossom, and Committee Chair Maradel Gale made multiple and repeated erroneous statements of law, and made erroneous references to the COBI Comprehensive Plan, in an effort to have the Committee draw the conclusion that significant expansion and increases in density were required at Island Center.

3.13    During her tenure, Plaintiff corrected those misstatements of law and Plan references.

3.14    On August 14, 2018, in a public City Council meeting, then-Councilmember Blossom moved to remove Plaintiff from the Committee, using as justification false and stigmatizing statements about Plaintiff.    Then-Planning Commissioner Jon Quitslund made false and stigmatizing statements about Plaintiff at the Council meeting.  Then-Planning Director Gary Christensen made false and stigmatizing statements about Plaintiff at the Council meeting.

3.15    The false and stigmatizing statements were made to retaliate against Plaintiff for her speech, to sideline and diminish her in the community so as to chill and marginalize her speech going forward, and to chill the speech of others who might be inclined to speak out on the same issues.

3.16    COBI's acts and the acts of its agents have harmed Plaintiff.

3.17    ***Background - Community Does Not Want Density***  In early 2018, an Island Center Committee survey gave the Island Center community two

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

opportunities to vote for additional housing, and the community stated both times that additional housing was "not important."

3.18    At the June 18, 2018 Island Center Subarea Planning Process public meeting, the public was encouraged to place round stickers on posters showing proposed Subarea Planning Process goals with which the public agreed.

3.19    Committee member Scott Anderson placed a poster with "Affordable Housing" with the others.

3.20    Not one member of the public placed an approving sticker on the "Affordable Housing" poster.

3.21    On August 1, 2018, the Committee's consultant (Maker) reported to the Committee regarding the "sticker" exercise, and initially omitted the report that no one placed a sticker on "Affordable Housing."

3.22    A Committee member requested, and received, confirmation that no one at the public meeting placed a sticker on the poster "Affordable Housing."

3.23    During the Committee's interim report to the City Council on August 28, 2018, the Council was told that the Committee was unlikely to recommend significant expansion of the Island Center zone.

3.24    On November 8, 2018, at the Planning Commission meeting where Gale and Sutton reported on the Subarea Planning Process progress, then-Planning Commissioner Quitslund called the community's desire to restrain housing density "problematic."  He went on:  "I want to respect these responses, and we don't want to impose a plan on – against well-established and well-grounded resistance.  But, (sigh), now that Maradel is here, perhaps we can discuss a little bit.  What we're up against, and what the potential is for balancing the potential for medium-density development of res. . . -– development residentially, in and near the Island Center defined boundaries."

SECOND AMENDED COMPLAINT - 5
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

1

2

3

4

3.25    At the November 8, 2018 Planning Commission meeting, Gale told the Planning Commission that a statement offered by Plaintiff, and adopted by the Committee for inclusion in a list of issues and goals for the area, was not, in fact, accepted "by the whole group" but was "just one person's language."

5

6

7

8

3.26    The statement was that a goal of the Subarea Planning Process was: "To Maintain the cool wooded atmosphere enjoyed by the residents of Island Center, development is restricted to current zoning allowances.  Undeveloped parcel owners may purchase development rights from owners in the immediate Island Center area in order to increase density."

9

10

3.27    This goal had been verbatim included in the Survey in early 2018, and, speaking through the stickers, the community stated this goal was "Very Important."

11

12

3.28    Then-Councilmember Blossom stated that she wondered whether the community would be allowed to "opt out" of the Comprehensive Plan.

13

14

15

3.29    The consultant's synopsis of community comment at the February 10, 2020 public meeting began with "Vision – No Sewer" and included "Values – No Sewer!"

16

17

18

3.30    The consultant's synopsis of community comment at the February 10, 2020 public meeting stated a Goal of "NO! No changes to zoning, no increase in density" and in another section "Down zone.  No new construction! Leave us alone."

19

20

21

22

3.31    *Background - Pro-Density, Pro-Anderson COBI*  When she advocated for initiation of the Subarea Planning Process for Island Center, then-Councilmember Sarah Blossom argued for an earlier start date  than that being contemplated "because we already have a plan" and stated it [the plan] was an "urgent need" sought by the Island Center community.

23

24

25

26

**SECOND AMENDED COMPLAINT - 6**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.32    The Plan Blossom referenced was one created by the same Subarea Planning process in 2001, a plan which was soundly rejected by the community, causing that planning effort to end before completion.

3.33    The 2001 Plan included a 24.5 acre expansion of the Neighborhood Center and an upzone to the current Neighborhood Center properties, for a total of 56 acres in increased density.   Planning Commission Minutes for July 24, 2003 meeting.

3.34    The 2001 Plan included an option that included high density housing along Miller Road.

3.35    According to sworn testimony of then-Planning Director Kathy Cook in a lawsuit, the 2001 Plan was discontinued because "much of the surrounding neighborhood was strongly opposed to any expansion of the NSC, and individuals at the meeting were extremely hostile."   Case No. C13-5768 RJB, Western District Washington, Dkt. 19.

3.36    In approximately 2014-2016, then-Councilmember Blossom had previously strongly advocated for high density housing (75-100 units) on a 13.83 acre, publicly owned property known as "Suzuki."

3.37    The Washington state Old Growth Commission had confirmed Suzuki contains old growth forest.

3.38    Suzuki contains wetlands and a large pond.

3.39    None of the proposals supported by then-Councilmember Blossom provided a buffer for the pond, and all invaded the old-growth forest.

3.40    Plaintiff joined with others in her community, and was a vocal and consistent opponent of the project, which she believes constitutes an unconstitutional gift of public property to private interests.

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.41    In 2014, a developer clear-cut an 8.14 acre property to build a "big box" store shopping center, removing approximately 800 trees.

3.42    One of the architects for the project was Charles Wenzlau.

3.43    Plaintiff joined with others in her community, and was a vocal and consistent opponent of the project.

3.44    Plaintiff wrote a letter to the Bainbridge Review editor specifically calling out a promise regarding the impact of the project made by Charlie Wenzlau to the hearing examiner that was not fulfilled.

3.45    On May 14, 2015, a Planning Commissioner asked staff for help to "unlock the Neighborhood Service Center Box."

3.46    At the June 11, 2015 Planning Commission meeting, where proposed amendments to the Comprehensive Plan were discussed, a public commentor objected that the Commission had removed the phrase "preserve rural nature of the Island" from the overriding principles.

3.47    At the June 1, 2015 Planning Commission meeting, the Commission discussed the desire to rezone property on its own motion.

3.48    At the July 9, 2015 Planning Commission meeting, the Planning Director noted that the Planning Commission had previously recommended that the 2001 Plan should be used as the base for any new Plan.

3.49    At the July 23, 2015 Planning Commission meeting, Commissioners discussed recommending a Comprehensive Plan amendment that would allow incremental increases to an NSC without going through the Code-required Subarea Planning Process, bypassing that protective legislative component of the Plan.

3.50    Maradel Gale and Jon Quitslund were Commissioners in 2015, with Gale leaving the Commission in 2018 and Quitslund leaving the Commission in 2021.

3.51    The Island Center Committee was formed in November of 2017.

SECOND AMENDED COMPLAINT - 8
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.52    The Committee has completed its task as of the date of the filing of this Second Amended Complaint.

3.53    In 2017, Island resident Scott Anderson was appointed to the Committee.

3.54    In 2017, Island resident Maradel Gale was appointed to the Committee.

3.55    Anderson and Gale both contacted Senior Planner Sutton and asked how they could apply for the Committee.

3.56    Anderson first sought an upzone for a 10-acre property owned by his family that abuts the current Neighborhood Center in 2015.

3.57    Anderson's family LLC purchased the 10-acre property in 2015.

3.58    Anderson's Comprehensive Plan Amendment Application, submitted June 22, 2015 and dated June 3, 2015, included a Site Plan showing new public storage commercial buildings on the south 5 acres, and a housing development including 28 units on the north 5 acres of the 10-acre property.

3.59    Anderson provided public comment regarding his request to the Planning Commission on June 25, 2015.

3.60    Anderson submitted a re-zoning request for the property to the Planning Commission on July 9, 2015.

3.61    At the July 9, 2015, Planning Commission meeting, architect Charlie Wenzlau spoke in favor of significant increases in FAR (floor area ratio).

3.62    The Planning Commission recommended that Anderson's request be considered as part of a future Special Planning Area process, according to a memorandum drafted by Jennifer Sutton and Kathy Cook (Planning Department) dated September 10, 2015.

3.63    On September 10, 2015, the Planning Commission discussed recommended changes to the Comprehensive Plan that would upzone the Anderson

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

property.  Then-Planning Commissioner Quitslund opined that the "history of this application was something to be ashamed of."

3.64    Another property owner in the Island Center area, Andrew Cainon, sought an upzone for his one-acre parcel.

3.65    At the June 26, 2019 Island Center Committee meeting, Planning Staff liaison to the Committee, Jennifer Sutton, advocated for upzoning of the Cainon property.

3.66    By way of letter dated September 22, 2016, Scott Anderson asked the City Council and the Planning Commission to begin the Subarea Planning Process for Island Center.  The letter did not disclose his family's interest in 10 acres abutting the Neighborhood Center.

3.67    On or about August 8, 2018, then-City Manager Doug Schulze announced his resignation.  In a newspaper interview, he stated that City Council members are "essentially volunteers" and should leave policy decisions to the professionals.  Schulze also expressed frustration that the Council members sometimes gave greater weight to the opinions of members of the public than to recommendations from City Staff.  Schulze, according to the newspaper, called community members who criticized proposed city projects "armchair quarterbacks." Kitsap Sun August 8, 2018.

3.68    Following Plaintiff's August 14, 2018, removal, in June 2019, Island Center Committee consultant Wenzlau (Charles Wenzlau, a local architect who works for developers) proposed an expansion of about 40 acres of new Neighborhood Center Property.

3.69    At the November 6, 2019 Committee meeting, Island Center Committee consultant Arango stated "this process is supposed to be about growth."

**SECOND AMENDED COMPLAINT - 10**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.70    On January 22, 2020, Consultant Arango proposed an expansion of about 70 acres of new Neighborhood Center Property in Island Center.

3.71    The Committee rejected both proposals.

3.72    In late 2018 or early 2019, the Planning Commission appointed Planning Commissioner Quitslund as Planning Commission liaison to the Island Center Committee.

3.73    In what appeared to be an orchestrated discussion, at the May 8, 2019 Committee meeting, Gale advocated that the "do-nothing" or "status quo" option previously included in the possible Plans be abandoned.

3.74    Quitslund then told the Committee that a "status quo" option would be a "non-starter" with the Planning Commission.

3.75    Quitslund also told the Committee that a "status quo" plan would not meet the standard in the Comprehensive Plan.

3.76    Planning Director Christensen then weighed in to suggest that "status quo" option would be helpful to illustrate the impact of the proposed changes.  This statement contradicted what he had said previously, and contradicted what the public was told at the 2018 public meeting about the possibility of a "status quo" or "do nothing" option for Island Center.

3.77    Plaintiff wrote the Committee regarding the incorrect statements, and Quitslund responded on May 27, 2019 with an assertion that Plaintiff was trying to "obstruct" the process.

3.78    On October 31, 2021, Jon Quitslund emailed a document to COBI, asking that it be sent to the Planning Commission and the Island Center Committee. In the attached letter, Quitslund claimed that Plaintiff had a "personal grudge" against Scott Anderson, and that Plaintiff had "prevent[ed] that person [Scott Anderson] and others from engaging in a constructive and conclusive discussion of a

**SECOND AMENDED COMPLAINT - 11**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

central issue in the planning process . . . wasting innumerable hours of meeting time."   Jon Quitslund called Plaintiff's concerns about disclosures of conflicts of interest "strained and suspicious."   Quitslund advised that Plaintiff was "cranky" and "disrespectful of legitimate property rights."   Quitslund misrepresented that the earlier planning process had not resulted in any finding that the Island Center residents did not want increased density.   Quitslund further misrepresented that the conclusion that Scott Anderson's request to begin the Subarea Planning Process kicked off the Island Center planning process was "utterly false," based on his knowledge gained as a Planning Commissioner.

3.79   It is not clear how Jon Quitslund, who was not a Planning Commissioner at the time, saw the email to which he was responding.

3.80   *Background - COBI Pushes for Sewer Extension to Island Center*   At several meetings prior to Plaintiff's removal (e.g. 12/5/17, 2/21/18, 3/21/18, 4/18/18, 7/18/18 and 8/1/18), Sutton and/or Gale commented that sewer expansion to Island Center would enhance either the Fletcher Bay water quality or would facilitate the development of small lots in the area, including a large area that was outside of the Island Center planning area.

3.81   At a South Ward meeting on January 26, 2019, then-Councilmember Blossom stated that septic systems on Fletcher Bay would "fail eventually" and that bringing sewer to Island Center would solve the problem.

3.82   On September 10, 2019, a replacement consultant's contract was reviewed by the City Council ("Framework").

3.83   Framework's subconsultant offered a sewer analysis for $30,000.

3.84   A Committee member spoke to Council during the consideration of the Contract, and opposed this portion of the Contract, stating the Committee had not, and was unlikely to, develop a Plan that would require a sewer expansion.

SECOND AMENDED COMPLAINT - 12
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.85    The objecting Committee member noted the Committee could use that money to gain advice on other issues it was considering.

3.86    The City Manager promised the Council that the money would not be spent unless and until the Committee developed a draft Plan that required sewer expansion.

3.87    Based on the promise, the Council voted to approve the full contract.

3.88    The new consultant emailed Senior Planner Sutton and the sewer plan contractor on January 14, 2020, stating "a major unanswered question is whether we can develop a feasible plan to provide sewer service for Alternative 3 since it has more development capacity than any of the alternatives that were explored as part of the general sewer plan.  Infrastructure may be a limiting factor in selecting the preferred alternative."

3.89    Senior Planner Sutton responded on January 15, 2020, noting that the City could compel connection by the surrounding area to pay for the sewer.

3.90    At the March 4, 2020 Committee meeting, a City Staffer advised the Committee that the sewer analysis "was underway."

3.91    The Committee had not yet drafted a Plan.

3.92    None of the draft elements to the draft Plan included density sufficient to require sewer expansion.

3.93    Plaintiff inquired with the City Manager as to the genesis of the authority for the expenditure, and has not received an answer.

3.94    *Misstatements of Law to Justify Growth*  During several meetings (e.g. 12/5/17, 1/17/18, 2/7/18, 2/21/18 and 4/4/18), Christensen, Sutton, Gale, Anderson and/or Blossom made separate statements to the Committee and the public that the Growth Management Act requires growth, and/or that the Comprehensive Plan requires that Island Center be expanded and that residential

SECOND AMENDED COMPLAINT - 13
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

zoning be made more dense than it is now.  Then-Planning Commissioner Jon Quitslund made statements to the public and the Committee that growth in Island Center was required by the Comprehensive Plan.

3.95    These statements were often made in response to concerns raised by the public and requests that the Island Center area not be excessively developed.

3.96    Plaintiff generally attempted to correct these misstatements of the law to the Committee as they occurred, while she was on the Committee.

3.97    ***Committee Liaison Staff Promotes Growth*** From 2019-2020, Staff Liaison Sutton drafted the Committee Report, including a section regarding the public meetings.

3.98    Despite the public's placing "no stickers" on the goal of affordable housing in 2018, Sutton's initial drafts included a statement that the community had a high priority for affordable housing.

3.99    Despite the community's "word cloud" saying "Leave it Alone" at the 2020 public meeting in response to the question "what activities would enhance Island center," Sutton ignored the community's stance in her draft Report.

3.100   Sutton failed to include LU 5.2 in the listed Comprehensive Plan sections that were important to consideration of the Committee's Plan.  That section allows increases in density only through the transfer of development rights, or through affordable housing.

3.101   The Committee issued a proposed Plan in May of 2021, which Plan included upzoning the Anderson property and allowing residential density to be increased from R-2 to R-8.

3.102   Three members of the Committee issued a Minority Report, objecting to the expansion of the Neighborhood Center to include the Anderson property, and objecting to the new R-8 housing density.

**SECOND AMENDED COMPLAINT - 14**
(Cause No. 3:20-cv-06025-DGE)

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.103   The Minority Report also objected to the failure to include relevant Comprehensive Plan sections, including Housing Element LU 5.2.

3.104   Blossom and others have asserted that higher density is needed to create affordable housing.  During 2020, Plaintiff advised the Committee that state law existed that would allow them to mandate that any new residential density created in their Plan be affordable.  RCW 36.70A.540.

3.105   At the November 23, 2020, Committee meeting, Staff liaison Sutton recommended to the Committee that they not utilize the statute.

3.106   The consultant, whose sub-consultant is Charlie Wenzlau, a local architect and developer, advised the Committee to not change the zoning allowances to require affordable housing, but to use the existing Code.

3.107   The existing applicable Code section, BIMC 18.12.030(D), allows bonus density for actions other than the building of affordable housing.

3.108   *Objection Regarding Failure to Disclose Conflicts*   The COBI Ethics Program ("Program") requires that all committees include a standing agenda item for disclosure of possible conflicts of interest.  Program, Art. II, Section J.

3.109   The Program precludes action by any committee member who (among other disqualifications) has a "significant financial or private interest in that matter . . . ."  Program, Art. II, Section D. 1. a.

3.110   Section D. 1. does not apply to committee members who were appointed "based on ownership of property or interest in a business located in a certain area of the City . . . provided that the member fully discloses the basis for the conflict of interest under Subsection (1) during each meeting of the City Committee . . . . and [where] the City Committee . . . votes to allow the member to participate in the discussion or the vote . . . ."  Program, Art. II, Section D. 3. a. and b.

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.111   The Program does not exempt the Island Center Committee members from this obligation.

3.112   At the beginning of the first Committee meeting on December 5, 2017, Committee member Scott Anderson ("Anderson") disclosed that he and his family own a ten acre parcel adjacent to the Neighborhood Center, for which he had previously gone to the Planning Commission seeking an upzone, and that he sought an upzone for his family's property through the Island Center Subarea Planning Process.

3.113   Also at the first meeting, Committee member Maradel Gale ("Gale" or "Chair") disclosed that she and others on the Planning Commission at the time Anderson approached that body for the upzone had wanted to "help" Anderson, but were told that they could not make the zoning change until the Subarea Planning Process was completed.

3.114   The recording of the first meeting on December 5, 2017, began after the Committee members introduced themselves, and the portion of the meeting referenced above is not present on the publicly available recording.

3.115   At the January 17, 2018 meeting, a member of the public asked about the apparent conflicts of interest with respect to the two Committee members who sought to upzone their own properties.

3.116   Planning Director Gary Christensen ("Christensen") advised those present that, so long as the Committee members had disclosed the interest to the Council, the potential conflict of interest did not affect their ability to vote on the process.

3.117   Plaintiff requested at the March 7, 2018 Committee meeting that the Committee include the standard conflict of interest disclosure agenda item in future Committee meetings.

**SECOND AMENDED COMPLAINT - 16**
(Cause No. 3:20-cv-06025-DGE)

3.118   In response to Plaintiff's request, Christensen told the Committee and the public that, because the Committee is an advisory committee, the conflict disclosure was not really an issue.

3.119   All citizen committees provide recommendations.

3.120   The only exception to that general rule is the Salary Commission.

3.121   As of March of 2018, Gale had been nominated for the Chair position by Committee member Anderson, and the Committee voted her Chair.

3.122   At the March 21, 2018 meeting, whether and how to disclose conflicts was again discussed.

3.123   At the March 21, 2018 meeting, COBI Staff member liaison to the Committee, Jennifer Sutton, advised that the City Attorney told her he did not think disclosure was necessary because, for one reason, the Committee makes recommendations, and is not a decision maker.

3.124   Staff and Chair Gale suggested making a general statement to the effect that the Committee members in general own property or businesses in or near Island Center.

3.125   On April 4, 2018, following further discussion, the Committee expressly agreed to place conflicts of interest disclosures on the Agenda.

3.126   Chair Gale refused to call the Agenda Item "Conflict of Interest Disclosure," however, stating she would place on future Agendas discussion of "Statements of Interest."

3.127   At this time, Chair Gale was also a member of the Ethics Board for the City.

3.128   Plaintiff objected, and requested that the Agenda item be entitled "Conflict of Interest Disclosure" or similar, to comply with the Code [here, meaning the Ethics Program].

SECOND AMENDED COMPLAINT - 17
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.129   Later Committee Agendas showed "Conflict Disclosure" along with Call to Order and Agenda Review as the first item of business, but the minutes reveal that "statements of interest" were called for by the Chair.

3.130   During the June 6, 2018, Committee meeting, Plaintiff again noted that the Program requires "conflict of interest" disclosures, not "statements of interest," and that the Program further requires that the Committee actually vote on whether to allow the conflicted member(s) to discuss or vote on the topic from which they, personally, could potentially benefit.

3.131   After Staff liaison Sutton's report that the City Attorney had instructed that no conflict of interest disclosure was necessary, Plaintiff called the City Attorney to obtain his advice.

3.132   It took several weeks to connect with the City Attorney.

3.133   Plaintiff advised the City Attorney, Joe Levan, of Staff Sutton's relayed advice from him.

3.134   Levan told Plaintiff he "did not say that" (what Plaintiff reported Staff Sutton had reported he'd said).

3.135   Plaintiff asked for advice as to what to tell people who were concerned about the conflicts of interest.

3.136   Levan told Plaintiff that he did not provide advice on the Ethics Program, only on the state law, and that committee members are not subject to state law.

3.137   More than one year after this conversation, and following Plaintiff's removal from the Committee (discussed below), the City Attorney wrote to Plaintiff regarding an unrelated issue on August 23, 2019.

3.138   In that written communication, Levan implied that Plaintiff had lied about the prior conversation.

**SECOND AMENDED COMPLAINT - 18**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.139   Levan refused to discuss any issue with Plaintiff on the telephone or in person.

3.140   In his 2019 email communication, the City Attorney's recollection was that he advised Plaintiff that mere ownership of property or businesses in the area was not a conflict of interest, because the Code required such an interest in most of the Committee members.

3.141   The City Attorney did not explain in the email why the Ethics Program requirements did not apply to the Committee.

3.142   The City Attorney's implication that Plaintiff lied was presented in the context of Plaintiff requesting a telephone call regarding her review of some documents she had requested under the Public Records Act.

3.143   Plaintiff planned to request some physical accommodations relative to the document review, and wished to do so in a telephone call, not in an email.

3.144   The City Attorney's implied claim that Plaintiff lied was coupled with his demand that any future communication be in writing, and he refused to discuss anything on the telephone with Plaintiff.

3.145   Rather than place her personal information in the public record in order to request the accommodation, Plaintiff forewent review of the documents requested.

3.146   The City Attorney's implied claim that Plaintiff lied was disclosed to a third party, the City Clerk.

3.147   There was no legitimate basis for including a third party on the City Attorney's email claiming Plaintiff had lied.

3.148   The City Attorney, Levan, used information gained in his conversation with his former client (Plaintiff, as member of a citizen committee seeking legal advice regarding the Committee's obligations under the Program, was the City Attorney's client for that purpose) *against* Plaintiff in a separate, adversarial, context.

SECOND AMENDED COMPLAINT - 19
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.149    The City Attorney, Levan, may have violated the Rules of Professional Conduct by so using confidential communications against Plaintiff in a later, adversarial, context.  RPC 1.9(c)(1) and (2).

3.150    Plaintiff was caused distress by the City Attorney's communication, was impeded in her work, loss of sleep, and including at least one nightmare on August 27, 2019, regarding the allegations.

3.151    Levan negligently or intentionally caused Plaintiff distress.

3.152    Plaintiff requested intervention from the Mayor (Medina, at the time), who forwarded the issue to the City Manager.

3.153    Approximately three months later, on November 15, 2019, Plaintiff received an email from the City Manager, Morgan Smith, on the issue.

3.154    Smith refused to take any action regarding the City Attorney's communication.

3.155    As discussed above, while Committee Agendas after April 4, 2018 reflected a standing agenda item for "Conflict Disclosure," the Chair continued to call for any "changes in status" or similar, and no Committee member fully disclosed the interest in upzoning his or her own property, and the Committee did not comply with the Program by voting on whether to allow participation.

3.156    Returning to the June 6, 2018, Committee meeting, Plaintiff reported the content of her telephone call with the City Attorney to the Committee, and she re-urged the Committee's full compliance with the Ethics Program.

3.157    Later, during 2019, Chair Gale and the rest of the Ethics Board recommended to the City Council that it change the Program to exempt members of committees such as the Island Center Committee from disclosing conflicts of interest.

3.158    Council member Blossom explained in an August 9, 2019 email that the Board, and not she, recommended this change to the Program.

**SECOND AMENDED COMPLAINT - 20**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.159   In that August 9, 2019 email, Blossom acknowledged that the Committee members have a potential conflict of interest, and that it should be disclosed.

3.160   This statement by Blossom conflicted with the City Attorney's assertion to Plaintiff in his August 23, 2019 email that the Committee members did not have a conflict of interest.

3.161   This Ethics Board's recommendation and request that Council eliminate the conflicts disclosure requirement confirmed the requirement's existence, as well as that Chair Gale's and Staff's prior advice to the Committee, that no such disclosure was required, was inaccurate.

3.162   During the Ethics Program review process that spanned many months, Plaintiff communicated with the Council, and especially with Mayor Medina, and explained what the existing conflicts are:  Committee members who own land near the Neighborhood Center wish the Committee to "upzone" their property, they have, and continue to argue for, the "upzone," and they were anticipated to vote on the "upzone."

3.163   Mayor Medina expressed his opinion that this specific type of conflict is something he would want to know before voting on any Plan presented by the Committee (Council has the last word on any upzone recommendation by the Committee.).

3.164   The Council ultimately rejected the Ethics Board's recommendation that the Island Center Committee (and others like it) be exempted from conflict of interest disclosures.

3.165   On December 16, 2020, Chair Gale, seeing Plaintiff present at the Island Center meeting, publicly introduced the conflicts of interest disclosure agenda item by saying "Here you go, Lisa."

SECOND AMENDED COMPLAINT - 21
(Cause No. 3:20-cv-06025-DGE)

3.166    To date, certain Committee members have consistently failed to disclose that they own property that they advocate be upzoned as part of the Island Center Subarea Planning Process.

3.167    The Committee has further failed to comply with the Program, which requires a formal Committee vote be taken to allow those members who have disclosed a conflict to participate in discussion and/or voting on items that potentially affect their property or interests.

3.168    Plaintiff has brought these failures to the attention of the Committee, to Council, to Mayor Medina, and to the City Manager (because Mayor Medina forwarded the alert to her).

3.169    The City Manager Smith responded that the Committee was already disclosing "conflicts" in order to satisfy Plaintiff.

3.170    At the August 6, 2019 City Council meeting, the Council discussed possible changes to the Ethics Program.

3.171    Then-Councilmember Blossom described Plaintiff's concerns about the lack of conflict disclosures as a "problem with a person" and claimed disclosures had occurred at every single meeting.

3.172    *Procedural Objections*    Prior to her removal, Plaintiff had noted that no minutes were recorded for the first meeting, that of December 5, 2017.

3.173    The Committee had held a vote at the December 5, 2017 meeting.

3.174    Plaintiff provided draft proposed minutes for that meeting, as well as for the January 17 and February 7 meetings at the meeting of February 21, 2018.

3.175    Chair Gale and Sutton advised the Committee that minutes were not required because the meetings are recorded.

3.176    This position is reflected in the minutes for the February 21, 2018 meeting.

SECOND AMENDED COMPLAINT - 22
(Cause No. 3:20-cv-06025-DGE)

3.177   Chair Gale advised the draft minutes would be "appended" to the minutes for the record, as well.

3.178   Plaintiff's draft proposed minutes were not appended to any minutes recorded for any meeting.

3.179   Plaintiff's draft proposed minutes were not appended to the minutes of the meeting during which they were proposed.

3.180   On April 18, 2018, during Plaintiff's tenure on the Committee, Plaintiff alerted the Committee to its failure to draft a Work Plan, as required by the applicable BIMC.

3.181   Chair Gale advised a Work Plan was not needed.

3.182   Plaintiff offered to obtain and bring the Work Plan from the prior Subarea Planning Process (one conducted in 2001) to the next meeting for review.

3.183   At a later meeting, Christensen advised the Committee that, not only had he already drafted the required Work Plan, but also that it had been presented to the City Council, and the City Council had already approved it.

3.184   A copy of a timeline document was provided to the Committee.

3.185   Similarly, in early 2018, other Committee members requested input to the Request for Qualifications (RFQs) to be issued for a Committee consultant, and were told they would have that opportunity.

3.186   At or soon after the time this promise was made, Christensen, Sutton, Gale and the Planning Commission liaison, had already issued the RFQs, interviewed applicants, recommended consultants to Council, and the Council had hired consultants.

3.187   This secret action overruled or disregarded the Committee's December 5, 2017 vote to postpone this hire until the Committee could provide input into what sort of expertise was needed, in the Committee's estimation.

SECOND AMENDED COMPLAINT - 23
(Cause No. 3:20-cv-06025-DGE)

3.188   The Committee was told the consultants had already been hired at the March 21, 2018 meeting.  Several Committee members objected to the process that had resulted in their selection.

3.189   One of the consultants hired was Charles Wenzlau.

3.190   Charles Wenzlau was on the Affordable Housing Task Force (AHTF), Jennifer Sutton was Staff liaison to the Affordable Housing Task Force, and Sarah Blossom was the City Council liaison to the Affordable Housing Task Force.

3.191   During AHTF meetings, Wenzlau had promoted pushing density out of Winslow into outlying areas like Island Center.

3.192   The AHTF Final Report did not suggest using state law to require affordable housing when upzoning, but instead advocated for mandatory inclusionary zoning, which required only 10% affordable units.

3.193   Wenzlau was and/or is advising former Committee member Scott Anderson regarding the options for development of Anderson's family's 10 acres.

3.194   At the April 4, 2018 Committee meeting, Christensen admonished the Committee for its lack of progress, and told the Committee that it might have to begin meeting weekly.

3.195   Prior to the next meeting (April 18, 2018) and at the meeting, Plaintiff objected to Christensen's admonishment.

3.196   At the April 18, 2018 Committee meeting, Plaintiff also raised a point of order.

3.197   The point of order was regarding the Committee's prior vote to postpone Vision Statement drafting, and the presence on the Agenda of "draft Vision Statement," despite that vote.

3.198   Plaintiff noted that proper procedure suggested that the Committee should take another vote before proceeding.

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.199   Plaintiff's point of order was disrupted by Chair Gale's repeated interruptions.

3.200   The Committee eventually held a vote, and decided to draft the Vision Statement without waiting for the result of the Survey.

3.201   The minutes for the April 18, 2018 meeting fail to reflect this vote.

3.202   On June 13, 2018, Plaintiff communicated via email with members of the public who were persons known to her to be interested in growth, environmental, and fair government issues.  As required, she sent the email from her COBI email address.

3.203   Among other issues, Plaintiff noted that the Staff, not the Committee, had drafted the Code-required Work Plan.

3.204   Among other issues, Plaintiff noted that Staff, Gale and the Planning Commission liaison had hired the consultants with no input from the Committee, and despite the Committee's vote to briefly delay hiring consultants.  Plaintiff further noted the refusal by Sutton to record the vote in the minutes for the December 5, 2017 meeting.

3.205   Among other issues, Plaintiff noted that Gale had stated her long-held desire to get the process started and that Gale had admitted at the December 5, 2017 meeting that the Planning Commission (on which body she sat) had wanted to help Committee member Anderson with the upzone of his family's Island Center 10 acre property.

3.206   Among other issues, Plaintiff noted that Anderson nominated Gale for Chair, in a vote Sutton postponed from the prior meeting when Anderson was absent.

3.207   Among other issues, Plaintiff advised that the Comprehensive Plan (Housing Element LU 5.2) required that any increase in residential density in

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

Neighborhood Centers be accomplished through transfer of development rights or bonus density for affordable housing.

3.208    Among other issues, Plaintiff reported that Planning Director Christensen had told the Committee and public that no conflict of interest could, or did exist, that Staff Liaison Sutton said the same thing, and that Chair Gale refused to place Conflicts of Interest on the Committee's agendas, despite City policy being to the contrary.

3.209    ***Removal of Plaintiff From Committee***   Returning to Plaintiff's removal from the Committee on August 14, 2018, Plaintiff was not provided notice of the impending discussion.

3.210    While the August 14, 2018, City Council meeting Agenda included a motion to remove a citizen from a committee, the Agenda item did not name the person to be removed, or the committee from which a person was to be removed.

3.211    Plaintiff received a telephone call from Council member Ron Peltier on August 14, 2018, to advise that he had contacted Council member Blossom and been told Plaintiff's removal was not on the Agenda.

3.212    Peltier advised Plaintiff that if her removal were discussed, it would be helpful for him to be able to relay that Plaintiff would try to be "more diplomatic" in the future.

3.213    Plaintiff stated that she always tried to be diplomatic and would listen to any advice on the subject.

3.214    Plaintiff reported to Peltier her July 11, 2018 telephone conversation with Blossom (discussed below), in which call Blossom had promised to address Plaintiff's concerns, and in which call Plaintiff had promised to bring any future concerns to Blossom.

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.215   Plaintiff later asked the Mayor, Kol Medina, who placed the item on the Agenda.

3.216   According to him, Mayor Kol Medina does not recall who placed the motion to remove Plaintiff on the Agenda for August 14, 2018.

3.217   Council member Sarah Blossom, who was also the City Council's liaison to the Committee, told Plaintiff (on August 15, 2018) she did not ask that the Agenda item be placed on the Agenda, and that she did not have notice of its presence prior to August 14, 2018.

3.218   On August 14, 2018, BIMC 2.16.210.E.1. governed the Subarea Planning Process, and that code section lacked any procedure for removal of a committee member.  On December 11, 2018, the City Council considered a change to that code section to include a removal procedure.  Then-Mayor Medina stated in the open meeting that the purpose of the change was due to Council's realization during Plaintiff's removal that the City had no process for removing people from a committee.  The revision to BIMC 2.16.210.E.1. added a removal process, and did not strike out any preexisting removal process.  Then-Mayor Medina explained his position regarding the revisions:  "And, so I erred on this side [giving the Mayor the initial power of removal] . . . because I wanted to avoid the council sitting up here and having a personal conversation about someone that might be, you know, disparaging to them.  So, this would be a way to not have to have that conversation.  That's why I put it in here, but, you know, it's an important point."  The code changes were passed into law on January 8, 2019, under Ordinance No. 2019-01.

3.219   No public hearing, testimony, or vote was required to effect Plaintiff's removal from the Committee.

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.220    COBI Council did not follow the removal procedure provided by the COBI Code because the Code did not provide a process for citizen removal from a committee.

3.221    COBI Council instead held a public hearing without notice to Plaintiff on August 14, 2018, which was televised and recorded, and which provided a public platform for some, including Council members and COBI staff, as well as members of the public, to provide their opinions regarding Plaintiff in that permanent public forum.

3.222    At the August 14, 2018 City Council meeting, then-Mayor Kol Medina raised the issue of Plaintiff's removal from the Committee by telling the public that "anyone serving on any of the committees serves at the pleasure of the Council and we can remove them if we feel like they are, for whatever reason, disrupting the committee, not acting appropriately.  We have reasons to, some councilors anyway have expressed reasons to believe this person [Plaintiff] should be removed from the Committee."

3.223    Following the introduction wherein the Mayor stated that one in the Plaintiff's position, who had been "disrupting the Committee" and "not acting appropriately," could be removed, he asked for a motion to remove Plaintiff, identifying her by name.

3.224    This combination of statement and action implied to the public that Plaintiff had been "disrupting the Committee" and "not acting appropriately" to the point that her behavior now necessitated her removal.

3.225    Recitation of such grounds was unnecessary to comply with the pertinent BIMC section.

3.226    Council member Sarah Blossom (Blossom) moved to remove Plaintiff from the Committee.

**SECOND AMENDED COMPLAINT - 28**
(Cause No. 3:20-cv-06025-DGE)

1

2

3.227   Blossom claimed to not have known the item would be on the Agenda.

3.228   Blossom stated her reasons for moving to remove Plaintiff:  "we've had some Committee members resign because of [Plaintiff's actions/behavior]," and that Plaintiff had refused to meet with the Planning Director, Gary Christensen.

3.229   Both statements were false.

3.230   Regarding the assertion that Committee members resigned "because of" Plaintiff, the Committee members who resigned prior to August 1, 2018, resigned for reasons other than Plaintiff's actions, words or behavior.

3.231   One Committee member wrote on May 31, 2018 to resign for "health issues."

3.232   The other Committee member wrote on June 4, 2018 to resign due to the Committee's having made "little meaningful progress" to date.

3.233   Staff member Jennifer Sutton reported the resignations to the Committee during a meeting, and had previously reported one resignation in an email.

3.234   Plaintiff was aware from conversations and email communications both while on the Committee and after her removal that the claim that either person who resigned had done so "because of" Plaintiff was false.

3.235   For example, on July 11, 2018, Plaintiff called Blossom to discuss Plaintiff's concerns about the process being followed by the Committee, including what Plaintiff believed were inaccurate statements of the law, and the Committee's ongoing failure to disclose conflicts of interest.

3.236   In the July 11, 2018 telephone call with Blossom, Plaintiff expressed concern that Christensen seemed hostile and might be attempting to make Committee work for Plaintiff sufficiently uncomfortable that she would quit.

**SECOND AMENDED COMPLAINT - 29**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.237   Blossom responded (paraphrased) "we do not need any more resignations."

3.238   Blossom quickly spoke again, and appeared concerned that she had implied the two members had resigned because of Plaintiff's actions, saying (paraphrased) "I'm not saying they quit because of you."

3.239   Because Blossom had volunteered during the July 11, 2018, call that the prior resignations were not "because of" Plaintiff, and because Plaintiff was aware, through her Committee participation, of the true reasons for those resignations, Plaintiff wrote to Blossom on February 27, 2019 and set out the two conflicting statements from the July 11, 2018 call, and Blossom's statement at the August 14, 2018 City Council meeting implying to the public that Plaintiff was to blame for the resignations, requesting Blossom provide an explanation.

3.240   Blossom did not respond to the February 27, 2019 email.

3.241   Plaintiff followed up on March 6, 2019, and Blossom responded:  "I didn't respond and I don't plan to."

3.242   At the City Council meeting on August 14, 2018, Planning Director Gary Christensen also argued in support of removal.

3.243   Christensen admitted under questioning by a Council member that he could not say that other members of the Committee had resigned "because of" Plaintiff's participation.

3.244   Regarding the second asserted ground for Plaintiff's removal, Plaintiff's alleged refusal to meet with the Planning Director, Christensen had requested an in-person daytime private meeting with Plaintiff on April 18, 2018, after 2:00 p.m., to discuss Plaintiff's expressed concern (email dated April 17, 2018) that he had overridden a Committee vote by unilaterally changing the next Committee Agenda.

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.245   The issue there was that, as reflected in the Minutes for the April 18, 2018 meeting, the Committee had voted in the April 4, 2018 meeting to issue a survey to the public for input on a list of possible issues before drafting a Vision Statement. The April 4, 2018 minutes were never amended as voted in the April 18, 2018 meeting.

3.246   The Committee's Agenda, therefore, did not include drafting the Vision Statement for the next meeting.

3.247   Christensen ignored that vote and placed the Vision Statement drafting back on the Agenda.

3.248   Plaintiff did not refuse to meet with Gary Christensen regarding her concern.

3.249   Instead, Plaintiff responded by email on April 17, 2018, to the request, thanking the Planning Director, but advising she felt it would be best if communication occurred in the public record.

3.250   Blossom pressed Plaintiff to attend an in-person meeting, advising she planned on also attending (April 17, 2018 email).

3.251   In a responsive email of the same date, Plaintiff reiterated her desire to have any meeting with all (the Committee) in attendance, and on the public record.

3.252   As such, Plaintiff expressed the desire to meet in public, not private, and never refused to meet with Christensen.

3.253   As such, Plaintiff expressed the desire to meet in a forum where the communications would be recorded, and Plaintiff never refused to meet.

3.254   Christensen did not respond to Plaintiff's request that their discussion take place, as Plaintiff had requested.

**SECOND AMENDED COMPLAINT - 31**
(Cause No. 3:20-cv-06025-DGE)

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.255   At the April 18, 2018, Committee meeting following the email exchange between Plaintiff and Christensen, Christensen did not bring forward any discussion with Plaintiff, about Plaintiff, or about Plaintiff's concerns.

3.256   At the August 14, 2018 City Council meeting, Blossom further supported her motion to remove Plaintiff from the Committee by asserting that "we're at risk of losing our Chair" [Maradel Gale].

3.257   Upon questioning by another Council member, Blossom admitted Plaintiff had not been warned that Plaintiff's behavior could result in her removal from the Committee.

3.258   Plaintiff had previously spoken personally with Blossom (herself an attorney) regarding the Committee's failure to disclose conflicts.

3.259   Based on recollection, Plaintiff had emailed Blossom previously regarding the Committee's failure to disclose conflicts.

3.260   Plaintiff initiated the telephone call that took place on July 11, 2018.

3.261   On July 11, 2018, during their private telephone call, Blossom promised to address Plaintiff's concerns.

3.262   Blossom requested that Plaintiff come to her with any future concerns.

3.263   Plaintiff agreed to come to Blossom with any future concerns.

3.264   Blossom at no time, whether on July 11, 2018 or at any other time, warned Plaintiff that she was in danger of being removed from the Committee.

3.265   Blossom brought up her conversation with Plaintiff on July 11, 2018 at the next Committee meeting (July 18, 2018), but that portion of the meeting focused on Scott Anderson's complaint that Plaintiff had sent an email about her concerns to members of the public using her City email address.

3.266   Plaintiff was unable to attend the July 18, 2018 meeting, and she had alerted Blossom that she could not attend during the July 11, 2018 telephone call.

**SECOND AMENDED COMPLAINT - 32**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO Box 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.267   Plaintiff attended the next Committee meeting, on August 1, 2018.

3.268   Plaintiff's concerns were not addressed at the August 1, 2018 meeting.

3.269   Plaintiff raised no complaints at the August 1, 2018 meeting.

3.270   Plaintiff was not warned of the impending removal at the August 1, 2018 meeting.

3.271   The status of finding new members to replace those who had resigned was discussed at the August 1, 2018 meeting.

3.272   Plaintiff's removal from the Committee was not discussed at the August 1, 2018 meeting.

3.273   On August 10, 2018, Plaintiff communicated with Staff regarding the Committee's prior request for a traffic study, a request for any updates to the Work Plan, and requested contact information for the consultants to obtain copies of the "table forms" from the public meeting, which contained detail about public concerns and comments.  Plaintiff received no response to this request.

3.274   To the best of Plaintiff's recollection, and based on her records, Plaintiff had no other contact with the Committee, the Staff or Council member Blossom.

3.275   No warning was provided to Plaintiff in the August 10, 2018 communications.

3.276   Further, at the August 14, 2018 City Council meeting, the Mayor inexplicably permitted/invited public comment on Plaintiff's removal.

3.277   Then-Planning Commissioner and current Councilmember, Jon Quitslund, not identifying himself on the record as a COBI Planning Commissioner, and admitting he had no personal knowledge of Plaintiff, claimed Plaintiff was abusive ("just ugly, and totally inappropriate") to COBI Staff liaison to the Committee, Senior Planner Jennifer Sutton.

SECOND AMENDED COMPLAINT - 33
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.278   Planning Commissioner Quitslund stated that he'd "heard things that were upsetting" to him "because they seemed to be threatening a kind of dysfunction in a very touchy and very important process."

3.279   Quitslund went on to state that it "seemed to be the case that there's just so much disruption and so much blocking of the description of where we're going and how, and, and what's at stake . . . ."

3.280   Quitslund closed his televised/recorded speech by agreeing with Plaintiff's removal from the Committee, and then suggesting that Plaintiff's behavior/action "seems irrational."

3.281   Council had previously implemented a rule prohibiting *ad hominem* attacks during public comment or among Council members.

3.282   This rule had been enforced against Council members and public speakers in the past.

3.283   Quitslund's comments violated the Council rule.

3.284   The Mayor did not halt, or otherwise interrupt, Quitslund's speech regarding Plaintiff.

3.285   The Mayor did not make any statement that could have diminished the adverse impact of Quitslund's speech.

3.286   Quitslund was later appointed the Planning Commission's liaison to the Committee.

3.287   The BIMC provides that the Committee's final recommended Plan next moves to the Planning Commission for public hearing and commentary.

3.288   Quitslund told the Committee in early 2019 that a no- or low- growth plan for Island Center would violate the Comprehensive Plan.

**SECOND AMENDED COMPLAINT - 34**
(Cause No. 3:20-cv-06025-DGE)

3.289   Quitslund told the Committee in early 2019 that any no- or low-growth Plan would be a "non-starter" with the Planning Commission (the next stop for the draft Plan).

3.290   Quitslund later (January of 2019) told Plaintiff that he had no personal knowledge supporting his comments regarding her made on August 14, 2018.

3.291   Quitslund later (January of 2019) told Plaintiff that his "friend of many years," Maradel Gale, relayed to him the information that he had presented to the City Council as true.

3.292   Just prior to a Committee meeting in early 2019 (following Plaintiff's removal), Maradel Gale was heard to comment as she read something on her cell phone, which, given that Plaintiff had sent an email to the Committee just before the meeting, could have been an email from Plaintiff to the Committee, "[S]he is just a disaster for this committee."

3.293   At the August 14, 2018 City Council meeting, the Council voted 5-2 to remove Plaintiff from the Committee.

3.294   Also at the August 14, 2018 City Council meeting, the Council discussed removing or demoting a member of the Environmental Technical Advisory Committee ("ETAC").

3.295   The ETAC committee member, who had been previously warned regarding his criticism of other members, was demoted from Chair and was not removed.

3.296   Plaintiff was singled out for different treatment than the ETAC Committee member.

3.297   The Council members other than Blossom who voted to remove Plaintiff made it clear they had no knowledge whether the statements by others were true, or not.

**SECOND AMENDED COMPLAINT - 35**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.298   Several Council members who voted to remove Plaintiff expressly stated they were so voting to "support" Blossom, or because Blossom, as Council's liaison to the Committee, "advised" removal.

3.299   Following the August 14, 2018 City Council meeting, Plaintiff heard from one Councilmember who stated he "felt really bad" about how things were handled.

3.300   Blossom called Plaintiff on August 15, 2018, to advise her that she had been removed from the Committee the night before.

3.301   Later, Plaintiff reviewed the August 14, 2018 Council meeting tape, and saw that during the August 14, 2018 Council meeting, the Mayor offered to attend the call to Plaintiff.

3.302   This suggestion, made before the public, created the implication to the public that Plaintiff's reaction would be severe, and that Blossom would need "back up."

3.303   Blossom declined the assistance.

3.304   Further, at the August 14, 2018, City Council meeting, Council member Nassar expressed concern about Plaintiff's attendance as a member of the public at future meetings, and that "firing" Plaintiff could "exacerbate the problem."

3.305   Both the Mayor's offer of "help" when communicating with Plaintiff about her removal, and Nassar's assumption that Plaintiff's behavior was sufficiently concerning so as to warrant barring her from future public meetings, confirms that the impression left with Council and the public regarding Plaintiff was that she is irrational, violent, or otherwise not a person that should be allowed at a public government meeting.

3.306   Nassar's concern was dismissed by Blossom.

**SECOND AMENDED COMPLAINT - 36**
(Cause No. 3:20-cv-06025-DGE)

3.307   During the August 15, 2018 telephone call with Plaintiff, Blossom asserted that she had not known about the Agenda item to remove Plaintiff, and had not wanted to vote for the motion to remove Plaintiff.

3.308   In the telephone call, Blossom did not reveal that it was she who had, in fact, made the motion to remove Plaintiff.

3.309   Plaintiff did not have questions for Blossom during the call.

3.310   During the August 15, 2018, telephone call, Blossom volunteered to Plaintiff: "I do not think it (the removal) was because you are anti-development."

3.311   The City Manager at the time of Plaintiff's tenure on the Committee was Doug Schulze.

3.312   At the time of Plaintiff's removal, the City's government culture was pro-growth, and failed to embrace public participation in government.

3.313   The practice at the time of Plaintiff's removal was for the City Council meeting Agenda to be set through conference between the Mayor and the City Manager.

3.314   On August 18, 2018, Plaintiff watched the videotape of the City Council meeting where she was removed.  She was caused embarrassment and distress at the unsupported and false attacks made, unnecessarily, on her in a recorded public forum, and at the thought that her current or future employer and clients could form an adverse opinion of Plaintiff's personality, capacity, and ability to function as an attorney, as a result of the things said about Plaintiff.  In the following weeks, Plaintiff suffered from significant sleeplessness, worry and distress.  The sleeplessness aggravated medical conditions suffered by Plaintiff.

3.315   Plaintiff suffered worry that her current contracted employer, who resides on Bainbridge Island, would believe the false statements, and that permanent damage would be caused to the employment relationship and, consequently, her

SECOND AMENDED COMPLAINT - 37
(Cause No. 3:20-cv-06025-DGE)

income stream, as well as to her professional standing in the Bainbridge Island and Seattle legal communities.

3.316    Also at the August 14, 2018, City Council meeting, a member of a different committee was demoted for "performance" issues.

3.317    That committee member was not removed from the committee, but was demoted from the position of Chair.

3.318    That committee member later filed an Ethics Complaint, and the Ethics Board issued an Advisory Opinion, No. 2018-02.

3.319    In Opinion No. 2018-02, the Ethics Board noted that the complainant (like Plaintiff) had not been notified that his communications could result in demotion, had not been provided notice of the City Council meeting, and had not been provided the opportunity at that meeting to correct any factual misstatements about himself.

3.320    The Ethics Board concluded with a recommendation:

> It is incumbent upon the elected official to meet with the committee member and discuss what constitutes appropriate behavior.  In the instant case, it is not clear that such discussions were held.  Normal standards of ethical behavior as they relate to respect for citizens, fairness in the application of process, and recognition of the contributions of citizen committee members, may have been disregarded.  This can be a problem for the city, as it sends a message to other citizens that their service on a city committee may subject them to hurtful public rebuke and reprisal without due process – and who wants to set themselves up for that? . . . The City Council must take steps to establish a better process for dealing with situations such as this – a process that is fair, equitable, transparent, and respectful of the citizens who volunteer for the city."

Opinion No. 2018-02, pp. 4-5.

3.321    Shortly after August 18, 2018, following her review of the meeting, Plaintiff contacted the City Council and requested that the section of the August 14, 2018 meeting tape regarding Plaintiff be removed from the tape, or that a correction

**SECOND AMENDED COMPLAINT - 38**
(Cause No. 3:20-cv-06025-DGE)

be made.  Plaintiff received no response, other than the opinion by one Council member that he/she considered removal or correction unlikely. COBI was again asked to correct the record when Plaintiff sent a draft complaint to City Council in approximately May of 2020.  COBI was put on notice of Plaintiff's claims when she served a Tort Claim notice on August 13, 2020.  COBI did not respond to either communication.  In October 2020, Plaintiff forwarded a demand letter to the City that included a request for a tolling agreement to the City in an effort to explore non-monetary settlement options (a correction of the record).  Following that letter, the City's outside counsel contacted Plaintiff, but COBI refused to toll the statute of limitations to allow discussion of a non-monetary resolution.

3.322    Following Plaintiff's removal, and further following a fourth resignation from the Committee, the Council re-stocked the Committee with four persons:  1) an architect; 2) a builder; 3) a Seattle planner; and 4) a member of Kol Shalom synagogue, which congregation seeks to continue to use the City-owned lot next to their building for parking.

3.323    **Blackballed**    In May, 2020, Plaintiff applied for appointment to an open seat on the City Council.

3.324    The local newspaper ran a story that highlighted Plaintiff's removal from the Committee and repeated the false claims made about her at the August 14, 2018 meeting.

3.325    The news article included a stated opinion that was not attributed to any person, and which was not available from the meeting tape.

3.326    Plaintiff's contracted employer advised he had seen the story.

3.327    Plaintiff requested correction from the newspaper, but did not receive a response.

**SECOND AMENDED COMPLAINT - 39**
(Cause No. 3:20-cv-06025-DGE)

3.328   No correction was run, and Plaintiff was not selected for the Council seat.

3.329   Following her removal from the Committee, Plaintiff continued to attend the Island Center Committee meetings as a member of the public.

3.330   While the Committee had previously (approximately April of 2018) voted to allow public comment "per topic," the Committee Chair, Maradel Gale, and/or Staff had unilaterally amended this practice. At the time of Plaintiff's removal, limited public comment was allowed only at the end of the meeting, after the Committee had already discussed and decided issues.

3.331   Plaintiff's ability to meaningfully participate in the Island Center planning process, as compared to her participation as a member of the Committee, was therefore limited, restricted, or moot.

3.332   Plaintiff has been "blackballed" from COBI land use and important committees.

3.333   Plaintiff has applied for a position on the Ethics Board three times.

3.334   Plaintiff served as a Justice on her law school's Honor Court while she was also a member of the Law Review, and is otherwise qualified.

3.335   After Plaintiff interviewed the third time, in March of 2020, with Councilmember Schneider and Councilmember Hytopoulos, COBI re-opened applications without explanation.

3.336   Plaintiff again was not appointed.

3.337   The Chair of the Ethics Board resigned in January of 2021.

3.338   The departing Ethics Board Chair advised Plaintiff she had recommended that Plaintiff be named to the Board as her replacement.  The seat remains open as of the filing of this Second Amended Complaint.

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.339   Also, following her removal, Plaintiff twice applied for an open Planning Commission seat (November of 2020 and June of 2021), and was not selected.

3.340   The then-chair of the Planning Commission, alleging problems with Plaintiff's reputation, argued against Plaintiff's appointment during a sub-committee discussion of the applicants.

3.341   That then-Chair of the Planning Commission has since left the Planning Commission to begin a business promoting development, which will include affordable housing on Bainbridge Island.

3.342   Prior to leaving the Commission, that then-Chair voted to recommend an ordinance that would allow bonus density to developers with a 50% requirement for affordable housing, rather than 100%, a decision that favored developers.

3.343   *Disparate Treatment*  On June 21, 2021, Plaintiff requested recusal of an Ethics Board member with regard to "conflict of interest" Ethics Complaints filed by Plaintiff against two Island Center Committee members, including Scott Anderson, and the affected Ethics Board member stated in the public meeting that Plaintiff's request was racist, sexist, and a "micro-aggression."  The Board member was not disciplined, much less removed, and she did not recuse herself, as requested.

3.344   In contrast to COBI's treatment of Plaintiff, a Salary Commissioner threatened another Commissioner with suit in or about April of 2021, and was not disciplined, much less removed from the Commission.

3.345   On April 8, 2021, then-Planning Commissioner Jon Quitslund told the Planning Commission that "persons" (known by many if not all of those on the Planning Commission to be a reference to Plaintiff) had intimidated the Island Center Committee, that Plaintiff had sown "doubt and discord" by her speech, that her public comments were "mischief," that Plaintiff "misinformed" the Island Center

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

committee, that Plaintiff had engaged in "manipulative behavior," and was not always "fair and square." Quitslund sought permission to present his own views to the Island Center Committee, implying he would get them back on track. The Planning Commission Chair advised him that he was not to get "involved in the discussion."

3.346   Plaintiff complained of Commissioner Quitslund's comments shortly after April 8, 2021, and he was not disciplined or removed from the Commission.

3.347   On May 23, 2021, Plaintiff responded to a telephone call from Jon Quitslund, and asked why Quitslund had called Plaintiff a manipulative mischief maker during the April 8, 2021 Planning Commission meeting. Quitslund did not deny that he was referencing Plaintiff, and stated "Scott Anderson has had legitimate interests and you have consistently tried to quash them."

3.348   In June of 2021, Plaintiff was not chosen for appointment to the Planning Commission by a committee formed for the purpose of selecting the appointees, in part due to the negative input from the then-Planning Commission Chair, whose comments reflected concerns about Plaintiff's "reputation."

3.349   In recognition of Jon Quitslund's improper acts in connection with the Island Center Subarea Planning Process in May and June of 2021, the Planning Commission "did away with" liaisons to other committees.

3.350   On his last day as a Planning Commissioner, June 30, 2021, Commissioner Quitslund wrote from his private email account to the Planning Commission to attack Plaintiff, who had written to the Commission regarding some of its deliberations regarding the Island Center Plan, then before it for consideration.

3.351   Among other attacks, Quitslund called Plaintiff's concerns "B.S." Quitslund characterized Plaintiff's concerns about conflicts of interest on the Committee as "harping on perceived conflicts of interest." These retaliatory actions

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

violated Plaintiff's First Amendment Rights of free speech and petition and constituted defamation.

3.352   As a result of COBI's agents' actions, Plaintiff has suffered and continues to suffer damage to her reputation in her profession and her community.

3.353   On July 8, 2021, a Planning Commissioner misunderstood a comment made by Plaintiff in public comment and stated it was "offensive, no one said anything about being white."   That Commissioner later apologized to Plaintiff outside of the public record for the misunderstanding.   Plaintiff objected in a later Planning Commission meeting during public comment, but the Commissioner was not disciplined, much less removed, for the public personal attack on Plaintiff.

3.354   On or about July 14, 2021, Jon Quitslund and the Planning Commissioner referenced in the prior paragraph publicly exchanged a pleasantry about the July 8, 2021, attack on Plaintiff, with Quitslund saying "hey that was a great zinger you did to Lisa Neal."   The Planning Commissioner responded, "I'm from New York."

3.355   On or about October 31, 2021, Quitslund wrote to the Planning Commission and City Council and alleged Plaintiff is "disrespectful of legitimate property rights," has a "personal grudge" against one member of the committee, and that Plaintiff (somehow, despite her removal from the committee more than three years before) "prevent[ed] that person and others from engaging in a constructive and conclusive discussion of a central issue in the planning process."   Quitslund alleged Plaintiff was "obstructive" and "wasted innumerable hours of meeting time and many months on the calendar."   Quitslund alleged Plaintiff's statement that the Island Center process was begun when Scott Anderson asked for it to begin was "utterly false."

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.356   In or about November 1, 2021, Jon Quitslund and Councilmember Leslie Schneider discussed making sure Scott Anderson received a "fair shake" regarding his family's property.  Jon Quitslund alleged in a written communication between the two that Plaintiff was "malicious" in an apparent attempt to undermine/marginalize Plaintiff, and to convince the reader that Plaintiff's concerns were illegitimate, or otherwise unworthy of consideration.

3.357   In that November 1, 2021 email, Quitslund states that his preference is providing subsidized housing to households that make more than 80% of the Bainbridge Island median income, and he thanked Councilmember Schneider for her voting consistent with that view.

3.358   *Public Records Act*   During the Pandemic, Committee meetings were conducted by "Zoom."

3.359   Materials reviewed by the Committee at meetings were sometimes, but not always, provided with Agenda packets for meetings.

3.360   On December 16, 2020, Plaintiff requested copies of the "Zoom" meetings of the Island Center Subarea Planning Process Steering Committee.

3.361   More than five days later, on December 31, 2020, COBI responded that the Island Center "Zoom" meetings were not recorded, due to "City Policy."

3.362   COBI amended the response later the same day to advise that the meetings, both video and audio, were in fact recorded, but that the video portion of the recording was not retained, nor uploaded.

3.363   COBI did not provide the reason for the delayed response.

3.364   A video link for the full meeting (video and audio) that took place on December 16, 2020, had been provided in response to the public records request on December 18, 2020.

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

3.365   COBI did not produce the video portion of the recordings for any prior meeting.

3.366   Following Plaintiff's inquiry, COBI confirmed in an email posted to the public records portal that the video portion of each prior "Zoom" meeting had been created, but that it was deleted following the creation of the document.

3.367   COBI has failed to file approved minutes for the Island Center meetings for the dates September 30, 2020, October 28, 2020 and November 23, 2020.

3.368   COBI has never recorded minutes for the December 5, 2017 meeting.

3.369   RCW 42.30.030 requires that minutes for all regular and special meetings (except executive sessions) be recorded and provided for public inspection.

## IV.   <u>CAUSE OF ACTION - 42 U.S.C. § 1983</u>

4.1   Plaintiff incorporates the factual allegations found in paragraphs 3.1-3.369, and incorporates the same as though fully stated herein.

4.2   *First Amendment Rights* Plaintiff was engaged in a Constitutionally protected activity when she raised questions, expressed opinions, objected to process violations, objected to misstatements of the law or objected to misstatements of the Comprehensive Plan.

4.3   Defendant's actions were taken under the color of state law, and were calculated to, and did, pursuant to 42 USC § 1983, violate Plaintiff's right to participate in government and attempt to persuade others, and effectively punished her for her exercise of her right to free speech and political speech, in violation of the United States Constitution.

4.4   Defendant's actions against Plaintiff would have chilled a person of ordinary firmness from continuing to engage in the protected activity.

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

4.5     Defendant's purpose, according to Sarah Blossom on August 14, 2018, in removing Plaintiff was expressed as prioritizing the "health and functioning of the Committee over this person's participation in it."    Defendant's agent Gary Christensen provided input that "there hasn't been full support of the process," "there's been some decisiveness [sic]" "at the point of being argumentative."   Gary Christensen provided his opinion that he did not "always see that [respectful commentary] from this individual" and that he "found that frustrating." Councilmember Blossom closed her commentary by asserting that "of course people can still come and speak their mind . . . and I would say it's not about what she's speaking or her point of views [sic], it's um, more how she interacts with the other committee members and with staff."   Plaintiff's engagement in this protected activity was a substantial or motivating factor in the Defendant's conduct.

4.6     Defendant was obligated to protect, not impede, Plaintiff's right to raise concerns regarding multiple misstatements of law, the repeated failure to disclose conflicts of interest, departures from proper process, and the Staff overriding of Committee votes, regardless of whether such concerns made other Committee members "uncomfortable," and regardless of whether discussion of the concerns allegedly slowed down the Committee's meetings, and/or the planning process.  The desire for a "smooth process" does not trump Plaintiff's, or anyone's, Constitutionally protected rights.

4.7     Defendant's actions were intentional and conducted with malice, or done with reckless or callous indifference to Plaintiff's federally protected rights, to punish and silence her (and, potentially, others) for correcting Defendant's representatives' misstatements of law and violations of procedure, as well as for

**SECOND AMENDED COMPLAINT - 46**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

insisting on the disclosure of potential conflicts by those charged with serving the citizens of Bainbridge Island.

4.8    Defendant's acts have caused Plaintiff emotional distress and reputational injuries, for which Plaintiff seeks damages.

4.9    *Fourteenth Amendment Rights*    In addition to violating Plaintiff's rights under the First Amendment to the U.S. Constitution, and/or retaliating against Plaintiff as described above, or in the alternative, Defendant's acts and the acts of its agents further violated Plaintiff's right to Equal Protection under the laws, violating the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

4.10    Plaintiff has a liberty interest in her standing and associations in the community and in her freedom to engage in political discourse.

4.11    On August 14, 2018, Plaintiff was singled out for different treatment from another committee member, who was demoted from Chair, and not removed.

4.12    On August 14, 2018, April 8, 2021, June 30, 2021, and at other times, COBI and its agents made stigmatizing statements to the public about Plaintiff and her actions.   All of COBI's agents were acting under color of state law.

4.13    The statements were untrue, COBI and its agents knew the statements were untrue, or acted with reckless disregard as to their truth or falsity,   with indifference to Plaintiff's constitutional rights, and were published with actual malice.

4.14    If, as is denied, COBI removed Plaintiff because she was "disruptive" (among other, similar, allegations as set out in the Facts), Plaintiff, as Vice-Chair of the Island Center Committee, and the ETAC Chair were similarly situated on August 14, 2018.

**SECOND AMENDED COMPLAINT - 47**
(Cause No. 3:20-cv-06025-DGE)

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

4.15    Plaintiff was a class of one, and was intentionally treated differently from others similarly situated, specifically the member of the ETAC committee who had been previously warned about his behavior and who was not removed from the ETAC committee on August 14, 2018.

4.16    COBI's and its agents' acts violated clearly established rights of which a reasonable state official would have known.

4.17    After August 14, 2018, other committee and board members engaged in actions that should have resulted in removal, and did not.

4.18    Following August 14, 2018, COBI's and its agents' actions were undertaken in order to punish Plaintiff and to undermine/marginalize Plaintiff and to prevent her participation in government.

4.19    There was no rational basis for the difference in treatment.

4.20    COBI's and its agents' actions were committed in bad faith, vindicative, malicious, and undertaken for an improper purpose, based upon an illegitimate animus toward Plaintiff.

4.21    As shown by the differential treatment of Plaintiff, COBI's action in removing Plaintiff would not have been taken against Plaintiff, absent the illegitimate animus.

4.22    COBI and its agents intended to retaliate against Plaintiff for her views regarding growth, for her publicly expressed concerns regarding the Island Center Committee's continued lack of compliance with the COBI Ethics Program, and to retaliate against Plaintiff for her stated concerns regarding the Subarea Planning Process, generally, as well as to benefit certain Island Center Committee members

**SECOND AMENDED COMPLAINT - 48**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

who sought to upzone their own properties through their own inadequately disclosed roles in the Committee's work.

4.23    COBI's and its agents' actions were done with the intent to injure Plaintiff.

4.24    *Conspiracy*    Further, or in the alternative, COBI and its agents conspired and agreed with others to deprive Plaintiff of a constitutional right, free speech, and/or equal protection under law.

4.25    COBI and its agents Sarah Blossom, Gary Christensen, Jennifer Sutton, Maradel Gale, Jon Quitslund, Doug Schulze, Kol Medina, Charles Wenzlau and Scott Anderson, among others, acted in furtherance of this conspiracy.

4.26    These persons conspired to prevent Plaintiff's speech regarding the applicable law and Comprehensive Plan sections and to prevent Plaintiff's speech regarding Scott Anderson's conflict of interest and the requirement that he fully disclose same, including his desire to acquire an upzone of his family's property.

4.27    Sarah Blossom, Gary Christensen, Jennifer Sutton, City Attorney Joseph Levan, Maradel Gale, Jon Quitslund, Scott Anderson, Kol Medina, and then-City Manager Doug Schulze conspired to remove Plaintiff without notice, in public, using as a basis "facts" known to them to be false.

4.28    As such, Sarah Blossom, Gary Christensen, Jennifer Sutton, City Attorney Joseph Levan, Kol Medina, Maradel Gale, Jon Quitslund, Scott Anderson and then-City Manager Doug Schulze conspired to deprive Plaintiff of equal protection under the laws, as there was no requirement that such removal happen in public.

**SECOND AMENDED COMPLAINT - 49**
(Cause No. 3:20-cv-06025-DGE)

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

4.29    Further, Sarah Blossom, Gary Christensen, Jennifer Sutton, City Attorney Joseph Levan, Kol Medina, and then-City Manager Doug Schulze conspired to deprive Plaintiff of equal protection under the laws, by moving or supporting Blossom's motion to remove Plaintiff, rather than reprimanding and/or demoting Plaintiff from her Vice Chair position, as was done to the Chair of another committee at issue on the August 14, 2018 Council agenda.

4.30    Maradel Gale and Jon Quitslund acted in furtherance of the conspiracy when Maradel Gale prompted Jon Quitslund to make the untrue statements about Plaintiff on August 14, 2018, when he publicly addressed Council during the scheduled meeting to denounce Plaintiff.

4.31    City Attorney Joseph Levan acted in furtherance of the conspiracy to deprive Plaintiff of her constitutionally protected rights when he defamed her in 2019, alleging in a writing published to a third person that Plaintiff had been untruthful about a conversation Levan had with Plaintiff.

4.32    In 2019 and 2020, Sarah Blossom, then-City Manager Doug Schulze and City Attorney Joseph Levan acted in furtherance of the conspiracy when they argued to current Council members against Plaintiff's appointment to various committees.

4.33    Then-Planning Commissioner Jon Quitslund acted in furtherance of the conspiracy when he characterized Plaintiff as a manipulative, misleading mischief maker in his April 8, 2021 statement during a Planning Commission meeting.

4.34    On June 30, 2021, then-Planning Commissioner Jon Quitslund acted in furtherance of the conspiracy when he dismissed Plaintiff's concerns about conflicts of interest as "harping on perceived conflicts of interest" and called (on July 1, 2021)

**SECOND AMENDED COMPLAINT - 50**
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

Plaintiff's concern about the Commission's potential plan to form a non-public subcommittee to revise the Island Center Plan "B.S."

4.35    Former Planning Commissioner Jon Quitslund acted in furtherance of the conspiracy when he made statements in a letter sent to the Planning Commission on or about October 31, 2021, in which he alleged Plaintiff is "disrespectful of legitimate property rights," has a "personal grudge" against one member of the committee, and that Plaintiff (somehow, despite her removal over three years before) "prevent[ed] that person and others from engaging in a constructive and conclusive discussion of a central issue in the planning process."   Quitslund alleged Plaintiff was "obstructive" and "wasted innumerable hours of meeting time and many months on the calendar."   Quitslund alleged Plaintiff's statement that the Island Center process was begun when Scott Anderson asked for it to begin was "utterly false."

4.36    Jon Quitslund and Councilmember Leslie Schneider acted in furtherance of the conspiracy on or about November 1, 2021, when they discussed making sure Scott Anderson received a "fair shake" regarding his family's property. Jon Quitslund alleges that Plaintiff was "malicious" in an attempt to undermine Plaintiff and convince the reader that Plaintiff's concerns were illegitimate.

4.37    In that November 1, 2021 email, Quitslund states that his preference is providing subsidized housing to households that make more than 80% of the median income, and he thanked Councilmember Schneider for her voting consistent with that view.

**SECOND AMENDED COMPLAINT - 51**
(Cause No. 3:20-cv-06025-DGE)

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

4.38   COBI's and its agents' acts injured Plaintiff.  Plaintiff was deprived of the right of free speech.  Plaintiff was deprived of the right to equal protection under the laws.

## V.   CAUSE OF ACTION - DEFAMATION

5.1   Plaintiff incorporates the allegations found in paragraphs Plaintiff incorporates the factual allegations found in paragraphs 3.1-3.369, and incorporates the same as though fully stated herein.

5.2   COBI, by and through its agents Kol Medina, Gary Christensen, Maradel Gale, Jon Quitslund and Sarah Blossom, defamed Plaintiff by publishing false and injurious information and implication regarding Plaintiff to third parties under a Washington State claim of common law defamation.  Plaintiff served on the Committee as a citizen volunteer, and was not a public figure.  Defendant enjoys no immunity for these acts.

5.3   As the statements tended to harm Plaintiff in her profession and alleged she is irrational, behaved "totally inappropriately" and was "ugly" with staff, adversely implicating her mental state and fitness to practice law, these acts constituted defamation *per se*.  These statements were intended to, and did, further Jon Quitslund's now-known plan to promote upzoning of the Scott Anderson property.

5.4   Defendant intended to bar or limit Plaintiff's participation in government by making/allowing these false statements, and the statements were unnecessary.  As there was no procedure in place for removal of a committee member on August 14, 2018, Plaintiff's removal need not have been done in a public forum.  Then-Mayor Medina later admitted when a procedure was added after

SECOND AMENDED COMPLAINT - 52
(Cause No. 3:20-cv-06025-DGE)

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

Plaintiff's removal that the purpose of the change was to prevent disparaging committee members in a public forum.   The statements, which, by their nature injured Plaintiff personally, as well as in her professional capacity as an attorney, were made out of malice.

5.5    The false statements subjected Plaintiff to contempt or ridicule.

5.6    The false statements damaged Plaintiff in an amount to be proven at trial.

5.7    Plaintiff has complied with Revised Code of Washington 7.96.040, and Defendant refuses to correct the defamation.

## VI.    CAUSE OF ACTION - NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

6.1    Plaintiff incorporates the factual allegations found in paragraphs 3.1-3.369, and incorporates the same as though fully stated herein

6.2    Defendant, by and through its agents Gary Christensen, Kol Medina, Maradel Gale, Jon Quitslund, Joe Levan and Sarah Blossom, negligently or intentionally inflicted emotional distress on Plaintiff.

6.3    The legislative history regarding the changes to BIMC § 2.16.210.E.1 establishes that COBI and its agents knew that their actions could harm people.

6.4    Defendant's actions damaged Plaintiff in an amount to be proven at trial.

## VII.    CAUSE OF ACTION – VIOLATION OF PUBLIC RECORDS ACT RCW 42.56

7.1    Plaintiff incorporates the factual allegations found in paragraphs 3.1-3.369, and incorporates the same as though fully stated herein.

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

7.2     The video recorded "Zoom" meetings are public records as defined by RCW 42.56.010(3) and (4), as they were "video recordings," and these records are therefore subject to production.  No exemption to production applies.

7.3     RCW 42.56.080 provides that "agencies . . . shall, upon request for identifiable public records, make them promptly available to any person."

7.4     RCW 42.56.520 provides:  "Within five business days of receiving a public record request, an agency . . . must respond by either 1) providing the record; 2) providing an [internet link]; 3) acknowledging that the agency . . . has received the requests and providing a reasonable estimate of the time the agency will require to respond to the request; or 4) denying the public record request."

7.5     COBI violated the PRA by withholding records responsive to the request that are not exempt from production.

7.6     COBI violated the PRA by not safeguarding, storing, cataloging, and retaining public records and for allowing the loss and destruction of public records.

7.7     Plaintiff has been harmed by the deprivation of relevant, timely and important government records regarding a land use committee's activity.

7.8     Plaintiff is entitled to reasonable attorney's fees, all costs, and a statutory penalty of $100 per record per day from the date of destruction.

## VIII.   CAUSE OF ACTION – VIOLATION OF RCW 4.24.510

8.1     Plaintiff incorporates the factual allegations found in paragraphs 3.1-3.369, and incorporates the same as though fully stated herein.

8.2     Plaintiff was immune from liability for her communications regarding inaccurate statements of law, the failure of some Committee members to disclose conflicts, and objections regarding process.

NEAL FIRM, PLLC
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

8.3     COBI did not sue Plaintiff for her protected speech, but COBI used its substantial power differently, penalizing Plaintiff for her protected speech by publicly shaming and removing her from the committee.  Such strategic actions, if filed in court, are termed "SLAPP suits."  Washington has recognized that such suits and actions "are designed to intimidate the exercise of First Amendment rights and rights under Article I, section 5 of the Washington state Constitution" and that the "United States Constitution protects advocacy to government, regardless of content or motive, so long as it is designed to have some effect on government decision making."  RCW 4.24.510 Notes re Intent.

8.4     Plaintiff is entitled to recovery under RCW 4.24.510, including but not limited to reasonable attorneys' fees and statutory damages of $10,000.

<u>**TRIAL BY JURY DEMANDED**</u>

Plaintiff demands trial by jury.

**NEAL FIRM, PLLC**
PO BOX 11215
BAINBRIDGE ISLAND, WASHINGTON 98110
TELEPHONE (206) 317-3000

1

## PRAYER

2        WHEREFORE, Plaintiff prays that she be awarded the following relief against

3  Defendant:

4              1.        Actual Damages;

5              2.        Statutory Damages;

6              3.        Punitive Damages as may be allowed under the law;

7              4.        Attorney Fees and Costs incurred in this action; and

8              5.        Such other and further relief as the Court may deem just and

9  proper.

10        DATED:  January 11, 2022.

11                                                  NEAL FIRM, PLLC

12                                                  /s/  Christopher L. Neal
13                                                  Christopher L. Neal
                                                    WSBA No.:  25685
14                                                  Neal Firm, PLLC
                                                    PO Box 11215
15                                                  Bainbridge Island, WA 98110
                                                    (206) 317-3000
16                                                  cneal@coveragenorthwest.com
                                                    Attorney for Plaintiff Lisa Neal

17

18

19

20

21

22

23

24

25  **SECOND AMENDED COMPLAINT - 56**
    (Cause No. 3:20-cv-06025-DGE)
26

1

2

3

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2022, I electronically filed the foregoing with the Clerk of the Court using the EM/ECF system, which will send notification of such filing to the following:

4

5

6

7

8

9

Jayne L. Freeman, WSBA #24318

Audrey M. Airut Murphy, WSBA #56833

KEATING, BUCKLIN & McCORMACK, INC., P.S.

801 Second Avenue, Suite 1210

Seattle, WA 98104

Phone:  (206) 623-8861

Fax:      (206) 223-9423

Email:  jfreeman@kbmlawyers.com

10

11

12

13

14

Kari I. Lester, WSBA #28396

OGDEN MURPHY WALLACE PLLC

901 Fifth Avenue, Suite 3500

Seattle, WA 98164

Email: klester@omwlaw.com

15

DATED:  January 11, 2022

16

17

NEAL FIRM, PLLC

18

19

20

21

/s/  Christopher L. Neal
Christopher L. Neal, WSBA # 25685
Attorney for Plaintiff Lisa Neal
Neal Firm, PLLC
PO Box 11215
Bainbridge Island, WA 98110
(206) 317-3000
cneal@coveragenorthwest.com

22

23

24

25

26

**SECOND AMENDED COMPLAINT - 57**
(Cause No. 3:20-cv-06025-DGE)