UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LISA C NEAL,<br><br>                    Plaintiff,<br>       v.<br><br>CITY OF BAINBRIDGE ISLAND,<br><br>                    Defendant. | CASE NO. 3:20-cv-06025-DGE<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 167, 170) |

**I     INTRODUCTION**

Before the Court are the parties' cross-motions for summary judgment.  Defendant City of Bainbridge Island moves for summary judgment on all of Plaintiff's claims.  (Dkt. No. 167 at 1.)  Plaintiff Lisa Neal moves for summary judgment on her First Amendment and Equal Protection claims.  (Dkt. No. 170 at 1.)  For the reasons below, the Court GRANTS Defendant's motion (Dkt. No. 167) and DENIES Plaintiff's motion (Dkt. No. 170).

# II     BACKGROUND

Plaintiff brings First Amendment, Equal Protection, and conspiracy claims under 42 U.S.C. § 1983; and claims for defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress.[1] (Dkt. No. 142 at 45–53.) Plaintiff's claims arise from the City Council's vote to remove Plaintiff from the City's Island Center Subarea Planning Process Committee ("Committee"), as well as statements made by various individuals prior to the removal vote. (Dkt. Nos. 142 at 3–4; 102-2.)

As provided in the Bainbridge Island Municipal Code ("BIMC"), the Committee is a volunteer citizen advisory committee formed "[u]pon the city council's approval to commence the subarea planning process for a designated center or neighborhood." (Dkt. No. 103-1 at 11) (BIMC 2.16.210(E)(1)). The BIMC tasks the Committee with, *inter alia*, "[e]stablish[ing] a planning process . . . which shall be submitted to the city council for approval," "develop[ing] a subarea plan consisting of a report and a proposed comprehensive plan amendment," and "establish[ing] a public participation process." (*Id.*) (BIMC 2.16.210(E)(3)(a)–(c)). The City Council makes the final decision on the subarea plan following the Committee's submission of a final report. (*Id.*)

Plaintiff began serving on the Committee in late 2017. (Dkt. Nos. 142 at 3; 167 at 1.) The City Council removed Plaintiff by a 5-2 vote at a City Council meeting on August 14, 2018, immediately following public statements by Councilmembers, the Mayor, and a member of the City's Planning Commission. (Dkt. No. 102-2 at 5.) At the same meeting, the City Council

---

[1] The Court has already granted summary judgment to Defendant on Plaintiff's claim under the Public Records Act. (Dkt. No. 176.)

voted unanimously to demote the Chair of a different committee, the Environmental Technical Advisory Committee ("ETAC"). (Dkt. No. 103-3 at 8.)

Plaintiff's removal occurred roughly two months after she sent an email (Dkt. No. 184-9 at 2–6) on June 13, 2018, to, as described by Plaintiff, "people/groups from which she had received emails about similar matters of public concern" (Dkt. No. 182 at 8). Plaintiff's email represented that it sought to provide recipients with "more background on . . . the Committee's work so far." (Dkt. No. 184-9 at 2.) Among other things, Plaintiff's email questioned whether fellow members of the Committee had conflicts of interests and provided "additional information on" Plaintiff's understanding of "a few of the members' interests." (*Id.* at 4–5.) Plaintiff forwarded the email to the City Council five days later, on June 18, along with the introduction that "[t]he following was sent to members of the community, and has been lodged in the public records portal for the Island Center planning." (*Id.* at 7–12.)

### III    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine and therefore will preclude summary judgment when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Importantly, "[a] motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation and citation omitted).

# IV     DISCUSSION

A.     **Section 1983 Claims**

Both parties move for summary judgment on Plaintiff's First Amendment and Equal Protection claims. (Dkt. Nos. 167 at 4; 170 at 1.) Defendant also moves for summary judgment on Plaintiff's conspiracy claim. (Dkt. No. 167 at 12.) Each of these claims is based on the City Council's vote to remove Plaintiff. (Dkt. No. 142 at 45–49.)

Defendant argues Plaintiff's § 1983 claims fail because (1) Defendant is entitled to legislative immunity and (2) Plaintiff failed to show that the City may be held liable under *Monell* for a decision of the City Council. (Dkt. No. 167 at 3–4.) As explained below, the Court disagrees. Defendant is not entitled to legislative immunity and the City Council may be deemed a final policymaker for purposes of imposing liability on the City under *Monell*. The Court therefore proceeds to assess each § 1983 claim independently, ultimately concluding Plaintiff cannot prevail as a matter of law on any of the claims.

1.     **Legislative Immunity**

Under federal law, "[l]ocal government *officials* are entitled to legislative immunity for their legislative actions." *Community House, Inc. v. City of Boise*, 623 F.3d 945, 959 (9th Cir. 2010) (emphasis added). But "legislative immunity does not extend to municipalities." *Muhammad v. City of Moreno Valley Code Enforcement*, 2022 WL 837421, at *7 (C.D. Cal. March 21, 2022); *see also A.H.D.C. v. City of Fresno*, 2002 WL 34575401, at *9 (E.D. Cal. Oct. 17, 2002) (finding a municipality was not entitled to legislative immunity because "[l]egislative immunity from suit under § 1983 is afforded to individual council members only"); *Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 74 (2d Cir. 1992) (agreeing with the conclusion of "many courts . . . that municipalities are not immune from liability under § 1983 for actions taken in a

legislative capacity"); *Reed v. Village of Shorewood*, 704 F.2d 943, 953 (7th Cir. 1983) (explaining a municipality may be held liable for acts "for which the policy-making officials themselves might enjoy absolute immunity because the acts were legislative . . . in character"). As Defendant is a municipality, it is not entitled to legislative immunity with respect to Plaintiff's § 1983 claims.

### 2. *Monell* Liability

Plaintiff's § 1983 claims cannot succeed unless the City, as the sole defendant in this action, may be held liable for the City Council's vote to remove Plaintiff. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). A municipality may be liable under *Monell* if the decisionmaker who caused the constitutional violation "functioned as a final policymaker" for the municipality.[2] *Barone v. City of Springfield*, 902 F.3d 1091, 1107 (9th Cir. 2018). A plaintiff must show the decisionmaker "had final policymaking authority concerning the [challenged] action" and "was the policymaker for the local governing body for the purposes of the particular act." *Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013) (internal citation and quotation omitted).

"[W]hether a particular official has 'final policymaking authority' is a question of *state law*." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (emphasis in original); *see also Goldstein*, 715 F.3d at 753 (the determination of whether an official acted as a policymaker "is made on a function-by-function approach by analyzing under state law the organizational structure and control over" the decisionmaker). Critically, the Court's "inquiry is not undertaken

---

[2] A municipality may also be liable if a municipal employee or official (1) "committed the constitutional violation pursuant to an official policy" or (2) "acted pursuant to a longstanding practice or custom." *Barone*, 902 F.3d at 1107. The Court does not address these theories of liability, finding them inapplicable and not raised by Plaintiff.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 167, 170) - 5

in a categorical, 'all or nothing' manner, but rather" requires "ask[ing] whether [the officials in question] are final policymakers for the local government *in a particular area*, or *on a particular issue*.'" *Id.* at 753–754 (internal citation and quotation omitted) (emphasis added).

The parties' arguments on liability under *Monell* are exceedingly thin. (*See* Dkt. Nos. 167 at 4; 170 at 15; 182 at 18; 185 at 11.) The parties offer no analysis of the City Council's policymaking authority under state law with respect to the removal of Committee members. (*See id.*) At best, Plaintiff only impliedly suggests liability may be based on the City Council's authority as a final policymaker. (Dkt. No. 170 at 15.) Nonetheless, "the identification of policymaking officials . . . is not a question of fact in the usual sense," and "there can be no justification for giving a jury the discretion to determine" where municipal policymaking authority lies. *Praprotnik*, 485 U.S. at 124, 126.

The record and state law make clear the City Council has final policymaking authority with respect to removal decisions, and, therefore, that the City may be liable for the City Council's vote to remove Plaintiff. In particular, Washington law vests authority in the City Council, providing that the Council's powers "includ[e] but [are] not restricted to the authority to adopt ordinances and resolutions." Wash. Rev. Code § 35.18.160. In turn, the BIMC provides that Committee members are to be appointed by the Mayor and confirmed by Council. (Dkt. No. 103-1 at 11) (BIMC 2.16.210(E)(1)). And the City's Manual of City Governance, adopted by resolution of City Council, provides that members of committees who are appointed by the Mayor or City Council and confirmed by Council "may be removed without cause by a majority vote of the Council." (Dkt. No. 169-1 at 34.) These provisions indicate the City Council has final policymaking authority with respect to decisions concerning the removal of a Committee

member.[3]  *See Gillette v. Delmore*, 979 F.2d 1342, 1350 (9th Cir. 1992) (affirming reliance on city charter and municipal ordinances in identifying final policymaker); *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (looking to state statute, local ordinances, and local regulations in analyzing final policymaking authority).

### 3. First Amendment Retaliation Claim

Plaintiff's First Amendment retaliation claim is based on her contention that the City Council voted for Plaintiff's removal in retaliation for her June 13 email.  (Dkt. No. 170 at 4.)  Among the points of contention between the parties are whether (1) recent Ninth Circuit caselaw forecloses Plaintiff's First Amendment retaliation claim (Dkt. Nos. 185 at 13–14; 186 at 7–10) and (2) Plaintiff does not raise a dispute of fact as to the motivation of all five councilmembers who voted to remove her (Dkt. Nos. 167 at 9–10; 182 at 18; 185 at 5, 18–19).  The Court finds these issues independently determinative of Plaintiff's First Amendment claim and concludes Plaintiff's claim cannot succeed on both grounds.

---

[3] Though not in relation to her argument concerning liability under *Monell*, Plaintiff maintains the Municipal Code and Manual of City Governance provisions cited above do *not* contain a procedure for removing Committee members.  (Dkt. No. 182 at 4–5.)  Plaintiff thereby suggests the City Council was without authority to remove her.  (*Id.*)  Specifically, Plaintiff highlights that the Manual contains a qualifier, providing that removal may occur "'by a majority vote . . . *unless otherwise provided for in the Code . . . that authorized the creation of the committee*.'"  (*Id.*) (emphasis in original) (quoting Dkt. No. 169-1 at 34.)  Because the Code that authorized creation of the Committee includes a provision stating that members' "term[s] . . . shall be until the completion of the subarea planning process" (Dkt. No. 103-1 at 11), Plaintiff argues this provision prohibits the City Council from exercising removal authority. (Dkt. No. 182 at 5.)  The Court does not find plausible Plaintiff's suggestion that the Code's specification of a "term" for Committee members contains an unspoken prohibition on a member's removal pursuant to the Manual.  In fact, the record reflects Plaintiff herself acknowledging the City Council "has the absolute right to remove [her] for any or no reason." (Dkt. No. 184-43 at 2.)  At any rate, Plaintiff's argument would weaken her own position that Defendant is liable under *Monell*:  If the City Council lacked authority to remove a member of the Committee, the Court would have greater difficulty concluding the City Council acted as a final policymaker when it voted to remove Plaintiff.  *See Barone*, 902 F.3d at 1108 ("The final policymaker is the individual who had authority in the particular area where the constitutional violation occurred.").

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 167, 170) - 7

a.  Applicability of *Lathus*

Defendant urges the Court to find that Plaintiff does not have an actionable First Amendment claim given the Ninth Circuit's decision in *Lathus v. City of Huntington Beach*, 56 F.4th 1238 (9th Cir. 2023). (Dkt. No. 185 at 13–14.) Plaintiff argues *Lathus* is distinguishable and therefore not controlling. (Dkt. No. 186 at 8–10.)

*Lathus* held the First Amendment did not "protect[] a volunteer member of a municipal advisory board from dismissal by the city councilperson who appointed her and [wa]s authorized under a city ordinance to remove her." *Lathus*, 56 F.4th at 1239. The Ninth Circuit reasoned that the appointing councilperson was "allowed to 'distance' herself from an appointee who might be a political liability," *id.* at 1244, because the appointee in question effectively served as the councilperson's "'public face' on the board," *id.* at 1242. Three "structural features" of the advisory board—each which "flow[ed] directly from the municipal code"—supported this conclusion: First, each councilperson was authorized to appoint a member to the board. *Id.* at 1243–44. Second, each councilperson was authorized to remove their appointee at their discretion. *Id*. And third, the purpose of the board was "to advise about public policy" and "interface with the City Council's constituents." *Id.* at 1244.

The Ninth Circuit's decision in *Lathus* represents an application of "the *Branti* exception"—a principle which, generally speaking, precludes a First Amendment retaliation claim based on a plaintiff's termination from public employment when the plaintiff served in a policymaking or political capacity. *See Lathus*, 56 F.4th at 1243 n.2 (discussing *Branti v. Finkel*, 445 U.S. 507 (1980)); *Hobler v. Brueher*, 325 F.3d 1145, 1150 (9th Cir. 2003) (explaining "some positions must be subject to patronage dismissal for the sake of effective governance and implementation of policy" and that "where the *Branti* exception applies[,] the employee can be

fired 'for purely political reasons'") (internal citation omitted).  The applicability of "the *Branti* exception [] is properly determined by summary judgment . . . rather than by trial." *Id.*

The circumstances of the instant case are similar to those in *Lathus* in material respects, requiring dismissal of Plaintiff's First Amendment claim.  That Plaintiff was accountable to the City Council as a whole, rather than a single councilperson, is not dispositive.  Rather, what matters is that in both *Lathus* and the instant case, the authority alleged to have committed retaliation held power with respect to appointments and was expressly permitted to remove a member without cause.  *See Lathus*, 56 F.4th at 1243–1244.  And as in *Lathus*, members were tasked with advising the City Council on matters of policy and interfacing with the public.  *See id.* at 1244.  For instance, the BIMC provides the Committee was to "[e]stablish a planning process" that would be "submitted to the city council for approval," "prepare a final report" to be reviewed by the City Council, "establish a public participation process," and "conduct an initial public meeting."  (Dkt. No. 103-1 at 11–12.)  Under these conditions, Committee members served as "public surrogates" or "political extension[s]" of the City Council.  *Lathus*, 56 F.4th at 1240, 1243.  As Plaintiff in this capacity "could plainly undermine [the City Council's] credibility and goals" in initiating the subarea planning process, the City Council was entitled to remove Plaintiff.  *Id.* at 1242 (internal citation and quotation omitted).

    b.  <u>Retaliatory Motive</u>

Defendant also argues Plaintiff's First Amendment claim cannot succeed because the record does not reflect that "each of [the] five" councilmembers who voted for removal did so to retaliate for Plaintiff's speech.  (Dkt. No. 185 at 5; *see also* Dkt. Nos. 167 at 10; 185 at 18–19.)  In Defendant's view, Plaintiff improperly seeks to impose liability on the City based on evidence relating to the motive of a *single* member of the City Council, even though liability may only be

1    established if *each* member who voted for removal did so to retaliate against Plaintiff.  (Dkt.
2    Nos. 167 at 9–10; 185 at 10.)

3    　　　　Plaintiff responds that she need not prove that "all five councilmembers who voted to
4    remove her shared the same improper motive" because of the general principle that a
5    "municipality may be liable under § 1983 for a single decision by its properly constituted
6    legislative body." (Dkt. No. 182 at 18) (internal quotation and citation omitted).  Plaintiff further
7    asserts that she submitted both indirect and direct evidence that Plaintiff's removal was in
8    retaliation for her June 13 email.  (*Id.*)

9    　　　　Plaintiff's § 1983 claim cannot succeed unless Plaintiff establishes that the five City
10   Council members who voted to remove her were substantially motivated by a desire to retaliate
11   for Plaintiff's protected speech.  *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1071 (9th Cir.
12   2004); *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1239 (9th Cir. 1994).  The Court finds
13   *Kawaoka* particularly instructive on this point:  There, the Ninth Circuit found a municipality
14   could not be liable for an Equal Protection claim under § 1983 where the city council served as
15   the final policymaker, but "there [wa]s no evidence that" more than one "council member acted
16   with discriminatory intent or that the council as a whole took the action with discriminatory
17   intent." *Id.*

18   　　　　Plaintiff argues *Kawaoka* is inapplicable because it's holding was in the context of an
19   Equal Protection claim rather than a First Amendment claim.  (Dkt. No. 182 at 18.)  But the
20   Court does not find *Kawaoka*'s reasoning so confined as to render it inapplicable to a non-Equal
21   Protection claim brought under § 1983, so long as that claim requires a plaintiff to prove an
22   illegal motivation of a final policymaker.  To that end, *Kawaoka*'s rationale for requiring a
23   plaintiff to show an illegal motivation of the city council *as a whole* (and not just a single
24

councilmember) was tied to the rule, which applies to *any* § 1983 claim, that a municipality cannot be liable unless the constitutional violation "stem[med] from [an] 'official municipal policy.'" *Kawaoka*, 17 F.3d at 1239. Where the "official municipal policy" is a decision of a final policymaker, and where the final policymaker is not an individual but is a legislative body, a plaintiff cannot succeed by showing that only a single member of that body held an illegal motivation.[4] *See id.*

The evidence proffered by Plaintiff does not support a finding that the City Council *as a whole* was substantially motivated to remove Plaintiff in retaliation for her speech. The "direct" evidence to which Plaintiff cites (Dkt. No. 182 at 18) at most implicates the motivation of a single councilmember, Sarah Blossom. But a considerable amount of the evidence concerns statements and attitudes attributed to Plaintiff's fellow Committee members and other individuals affiliated with the City—*not* councilmembers. (*See, e.g.*, Dkt. No. 184 at 24–26; 184-20.) The Court cannot on this record find Plaintiff's "direct" evidence raises a dispute of fact as to the motive of the five councilmembers who voted for removal.

The "indirect" evidence on which Plaintiff relies fares no better. In particular, Plaintiff points out that her June 13 email preceded (1) the addition of an item titled "removal of a committee member" on the City Council's meeting agenda, and (2) the ultimate removal vote on August 14. (Dkt. Nos. 170 at 4–5; 182 at 9, 18.) While the Court acknowledges timing may be probative of retaliatory motive, the timing in the instant case is insufficient to raise a dispute of fact as to the reason each councilmember voted to remove Plaintiff. Indeed, the agenda item

---

[4] *Kawaoka*'s reasoning was founded on principles of municipal liability under *Monell*. However, as *Kawaoka*'s analysis is intertwined with an assessment of a substantive element of Plaintiff's First Amendment claim (*i.e.*, retaliatory motive), the Court analyzes its applicability in conjunction with its discussion of Plaintiff's First Amendment claim.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 167, 170) - 11

Case 3:20-cv-06025-DGE   Document 208   Filed 04/22/24   Page 12 of 19

concerning removal was first added to the June 26 meeting agenda by the City Manager, Morgan Smith, and not a member of the City Council. (Dkt. No. 184 at 23; 184-1 at 4.) Councilmember Blossom thereafter moved to *remove* the item from the agenda on the same day. (Dkt. Nos. 184 at 23; 184-29 at 2.) And the item reappeared on the agenda on July 30 (Dkt. Nos. 184 at 24; 184-1 at 7), more than two weeks following an email in which Blossom was asked by the Mayor what she "want[s] to do in regards to Mrs. Neal" (Dkt. No. 184-31 at 2). Even assuming the item's reappearance on the agenda reflected Blossom's input as a councilmember, it says nothing about the motive of the other councilmembers. Moreover, the item's deletion and subsequent reinsertion undermines Plaintiff's implication that removal flowed directly from her email. Again, Plaintiff's evidence is insufficient to allow a jury to conclude the City Council was substantially motivated to retaliate against Plaintiff.[5]

In sum, Plaintiff's First Amendment claim cannot succeed for at least two independent reasons: First, because the City's liability is foreclosed by *Lathus*. And second, because Plaintiff fails to raise a dispute of fact as to the motivation of the City Council as a whole. The Court GRANTS Defendant's motion (Dkt. No. 167) and DENIES Plaintiff's motion (Dkt. No. 170) with respect to Plaintiff's First Amendment claim.

### 4. Equal Protection Claim

Plaintiff bases her Equal Protection claim on her contention that the City Council "treated [Plaintiff] differently" by *removing* her from the Island Center Subarea Planning Process

---

[5] Plaintiff's partial motion for summary judgment asks the Court to construe as an admission Defendant's objection to Plaintiff's RFA 44, which requested Defendant to admit or deny that Plaintiff "was removed from the Island Center Committee in retaliation for her June 13, 2018 email." (Dkt. No. 170 at 7.) The Court declines to construe Defendant's objection as an admission. A matter is not deemed admitted if the responding party "serves . . . a written answer *or objection*." Fed. R. Civ. P. 36(a)(3) (emphasis added). Plaintiff does not dispute that Defendant served an objection.
ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 167, 170) - 12

1  Committee, while, in comparison, *demoting* a Chair of ETAC.  (Dkt. No. 170 at 8–9.)  Plaintiff
2  asserts "the actions against both Plaintiff and the ETAC member were prompted by their speech"
3  and that Defendant cannot "show a rational basis for the difference in treatment."  (*Id.* at 15.)
4       As Plaintiff does not base her Equal Protection claim on membership in a protected class,
5  the Court analyzes Plaintiff's claim as a "class of one" claim.  *See Village of Willowbrook v.*
6  *Olech*, 528 U.S. 562, 564 (2000) (recognizing "successful equal protection claims brought by a
7  'class of one,' where the plaintiff alleges that she has been intentionally treated differently from
8  others similarly situated and that there is no rational basis for the difference in treatment");
9  *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1122 (9th Cir. 2022) (stating "an equal
10 protection claim can in some circumstances be sustained even if the plaintiff has not alleged
11 class-based discrimination, but instead claims that she has been irrationally singled out as a so-
12 called 'class of one'") (internal citation and quotation omitted).
13      Defendant argues Plaintiff's "class of one" claim cannot succeed because, *inter alia*, (1)
14 "[a]llegations of different treatment based on First Amendment speech do not implicate the
15 Equal Protection Clause" (Dkt. No. 167 at 11), and (2) "a 'class of one' claim is not recognized"
16 when the challenged decision was by its nature discretionary and individualized (*id.*; *see also*
17 Dkt. No. 188 at 5).  Plaintiff disputes that her Equal Protection claim is merely a "repackaged
18 First Amendment retaliation claim." (Dkt. No. 182 at 19.)  Plaintiff does not directly address
19 Defendant's second argument.
20      The Court addresses each argument below, ultimately finding Plaintiff's Equal Protection
21 claim cannot succeed on either ground raised by Defendant.
22          a.     <u>Equal Protection Claims Based on First Amendment Retaliation</u>
23      "Federal courts have precluded assertion of First Amendment claims as Equal Protection
24 claims."  *Occhionero v. City of Fresno*, 2008 WL 2690431, at *8 (E.D. Cal. July 3, 2008).  Put

differently, Equal Protection claims will not succeed when the claim, "[a]t its core," is based on allegations of "different treatment in retaliation for speech." *Id.*; *see also Papas v. Leonard*, 2012 WL 1445853, at *15 (D. Ore. April 25, 2012) ("Plaintiffs' right to be free from retaliation for exercising their rights under the First Amendment must be vindicated under the First Amendment rather than under the Equal–Protection Clause.").

In an effort to argue her Equal Protection claim is not a "repackaged" First Amendment claim, Plaintiff reframes her theory of the reason for her removal. (Dkt. No. 182 at 19.) Whereas Plaintiff's opening motion argues the City Council's "actions against both Plaintiff and the ETAC member were prompted by [each members'] speech" (Dkt. No. 170 at 15), she subsequently maintains the City Council's actions were due to "interpersonal issues" (Dkt. No. 186 at 12; *see also* Dkt. No. 182 at 19) and "ill will" against Plaintiff (*id.* at 19). But Plaintiff cannot have it both ways:  Plaintiff cannot argue for purposes of her First Amendment claim that the removal was driven by her speech, while arguing for purposes of her Equal Protection claim that the removal was due to interpersonal conflict.

Notwithstanding the shift in narrative, Plaintiff's partial motion for summary judgment and complaint make it abundantly clear she believes she was removed for speech and set out to base her § 1983 claims on that premise. Indeed, her opening motion represents that her "*Complaint*" (and not just her First Amendment Claim), "distilled to its essence, is that the City . . . wrongfully removed her from [the Committee] . . . in violation of her Constitutional right to free speech." (Dkt. No. 170 at 1–2) (emphasis added). The Court rejects Plaintiff's attempt to distance her "class of one" claim from the purview of the First Amendment. As such, Plaintiff's "class of one" claim cannot succeed.

b.  <u>Discretionary and Individualized Decisionmaking</u>

Defendant asks the Court to analogize the instant case to *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 598 (2008), in which the Supreme Court held that "the class-of-one theory of equal protection does not apply" to claims asserting different treatment "in the public employment context." (*See* Dkt. Nos. 167 at 11; 185 at 20.)  As the Supreme Court reasoned, employment decisions "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments," such that "treating like individuals differently is an accepted consequence of the discretion granted." *Id.* at 603.  To that end, "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials [we]re entrusted to exercise." *Id.*

*Engquist* supports the proposition that "the class-of-one doctrine should not extend to forms of state action which involve discretionary decision-making." *See Mazzeo v. Gibbons*, 2010 WL 4384207, at *7 (D. Nev. Oct. 28, 2010).  Rather, the "['class of one'] doctrine was intended for use in cases where the government departs from an objective standard." *Id.* at *6.  Accordingly, while Plaintiff was a volunteer and not a public employee, *Engquist* applies with the same force. *See id.* ("numerous district and circuit courts have extended [*Engquist*'s] rationale to other contexts in which plaintiffs challenge discretionary state action under a class-of-one theory").  The City Council's removal decision did not involve the application of an objective standard.  Instead, the decision was by its nature individualized and discretionary, with the City's Manual providing for removal "without cause." (Dkt. No. 169-1 at 34.)  Plaintiff may not "challenge [] what in its nature is a subjective, individualized decision." *Engquist*, 553 U.S. at 604.

Plaintiff's Equal Protection claim cannot succeed because (1) it is founded on allegations of different treatment based on speech, and (2) it seeks to challenge an inherently discretionary

and individualized decision.  The Court GRANTS Defendant's motion (Dkt. No. 167) and DENIES Plaintiff's motion (Dkt. No. 170) with respect to Plaintiff's Equal Protection claim.[6]

### 5. Conspiracy Claim

Defendant argues Plaintiff's § 1983 conspiracy claim fails as a matter of law because (1) "[Plaintiff] cannot establish an underlying constitutional violation" and (2) "[t]he City is the only Defendant in this action and cannot conspire with itself."  (Dkt. No. 167 at 12.)

Plaintiff responds that § 1983 claims may "lie against agents of the same defendant." (Dkt. No. 182 at 21.)  Plaintiff further contends "[t]he evidence shows that" various Committee members and the "former Mayor . . . conspired with then-Councilmember Sarah Blossom, then-City Manager Morgan Smith, then-Planning Commissioner Jon Quitslund . . . and then-Mayor Kol Medina to remove Plaintiff because of her speech . . . and/or to defame her."  (*Id.*)

Because Plaintiff cannot, as a matter of law, establish an underlying First Amendment or Equal Protection violation, Plaintiff cannot prevail on her conspiracy claim.  *See Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) ("Conspiracy is not itself a constitutional tort under § 1983" because "there must always be an underlying constitutional violation").

But even assuming the existence of an underlying constitutional violation, Plaintiff's conspiracy claim would not succeed.  While Plaintiff contends courts have found § 1983 conspiracy claims may be brought "against agents of the same defendant," Plaintiff does not

---

[6] Plaintiff appears to contend that she brought an additional claim under the Fourteenth Amendment, which she describes as a "Stigma Plus" claim. (Dkt. No. 182 at 20.)  Plaintiff contends Defendant did not seek summary judgment on this claim, citing four paragraphs of her complaint to demonstrate the claim was properly alleged.  (*Id.*) (citing Dkt. No. 142 at ¶¶ 3.14–3.16, 4.12).  Upon review of Plaintiff's complaint, the Court cannot reasonably find Plaintiff to have stated a Fourteenth Amendment due process claim.  *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011) (a complaint must provide a defendant with fair notice of the claim). The Court therefore rejects Plaintiff's suggestion that her "stigma plus" due process claim should be permitted to proceed to trial.

bring her conspiracy claim "against agents of the same defendant." (Dkt. No. 182 at 21.) Rather, she brings her claim against a single defendant: the City. Accordingly, the Court finds inapplicable Plaintiff's contention that "agents of [a] defendant" may be sued for conspiracy. *See Avalos v. Baca*, 517 F. Supp. 2d 1156, 1170 (C.D. Cal. 2007) (rejecting § 1983 conspiracy claim because "a municipal entity cannot conspire with itself"); *Rabkin v. Dean*, 856 F. Supp. 543, 551–52 (N.D. Cal. 1994) (rejecting § 1983 conspiracy claim when "the conspiratorial conduct challenged [wa]s essentially a single act by a single governmental body acting exclusively through its own officers").

The Court GRANTS Defendant's motion for summary judgment (Dkt. No. 167) on Plaintiff's conspiracy claim.

**B.     Defamation Claim**

Defendant moves for summary judgment on Plaintiff's defamation claim (Dkt. No. 167 at 12), which is based on statements made during the August 14 City Council meeting (Dkt. No. 182 at 11, 22). In particular, Plaintiff's defamation claim challenges statements by Councilmember Sarah Blossom; Mayor Kol Medina; and a member of the City's Planning Commission, Jon Quitslund. (*Id.*; Dkt. No. 142 at 28–29, 33–34.)

Defendant argues it should not be held liable for statements of "speakers not authorized to legally bind the City." (Dkt. No. 167 at 16.) Plaintiff argues Defendant may be held liable under a theory of *respondeat superior*, citing *Robel v. Roundup Corp.*, 59 P.3d 611 (Wash. 2002), for the proposition that employers may be liable for statements of an employee made when the employee "was acting within the scope of his employment." (Dkt. No. 182 at 26.)

Plaintiff has not shown how Councilmember Blossom, Mayor Medina, or Planning Commission member Quitslund are employees of the City. Rather, Councilmember Blossom

and the Mayor are elected officials, who, acting within the scope of their duties, are afforded absolute immunity for their statements. *See Bender v. City of Seattle*, 664 P.2d 492, 504 (Wash. 1983) (examples of instances where absolute immunity is applied include "[l]egislatures in debate" and "statements of executive or military personnel acting within the duties of their offices"); *Twelker v. Shannon & Wilson, Inc.*, 564 P.2d 1131, 1133 (Wash. 1977). Quitslund is a member of the City's Planning Commission. (Dkt. Nos. 184 at 39; 167 at 20.) Plaintiff does not contend or show that Quitslund, as a member of the Planning Commission, was an employee[7] of the City, or that he was speaking in that capacity. Instead, the record reflects Quitslund spoke only upon the Mayor offering to hear public comment. (Dkt. No. 102-2 at 4.) Plaintiff fails to provide authority—and Court is unaware of any—that would allow the Court to hold the City liable for statements made by these individuals during a City Council meeting.

As Plaintiff has not shown how the City may be liable for statements of elected officials and a Planning Commission member at a City Council meeting, the Court need not analyze any further the alleged defamatory statements Plaintiff attributes to them. The Court therefore GRANTS Defendant's motion for summary judgment (Dkt. No. 167) on defamation.

C.  **Intentional and Negligent Infliction of Emotional Distress Claims**

Plaintiff describes her emotional distress claims as based on "Defendant's retaliatory, unconstitutional, [and] false statements made to silence Plaintiff's perceived 'anti-development' stance or concerns about ethics." (Dkt. No. 182 at 27.) Among Defendant's arguments on summary judgment is that an emotional distress claim cannot be based on an unsuccessful defamation claim. (Dkt. No. 167 at 22.)

---

[7] To the contrary, Defendant represents Quitslund is a "citizen volunteer" on the City's Planning Commission. (Dkt. No. 167 at 20.) Plaintiff does not appear to dispute this representation.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 167, 170) - 18

The Court agrees.  Because "[a]n emotional distress claim based on the same facts as an unsuccessful defamation claim 'cannot survive as an independent cause of action,'" Plaintiff's emotional distress claims cannot succeed.  *Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1120 (W.D. Wash. 2011); *see also Carr v. Michaelson*, 2002 WL 1609043, at *9 (Wash. Ct. App. 2002).  Moreover, the Court has already concluded Defendant may not be liable for statements made by its councilmembers, the Mayor, and a member of the City's Planning Commission (speaking as a member of the public) at a City Council meeting.  Plaintiff's emotional distress claims fail on this basis, as well.

The Court GRANTS Defendant's motion for summary judgment (Dkt. No. 167) on Plaintiff's emotional distress claims.

## V  CONCLUSION

The Court GRANTS Defendant's motion for summary judgment (Dkt. No. 167) and DENIES Plaintiff's partial motion for summary judgment (Dkt. No. 170).  The Court further DENIES Plaintiff's request for judicial notice (Dkt. No. 166), finding the request immaterial to the disposition of this case.

Having ruled in favor of Defendant as to all claims, all other pending motions (Dkt. Nos. 194, 197), hearings and the trial date are STRICKEN.

Dated this 22nd day of April 2024.

David G. Estudillo
United States District Judge